HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
GREGORY R. MICHAEL (SBN: 306814)
gmichael@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR

# THE CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| **WENDY GISH,** an individual; **PATRICK SCALES**, an individual, **JAMES DEAN MOFFATT**, an individual; and **BRENDA WOOD**, an individual, | Case No.: _____ |
| Plaintiffs, | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| **GAVIN NEWSOM**, in his official capacity as the Governor of California; **XAVIER BECERRA**, in his official capacity as the Attorney General of California; **ERIN GUSTAFSON**, in her official capacity as the San Bernardino County Acting Public Health Officer; **JOHN MCMAHON**, in his official capacity as the San Bernardino County Sheriff; **ROBERT A. LOVINGGOOD**, in his official | |



1  capacity as a San Bernardino County
2  Supervisor; **JANICE RUTHERFORD**, in her official
3  capacity as a San Bernardino County
4  Supervisor; **DAWN ROWE**, in her official capacity as a San Bernardino
5  County Supervisor; **CURT HAGMAN**,
6  in his official capacity as a San Bernardino County Supervisor; **JOSIE
7  GONZALES**, in his official capacity as
8  a San Bernardino County Supervisor; **CAMERON KAISER**, in his official
9  capacity as the Riverside County Public
10  Health Officer; **GEORGE JOHNSON**, in his official capacity as the Riverside
11  County Executive Officer and Director
12  of Emergency Services; **CHAD BIANCO**, in his official capacity as a
13  Riverside County Sheriff; **KEVIN JEFFRIES**, in his official capacity as a
14  Riverside County Supervisor; **KAREN SPIEGEL**, in her official capacity as a
15  Riverside County Supervisor; **CHUCK WASHINGTON**, in his official
16  capacity as a Riverside County Supervisor; **V. MANUEL PEREZ**, in
17  his official capacity as a Riverside County Supervisor; and **JEFF
18  HEWITT**, in his official capacity as a Riverside County Supervisor,

Defendants.

*Liberty must at all hazards be supported. We have a right to it, derived from our Maker. But if we had not, our fathers have earned and bought it for us, at the expense of their ease, their estates, their pleasure, and their blood.*

– John Adams, 1765



Verified Complaint                                          Case No.

DocuSign Envelope ID: 8A5D3F55-713E-4B03-BA18-82A0F2BFF69A

NOW COME the above-named Plaintiffs Wendy Gish, Patrick Scales, James Dean Moffatt, and Brenda Wood, by and through their attorneys, Dhillon Law Group, Inc., as and for claims against the above-named Defendants Gavin Newsom, in his official capacity as Governor of California; Xavier Becerra, in his official capacity as Attorney General of California; Erin Gustafson, in her official capacity as the San Bernardino County Acting Public Health Officer; John McMahon, in his official capacity as the San Bernardino County Sheriff; Robert A. Lovinggood, in his official capacity as a San Bernardino County Supervisor; Janice Rutherford, in her official capacity as a San Bernardino County Supervisor; Dawn Rowe, in her official capacity as a San Bernardino County Supervisor; Curt Hagman, in his official capacity as a San Bernardino County Supervisor; Josie Gonzales, in his official capacity as a San Bernardino County Supervisor; Cameron Kaiser, in his official capacity as the Riverside County Public Health Officer; George Johnson, in his official capacity as the Riverside County Executive Officer and Director of Emergency Services; Chad Bianco, in his official capacity as the Riverside County Sheriff; Kevin Jeffries, in his official capacity as a Riverside County Supervisor; Karen Spiegel, in her official capacity as a Riverside County Supervisor; Chuck Washington, in his official capacity as a Riverside County Supervisor; V. Manuel Perez, in his official capacity as a Riverside County Supervisor; and Jeff Hewitt, in his official capacity as a Riverside County Supervisor, allege and show the Court as follows (this "Complaint").

**NATURE OF ACTION**

1.      Defendants, in a gross abuse of their power, have seized the Coronavirus pandemic to expand their authority by unprecedented lengths, depriving Plaintiffs and all other residents of California of fundamental rights protected by the U.S. and California Constitutions, including freedom of religion, speech, and assembly, and due process and equal protection under the law. It is this Court's duty to defend these constitutional principles, by safeguarding the many rights and liberties of Californians that Defendants so brazenly violate.



Verified Complaint                                                    Case No.

2.     This Action presents facial and as-applied challenges to the Governor of California's March 19, 2020 Executive Order N-33-20 (the "State Order") attached here as Exhibit 1; the April 7, 2020 "Order of the Health Officer of the County of San Bernardino for the Control of COVID-19" (the "San Bernardino Order") attached here as Exhibit 2; and the April 6, 2020 "Amended Order of the Health Officer for the County of Riverside and of the County Executive Officer as Director of Emergency Services" (the "Riverside Order") attached here as Exhibit 3, which violate the constitutional rights of Plaintiffs and the people of California. The State Order, San Bernardino Order, and Riverside Order may at times be referred to collectively as the "Orders" in this Complaint.[1]

3.     The Orders and Defendants' enforcement thereof violate (I) the Free Exercise Clause of the First Amendment; (II) the Establishment Clause of the First Amendment; (III) the Free Speech Clause of the First Amendment; (IV) the Freedom of Assembly Clause of the First Amendment; (V) the Vagueness Doctrine enshrined by Due Process of Clause of the Fourteenth Amendment; (VI) substantive rights protected by Due Process of Clause of the Fourteenth Amendment; (VII) the Equal Protection Clause of the Fourteenth Amendment; (VIII) California Constitution Article 1, Section 1's right to liberty; (IX) California Constitution Article 1, Section 2's right to free

---

[1] As of the date of this filing, the State Order, San Bernardino Order, and Riverside Order, respectively, may be accessed online at the following URLs:

State Order: https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf;

San Bernardino Order: http://wp.sbcounty.gov/dph/wp-content/uploads/sites/7/2020/04/SKM_C45820040714190.pdf;

Riverside Order: https://www.rivcoph.org/Portals/0/Documents/CoronaVirus/April/PHOrders/Riv-EOC_20200406_090004.pdf?ver=2020-04-06-102528-423&timestamp=1586193935186.



Verified Complaint                                                                 Case No.

speech; (X) California Constitution Article 1, Section 3's right to assemble freely; (XI) California Constitution Article 1, Section 4's right free exercise and enjoyment of religion.

## JURISDICTION AND VENUE

4.      This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiffs' constitutional rights to freedom of religion, speech, and assembly, due process, and equal protection rights under the First and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988.

5.      The Central District of California is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants maintain offices, exercise their authority in their official capacities, and will enforce the Orders; and it is the District in which substantially all of the events giving rise to the claims occurred.

## PARTIES

6.      Plaintiff Wendy Gish is a resident of San Bernardino County, California. She attends Shield of Faith Family Church located in Fontana, California. Gish is a strong believer in the scriptural command found in Hebrew 10:25: "Let us not neglect meeting together, as some have made a habit, but let us encourage one another, and all the more as you see the Day approaching." In fulfillment of her sincerely held religious belief, Gish attends church twice a week, Sundays and Wednesday.

7.      Plaintiff Patrick Scales is a resident of San Bernardino County, California. He is the head pastor of Shield of Faith Family Church located in Fontana, California. Scales believes that he must serve the needs of his church's parishioners, especially right now in the midst of the COVID-19 crisis. James 5:14 commands believers that "Is



Verified Complaint                                                                                    Case No.

DocuSign Envelope ID: 8A5D3F55-713E-4B03-BA18-82A0F2BFF69A

any sick among you? Let him call for the elders of the church; and let them pray over him, anointing him with oil in the name of the Lord … ." Scales desires to keep Shield of Faith Family Church open to help deal with the spiritual and physical needs of its congregants. Scales believes that he can have in-person church services while making every effort to prevent contact between congregants by adhering to social distancing guidance, just as grocery stores, laundromats, and marijuana dispensaries are implementing to keep their customers safe. Congregants in the Shield of Faith Family Church are seated with family units at least six feet apart, and all worshippers wearing masks in the church.

8.     Plaintiff James Dean Moffatt is a resident of Riverside County. Moffatt is the senior pastor at Church Unlimited located in Indio, California. Moffatt believes that scripture commands him as a pastor to lay hands on people and pray for them, this includes the sick. Moffatt also believes that he is required by scripture to baptize individuals, something that cannot be done at an online service.

9.     Plaintiff Brenda Wood is a resident of Riverside County. Wood is the senior pastor at Word of Life Ministries International, Inc. located in Riverside, California. Wood desires to hold services in a manner that properly protects her parishioners so that its parishioners may follow Hebrews 10:25 and encourage one another during these troubling times of COVID-19. Wood believes that her parishioners need to connect with other people so as to give them hope and encouragement. Wood believes she can implement proper social distancing measures similar to those practiced by restaurants, auto mechanics, and abortion clinics. Wood also would like to offer drive-in services for parishioners.

10.     Defendant Gavin Newsom is made a party to this Action in his official capacity as the Governor of California. The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. Art. V, § 1. Governor Newsom signed the State Order.



Verified Complaint                                                    Case No.

11.     Defendant Xavier Becerra is made a party to this Action in his official capacity as the Attorney General of California. Under California law he is the chief law enforcement officer with supervision over all sheriffs in the state. Cal. Const. Art. V, § 13.

12.     Defendant Erin Gustafson is made a party to this Action in her official capacity as the San Bernardino County Acting Public Health Officer. She signed the San Bernardino Order.

13.     Defendant John Mahon is made a party to this Action in his official capacity as the San Bernardino County Sheriff. Under California law he has the responsibility to enforce the San Bernardino Order in San Bernardino County. *See* Cal. Gov't. Code § 26601.

14.     Defendant Robert A. Lovinggood is made a party to this Action in his official capacity as a member of the San Bernardino County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.

15.     Defendant Janice Rutherford is made a party to this Action in her official capacity as a member of the San Bernardino County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.

16.     Defendant Dawn Rowe is made a party to this Action in her official capacity as a member of the San Bernardino County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.



Verified Complaint                                                          Case No.

17.     Defendant Curt Hagman is made a party to this Action in his official capacity as a member of the San Bernardino County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.

18.     Defendant Josie Gonzales is made a party to this Action in his official capacity as a member of the San Bernardino County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.

19.     Defendant Cameron Kaiser is made a party to this Action in his official capacity as the Riverside County Public Health Officer. He signed the Riverside Order on April 6, 2020.

20.     Defendant George Johnson is made a party to this Action in his official capacity as the Riverside County Executive Officer and Director of Emergency Services. He also signed the Riverside Order on April 6, 2020.

21.     Defendant Chad Bianco is made a party to this Action in his official capacity as the Riverside County Sheriff. Under California law he has the responsibility to enforce the Riverside Amend Order in Riverside County. *See* Cal. Gov't. Code § 26601.

22.     Defendant Kevin Jeffries is made a party to this Action in his official capacity as a member of the Riverside County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.

23.     Defendant Karen Spiegel is made a party to this Action in her official capacity as a member of the Riverside County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including

8



DocuSign Envelope ID: 8A5D3F55-713E-4B03-BA18-82A0F2BFF69A

the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.

24.     Defendant Chuck Washington is made a party to this Action in his official capacity as a member of the Riverside County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.

25.     Defendant V. Manuel Perez is made a party to this Action in his official capacity as a member of the Riverside County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.

26.     Defendant Jeff Hewitt is made a party to this Action in his official capacity as a member of the Riverside County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq.*; Cal. Health & Safety Code § 101000.

27.     Each and every Defendant acted under color of state law with respect to all acts or omissions herein alleged.

## FACTUAL ALLEGATIONS

28.     On or about March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of a novel coronavirus, COVID-19.[2]

29.     Since the initial outbreak of COVID-19 in the United States in February and March 2020, the federal government's projections of the anticipated national death

---

[2] As of the date of this filing, the Proclamation of a National Emergency can be found online at: https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.



Verified Complaint                                                                    Case No.

DocuSign Envelope ID: 8A5D3F55-713E-4B03-BA18-82A0F2BFF69A

toll related to the virus has decreased substantially, by an order of magnitude. Despite such revisions, Defendants have increasingly restricted—where not outright banned—Plaintiffs' engagement in constitutionally-protected activities.[3]

## FACTUAL ALLEGATIONS AS TO THE STATE OF CALIFORNIA

30.    On or about March 4, 2020, California Governor Gavin Newsom proclaimed a State of Emergency as a result of the threat of COVID-19.[4]

31.    On or about March 19, 2020, California Governor Newsom issued Executive Order N-33-20 in which he ordered "all residents are directed to immediately heed the current State public health directives."

32.    The state public health directive requires "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors …".[5]

33.    On or about March 22, 2020, the California Public Health Officer designated a list of "Essential Critical Infrastructure Workers."[6] Included on the list of the "essential workforce" are "faith based services that are provided through streaming or other technology."

_____

[3] *See, e.g.*, https://www.usatoday.com/story/news/investigations/2020/04/09/coronavirus-deaths-u-s-could-closer-60-k-new-model-shows/5122467002/

[4] As of the date of this filing, the Proclamation of a State of Emergency can be found online at: https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf.

[5] The State Public Health Directive was included in the text of Executive Order N-33-20.

[6] As of the date of this filing, the list of Essential Critical Infrastructure Workers can be found online at: https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf.

10



Verified Complaint

Case No.

34.     Accordingly, this list prohibits all religious leaders from conducting in-person and out-of-home religious services, regardless of the measures taken to reduce or eliminate the risk of the virus spreading. Meanwhile, the list deems the continuity of services provided by coffee baristas, burger flippers, and laundromat technicians to be so necessary for society that these activities are permitted to continue under the State Order, despite the existence of the very same risk Defendants rely on to stymie the exercise of fundamental rights.

35.     The public health directive provides that its directives "shall stay in effect until further notice." Ex. 1.

### FACTUAL ALLEGATIONS AS TO SAN BERNADINO COUNTY

36.     On or about April 7, 2020, defendant Dr. Erin Gustafson signed the San Bernardino Order.[7]

37.     The San Bernardino Order "allow[s] faith based services that are provided through streaming or other technology, while individuals remain in their homes, but does not allow individuals to leave their home for driving parades or drive-up services, or for picking up non-essential items." Ex. 2, § 2.

38.     The San Bernardino Order requires all residents to "wear face coverings, such as scarves (dense fabric, without holes), bandanas, neck gaiters, or other fabric face coverings when they leave their homes or places of residence for essential activities." Ex. 2, § 4.

39.     The San Bernardino Order states that any violation "is a crime punishable by fine, imprisonment, or both." Ex. 2.

40.     The Order states that it will remain in effect "until rescinded." Ex. 2.

41.     The San Bernardino Order is signed by Defendant Dr. Erin Gustafson.

---

[7] As of the date of this filing, the San Bernardino Order may be accessed online at the following URLs: http://wp.sbcounty.gov/dph/wp-content/uploads/sites/7/2020/04/SKM_C45820040714190.pdf.



Verified Complaint                                                      Case No.

42.     Dr. Erin Gustafson is not an elected official but is the Acting Public Health Officer of San Bernardino. The San Bernardino Board of Supervisors have not appointed a Public Health Officer pursuant to Cal. Health & Safety Code §101000.

43.     On April 8, 2020, San Bernardino County released a document on their website titled "Clarification of religious services and face-covering order" (hereinafter Clarification"). A copy of the Clarification is attached here as Exhibit 4.[8]

44.     The Clarification is not signed by the Public Health Officer.

45.     The Clarification does not revoke the San Bernardino Order.

46.     The Clarification states "[o]n the subject of enforcement, the public is advised that although violation of a health order is a violation of the California Health and Safety Code, the County does not expect law enforcement to broadly impose citations on violators."

47.     The Clarification does not revoke law enforcement authority to criminally charge any individual who violates the San Bernardino Order.

48.     Defendants have granted law enforcement unfettered discretion when deciding whether or not to enforce the San Bernardino Order.

49.     The Clarification states that the "specific reference to drive-in religious service so close to major religious observances taking place during the next four days, for which organizations had already conducted considerable planning and incurred expenses, are clarified as follows: Organizations that have planned such services for the coming weekend should proceed with those services if they choose to do so and make every effort to prevent contact between congregants."

50.     The Clarification, which is not signed by any individual and is simply a document posted online, directly contradicts the written San Bernardino Order that

---

[8] As of the date of this filing, the San Bernardino Clarification can be found online at: http://wp.sbcounty.gov/cao/countywire/?p=5862.



Verified Complaint                                                                          Case No.

makes it a crime for churches to have drive-in religious services and for parishioners to attend such services.

51.     Plaintiff Patrick Scales' church, Shield of Faith Family Church, Inc., is located in San Bernardino County.

52.     Plaintiff Scales desires to hold in-person religious services for those congregants who desire to attend church.

53.     Plaintiff Scales believes that he can hold such religious services and abiding by social distancing tips recommended by the CDC by keeping congregants at least six feet apart, and provide for the wearing of masks and gloves.

54.     Plaintiff Scales believes that religious services are essential for the spiritual health of the congregation so that the congregants can exhort one another during these difficult times.

55.     Plaintiff Scales recognizes that most of his congregants will stay at home but he wants to be available for those who are healthy and feel that in-person church service can be safely attended.

56.     Plaintiff Wendy Gish attends Shield of Faith Family Church and would attend an in-person church service should it be made available to her.

57.     Plaintiff Gish regularly attends church services and believes that she has a scriptural command to "not neglect meeting together."

58.     To her knowledge, Plaintiff Gish has never had or contracted said coronavirus; she has never been at any time exposed to the danger of contracting it and has never been in close proximity to any locality where said coronavirus has or have existed.

59.     As a result of not being able to attend in-person church, Plaintiff Gish has been deprived of the opportunity for important cultural, social, and religious activities, including speech activities pertaining to the coronavirus outbreak and the government's response.

13



Verified Complaint

Case No.

60.     As of April 11, 2020, San Bernardino County has eight hundred ten (810) coronavirus cases and twenty-five (25) COVID-19 associated deaths, according to information posted on the county's website.[9]

61.     The United States Census estimates that as of July 1, 2019, San Bernardino County's population is 2,180,085 people.[10]

## FACTUAL ALLEGATIONS AS TO RIVERSIDE COUNTY

62.     On or about April 6, 2020, defendants Dr. Cameron Kaiser and George Johnson signed the Riverside Order.[11]

63.     The Riverside Order prohibits "[a]ll public or private gatherings . . . including, but not limited to an auditorium, . . . church, . . . or any other indoor or outdoor space used for any non-essential purpose including, but not limited to . . . church . . . ." Ex. 3, § 1(a).

64.     Exempted from its prohibition on public or private gatherings are numerous services, industries, and activities, including: "courts of law, medical providers . . . daycare and child care . . . [and] necessary shopping at fuel stations, stores or malls," provided that a "state and federal guidelines for infection control" are observed. Ex. 3, § 1(b).

---

[9] Per San Bernardino County Department of Public Health's web page visited on April 11, 2020 http://wp.sbcounty.gov/dph/coronavirus/.

[10] United States Census Bureau quick facts for San Bernardino County can be found online at: https://www.census.gov/quickfacts/fact/table/sanbernardinocountycalifornia/PST045219.

[11] As of the date of this filing, the Riverside Order may be accessed online at the following URLs: https://www.rivcoph.org/Portals/0/Documents/CoronaVirus/April/PHOrders/Riv-EOC_20200406_090004.pdf?ver=2020-04-06-102528-423&timestamp=1586193935186.



Verified Complaint  Case No.

65.  The Riverside Order provides that "[a]ll essential business that remain in operation . . . shall follow the Social Distancing and Infection Control Guidelines published by the [Center for Disease Control] and California Department of Public Health . . . or the facility shall be closed." Ex. 3, § 1(c).

66.  The Riverside Order mandates that all people wear face coverings. Ex. 3, § 1(d).

67.  The Riverside Order expressly states that any violation "is a crime publishable by fine, imprisonment, or both." Ex. 3, § 11.

68.  The Riverside Order is signed by Defendant Dr. Cameron Kaiser.

69.  The Riverside Order is also signed by Defendant George Johnson as County Executive Officer and Director of Emergency Services.

70.  Dr. Cameron Kaiser is not an elected official but is appointed by the Riverside County Board of Supervisors. *See* Cal. Health & Safety Code §101000.

71.  On April 10, 2020, Riverside County issued a press release in which they stated that "Drive-up church services that practice proper social distancing will be allowed this weekend in Riverside County, although the order to prohibit such activates will remain after Easter Sunday."[12]

72.  The April 10th clarification was issued by Defendant George Johnson.

73.  Plaintiff James Dean Moffatt's church, "Church Unlimited" is located in Riverside County.

74.  Plaintiff James Dean Moffatt, upon learning about the coronavirus, immediately had his church building cleaned and disinfected.

75.  Plaintiff Moffatt ensured that sanitizing materials were available to each person who entered his church and encouraged family units to sit at least six feet apart.

---

[12] As of the date of this filing, the Riverside County News Release can be found online at:
https://www.rivcoph.org/Portals/0/Documents/CoronaVirus/April/News/April_10.pdf?ver=2020-04-11-105351-463&timestamp=1586627749323.



Verified Complaint                                                      Case No.

76. Plaintiff Moffatt encouraged anyone who was uncomfortable with gathering during coronavirus to stay at home.

77. Plaintiff Moffatt encouraged anyone who was sick to stay at home.

78. On April 9, 2020, Plaintiff Moffatt was fined $1,000 for violating the Riverside Order for holding a church service on April 5, 2020, Palm Sunday.

79. To his knowledge, Plaintiff Moffatt has never had or contracted the coronavirus; he has never been at any time exposed to the danger of contracting it; and has never been in close proximity to any locality where said coronavirus has or have existed.

80. But for the Riverside Order and Defendants' enforcement thereof, Plaintiff Moffatt would continue to hold in-person religious services in Riverside County, while taking the same social distancing precautions taken by "essential businesses" that Defendants continue to allow to operate in the county, despite any prevalence of COVID-19. Plaintiff Moffatt believes that it is important for Christians to come together, remember, and celebrate all that Jesus has done for this world.

81. As a result of not being able to conduct an in-person church service, Plaintiff Moffatt has been deprived of the opportunity for important cultural, socials, and religious activities, including speech activities pertaining to the coronavirus outbreak and the government's response.

82. Plaintiff Brenda Wood's church, Word of Life Ministries International Inc. is located in Riverside County.

83. Word of Life Ministries International Inc. has approximately 20-30 regular attendees.

84. Plaintiff Brenda Wood believes Scripture commands her to provide opportunities for the believers to obey Hebrews 10:25 where the believers meet together and encourage one another.

85. Plaintiff Brenda Wood held a drive-up church service on Easter Sunday.



Verified Complaint

Case No.

86.     The drive-up church service provided appropriate social distancing, with everyone wearing masks and staying in their vehicles. The restrooms were not made available. Each car was parked at least six feet from other vehicles.

87.     During the service, Plaintiff Brenda Wood used a portable sound amplification system. The congregants had to roll down their windows in order to listen.

88.     During the service, communion was served by an individual wearing a mask and gloves and the elements were pre-packaged. The person serving communion used tongs to remove the communion cups from the pre-packaged box.

89.     At this time, Plaintiff Brenda Wood has postponed all baptisms at her church.

90.     Plaintiff Brenda Wood would like to hold drive-up church services every Sunday following safe social distancing practices until the state of emergency has been lifted.

91.     As of April 11, 2020, Riverside County has one thousand four hundred thirty-one (1,431) coronavirus cases and forty-one (41) coronavirus associated deaths, according to information posted on the county's website.[13]

92.     The United States Census estimates that as of July 1, 2019, Riverside County's population is  2,470,546 people.[14]

*//*

---

[13] Per Riverside County Department of Public Health's web page visited on April 11, 2020 https://rivcoph.org/coronavirus.

[14] United States Census Bureau quick facts for Riverside County can be found online at: https://www.census.gov/quickfacts/fact/table/riversidecountycalifornia/PST045219.

17



Verified Complaint                                                                    Case No.

## CLAIMS

### FIRST CLAIM FOR RELIEF

### Free Exercise Clause of First Amendment to U.S. Constitution

### (42 U.S.C. § 1983)

*(By all Plaintiffs against all Defendants)*

93. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

94. The Orders and Defendants' enforcement thereof violate the First Amendment, both facially and as-applied to Plaintiffs. The First Amendment of the Constitution protects the "free exercise" of religion. Fundamental to this protection is the right to gather and worship. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts … [such as the] freedom of worship and assembly."). The Free Exercise Clause applies to the states through the Due Process Clause of the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

95. As the Supreme Court has noted, "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993). "A law is not generally applicable if its prohibitions substantially underinclude non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1079 (9th Cir. 2015) (citing *Lukumi*, 508 U.S. at 542–46). "In other words, if a law pursues the government's interest 'only against conduct motivated by religious belief,' but fails to include in its prohibitions substantial, comparable secular conduct that would similarly threaten the government's interest, then the law is not generally applicable." *Id.*

18



96.     The Orders are neither neutral nor of general application. Defendants' restrictions have specifically and explicitly targeted religious and "faith-based" services and are thus not neutral on their face. Defendants have prohibited certain public and private gatherings deemed "non-essential," including out-of-home religious services, while exempting a laundry list of industries and services purportedly "essential" to the government's various interests, including medical cannabis dispensaries and other medical providers, courts, public utilities, daycare and childcare, and "necessary" shopping. Further, several Defendants have granted *ad hoc* exemptions to the Orders for particular religious gatherings of particular faiths – i.e., Christians permitted to celebrate Easter, but no other gatherings, and other faiths given no exemptions.

97.     In addition to relegating all faith activities to a second-class status (at best), Defendants have threatened criminal penalties for holding in person services, and have thus substantially burdened Plaintiffs' religious exercise by forcing them to choose between their sincerely held religious beliefs and their desire to follow secular rules, in many cases imposed by unelected officials.

98.     Laws and government actions that burden religious practice and are either not neutral or not generally applicable must satisfy a compelling governmental interest and be narrowly tailored to achieve that end.

99.     Defendants' mandates are not "narrowly tailored" to further any compelling governmental interest. Defendants have granted numerous special exemptions to their bans on public gatherings and conduct, including for purportedly "essential" businesses and activities, provided that social distancing practices are observed; and even for out-of-home religious services during Easter, an important day of religious significance for Christians. Since these gatherings may be permitted, there can be no doubt that Defendants may, and therefore must, permit Plaintiffs to engage in equivalent religious activities and services provided that Plaintiffs also adhere to the social distancing guidelines currently in place.

19



Verified Complaint                                                          Case No.

100.   Requiring Plaintiffs to abstain from religious gatherings, despite substantial modifications to satisfy the public health interests at stake, violates Plaintiffs' Constitutional right to free exercise of religion. The state does not have the power under our Constitutional scheme to decree that as to faith activities, "streaming" (for those congregations and parishioners with the wealth and technological acumen to partake of such truncated substitutes) is "good enough" when at the same time the state protects the media organizations' First Amendment rights to freedom of the press while denying the plaintiffs First Amendment Free Exercise of Religion.

101.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

102.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

103.   Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**

**Establishment Clause of First Amendment to U.S. Constitution**

**(42 U.S.C. § 1983)**

(*By all Plaintiffs against all Defendants*)

104.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

105.   The Orders and Defendants' enforcement thereof violate the First Amendment, both facially and as-applied to Plaintiffs. The Establishment Clause of the "First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion." *McCreary Cty., Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 860 (2005) (*citing Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)).



Verified Complaint                                                        Case No.

DocuSign Envelope ID: 8A5D3F55-713E-4B03-BA18-82A0F2BFF69A

The Establishment Clause applies to the states through the Due Process Clause of the Fourteenth Amendment. *Everson v. Board of Ed. of Ewing*, 330 U.S. 1 (1947).

106.   Defendants have not and do not act with a clearly secular purpose in adopting and enforcing the Orders. Defendants have made several exceptions to their Orders, including certain religious activities during Easter, a day significant to Christians, without exempting those same activities when occurring on days both before and after Easter, or on days significant to other faiths. It is not for Defendants to determine which faiths, and on which days of religious significance to those faiths, religious services may take place.

107.   The Orders and Defendants' *ad hoc* enforcement thereof have the primary effect of inhibiting religious activity.

108.   Defendants have failed to avoid excessive government entanglement with religion. Defendants permit only some forms of religious observance, such as live-streamed, at-home religious activities, and, as to the Riverside Order only, in-person services during Easter weekend.

109.   There is no historical precedence in the United States for inhibiting religious practices on terms more restrictive than those imposed on identical secular activities, as Defendants do now.

110.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

111.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

112.   Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.



Verified Complaint                                                      Case No.

**THIRD CLAIM FOR RELIEF**

**Free Speech Clause of First Amendment to U.S. Constitution**

**(42 U.S.C. § 1983)**

(*By all Plaintiffs against all Defendants*)

113.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

114.   The Orders and Defendants' enforcement thereof violate the First Amendment, both facially and as-applied to Plaintiffs.

115.   Under Defendants' Orders, public gatherings and church services are prohibited.

116.   Plaintiffs engage in protected speech through worship, religious discussions, singing hymnals, and praying with their congregation.

117.   Defendants' imposition of the Orders is unreasonable and has a chilling effect on protected speech by outright banning in-person church services at the pain of criminal penalty.  Furthermore, several of the Defendants have granted *ad hoc* exemptions to the Orders for Easter, but not any other Sunday or day of religious significance to other faiths. Additionally, a representative of Riverside County has stated that Sheriffs are not expected to enforce every violation, but failed to provide any guidance as to what violations would be prioritized, leaving it up to the Sheriffs' unfettered discretion to decide which violations to enforce. Such a lack of standards along with a grant of such discretion renders the Orders unconstitutional both facially and as they are applied.

118.   The Orders are unconstitutionally overbroad, and therefore void as a matter of law, both on their faces, and as it is applied.

119.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

120.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to



Verified Complaint

Case No.

declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

121. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**FOURTH CLAIM FOR RELIEF**

**Violation of First Amendment Freedom of Assembly Clause**

**(42 U.S.C. § 1983)**

(*By all Plaintiffs against all Defendants*)

122. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

123. The Orders and Defendants' enforcement thereof violate the First Amendment, both facially and as-applied to Plaintiffs. The First Amendment of the Constitution protects the "right of the people peaceably to assemble." The Freedom of Assembly Clause was incorporated against the states in *De Jonge v. Oregon*, 299 U.S. 353 (1937).

124. "The right of free speech, the right to teach, and the right of assembly are, of course, fundamental rights." *Whitney v. California*, 274 U.S. 357, 373 (1927). When a government practice restricts fundamental rights, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose and, even then, only if no less restrictive alternative is available. *See, e.g.*, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16-17 (1973); *Dunn v. Blumstein*, 405 U.S. 330 (1972).

125. By denying Plaintiff Brenda Wood the ability to conduct services via a drive-in church service that complies with the CDC guidelines for social distancing, Defendants are in violation of the Freedom of Assembly Clause. Defendants cannot meet the no-less-restrictive-alternative test. The CDC's social distancing guidelines are appropriate to limit the spread of COVID-19. Imposing more restrictive requirements that target churches and their drive-in services while at the same time allowing

23



Verified Complaint

Case No.

restaurants, coffee shops, marijuana dispensaries to operate drive-ups is not the least restrictive means of achieving Defendants' public safety goals.

126.    By denying Plaintiff Patrick Scales from Shield of Faith Family Church and Plaintiff James Moffatt of Church Unlimited the ability to assemble via an in-person church service that complies with the CDC guidelines for social distancing, Defendants are in violation of the Freedom of Assembly Clause. Defendants cannot meet the no-less restrictive-alternative test. The CDC's social distancing guidelines are appropriate to limit the spread of COVID-19. Imposing more restrictive requirements that target churches and their in-person services while allowing grocery stores, laundromats, and marijuana dispensaries is not the least restrictive means of achieving Defendants' public safety goals.

127.    Requiring Plaintiffs to abstain from religious gatherings, despite substantial modifications to satisfy the public health interests at stake, violates Plaintiffs' Constitutional right to peaceably assemble.

128.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

129.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

130.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

//



Verified Complaint                                                                                      Case No.

## FIFTH CLAIM FOR RELIEF

### Due Process Clause of Fourteenth Amendment to U.S. Constitution

### (42 U.S.C. § 1983)

*(By all Plaintiffs against all Defendants)*

131.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

132.   The Orders and Defendants' enforcement thereof violate the Due Process Clause of the Fourteenth Amendment, both facially and as-applied to Plaintiffs.

133.   A regulation is constitutionally void on its face when, as matter of due process, it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application" *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926); *People ex rel. Gallo v. Acuna*, 14 Cal.4th 1090, 1115 (1997). The void for vagueness doctrine is designed to prevent arbitrary and discriminatory enforcement. The problem with a vague regulation is that it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis...." *Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972).

134.   Defendants' Orders are void for vagueness. In conjunction with issuing the Orders, including for the following reasons:

a.   The State Order provides that individuals are ordered to "heed" State public health directives. The word "heed" is defined by Webster's Dictionary to mean "to give consideration or attention to" —not specifically to adhere to those directives. Yet, the State Order is widely reported in the media and cited by local and state officials, including the San Bernardino and Riverside Orders, as compelling compliance with State public health directives to shelter in place unless conducting essential business. The State Order also includes the text of the public health directive, which includes language that ostensibly "order[s]" compliance, creating further ambiguity as to whether Plaintiffs must comply with, or merely heed, the public health directive.



Verified Complaint                                                                          Case No.

DocuSign Envelope ID: 8A5D3F55-713E-4B03-BA18-82A0F2BFF69A

1  Accordingly, the State Order is vague as to what precisely is being ordered, and what

2  actions may result in criminal penalties, fines, or imprisonment.

3       b.    The San Bernardino Order does not exempt any particular religious

4  holidays, yet San Bernardino has explicitly exempted compliance during Easter

5  weekend. County officials have also stated that it "does not expect law enforcement to

6  broadly impose citations on violators" and that "the expectation is that law enforcement

7  will rely upon community members to use good judgment, common sense, and act in

8  the best interest of their own health and the health of their loved ones and the

9  community at large."

10       c.    The Riverside County Order states that "non-essential personnel . . . are

11  prohibited from entry into any hospital or long-term care facility," ostensibly banning

12  "non-essential" people from seeking medical care. Yet, the Order states that "visitors"

13  may be permitted access to hospitals under certain conditions. No reasonable person can

14  make sense of what conduct is permitted under the Order

15      135.   As a result of these ambiguities, no reasonable person could understand

16  what conduct violates the Order and might subject that person to criminal penalties.

17      136.   Plaintiffs have no adequate remedy at law and will suffer serious and

18  irreparable harm to their constitutional rights unless Defendants are enjoined from

19  implementing and enforcing the Orders.

20      137.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to

21  declaratory relief and temporary, preliminary, and permanent injunctive relief

22  invalidating and restraining enforcement of the Orders.

23      138.   Plaintiffs found it necessary to engage the services of private counsel to

24  vindicate their rights under the law. Plaintiffs are therefore entitled to an award of

25  attorneys' fees pursuant to 42 U.S.C. § 1988.

26

27

28  //



Verified Complaint                                               Case No.

## SIXTH CLAIM FOR RELIEF

### Due Process Clause of Fourteenth Amendment to U.S. Constitution

### (42 U.S.C. § 1983)

*(By all Plaintiffs against all Defendants)*

139.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

140.   The Orders and Defendants' enforcement thereof violate Plaintiffs' substantive due process rights secured by the Fourteenth Amendment to the U.S. Constitution. Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. *See Duncan v. Louisiana*, 391 U.S. 145, 147–149 (1968). In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs. *See, e.g.*, *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 484–486 (1965).

141.   Plaintiffs' rights to freedom of religion, assembly, speech, and travel are fundamental rights protected by the U.S. Constitution. *See, e.g.*, *Aptheker v. Secretary of State*, 378 U.S. 500, 520 (1964); *Kent v. Dulles*, 357 U.S. 116, 127 (1958).

142.   When a government practice restricts fundamental rights such as the right to practice religion freely, assemble peacefully, speak, and travel, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose, and, even then, only if no less restrictive alternative is available. *See, e.g. Memorial Hospital v. Maricopa County*, 415 U.S. 250, 257-258 (1974); *Dunn v. Blumstein*, 405 U.S. 330, 339-341 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 89 (1969), *Maher v. Roe*, 432 U.S. 464, 488 (1977).

143.   Strict scrutiny applies to Plaintiffs' claims because both the Riverside Order and the San Bernardino Order mandate that Plaintiffs stay at home, impinging on



Verified Complaint

Case No.

DocuSign Envelope ID: 8A5D3F55-713E-4B03-BA18-82A0F2BFFF69A

their fundamental rights to freedom of religion, assembly, speech, and travel. These Orders do not permit Plaintiffs to exercise these rights, even while conforming to the CDC guidelines for social distancing, unless Defendants deem them "essential" or as participating in "essential" activities.

144.  Defendants' mandates are not "narrowly tailored" to further any compelling governmental interest. Defendants' have granted numerous special exemptions to their bans on public gatherings, including for purportedly "essential" businesses and activities, provided that social distancing practices are observed; and even for out-of-home religious services during Easter, an important day of religious significance for Christians. Since these gatherings can be permitted, there can be no doubt that Defendants may, and therefore must, permit Plaintiffs to engage in equivalent constitutionally-protected activities provided that Plaintiffs also adhere to the social distancing guidelines.

145.  Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

146.  Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

147.  Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## SEVENTH CLAIM FOR RELIEF

### Equal Protection Clause of Fourteenth Amendment to U.S. Constitution

### (42 U.S.C. § 1983)

*(By all Plaintiffs against all Defendants)*

148.  Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.



Verified Complaint

Case No.

149.   The Orders and Defendants' enforcement thereof violate the Fourteenth Amendment, both facially and as-applied to Plaintiffs. The Fourteenth Amendment of the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Equal protection requires the state to govern impartially—not draw arbitrary distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objection.

150.   Defendants intentionally and arbitrarily categorize individuals and conduct as either "essential" or "non-essential." Those persons classified as "essential," or as participating in essential services, are permitted to go about their business and activities provided certain social distancing practices are employed. Those classified as "non-essential," or as engaging in non-essential activities, are required to stay in their residence, unless it becomes necessary for them to leave for one of the enumerated "essential" activities.

151.   Strict scrutiny under the Equal Protection Clause applies where, as here, the classification impinges on a fundamental right, including the right to practice religion freely, to right to free speech and assembly, and the right to travel, among others.

152.   Defendants cannot satisfy strict scrutiny, because their arbitrary classifications are not narrowly tailored measures that further compelling government interests, for the reasons stated above.

153.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

154.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

155.   Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of



Verified Complaint                                                                                    Case No.

attorneys' fees pursuant to 42 U.S.C. § 1988.

## EIGHTH CLAIM FOR RELIEF

### Right to Liberty

### (Cal. Const. Art. 1, § 1)

*(By all Plaintiffs against all Defendants)*

156.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

157.   In California, "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy. Cal. Const. Art. 1, §1.

158.   California courts have held that Public Health Officials' authority over the rights of personal liberty is limited. Before exercising their full powers to quarantine, there must be "reasonable grounds [] to support the belief that the person so held is infected." *Ex parte Martin*, 83 Cal. App. 2d 164 (1948). Public Health Officials must be able to show "probable cause to believe the person so held has an infectious disease …" *Id.*

159.   California courts found that Public Health Officials could not quarantine 12 blocks of San Francisco Chinatown because of nine (9) deaths due to bubonic plague. *See Jew Ho v. Williamson*, 103 F. 10 (C.C. Cal. 1900), and *Wong Wai v. Williamson,* 103 F. 1 (C.C. Cal. 1900).

160.   The court found it "purely arbitrary, unreasonable, unwarranted, wrongful, and oppressive interference with the personal liberty of complainant" who had "never had or contracted said bubonic plague; that he has never been at any time exposed to the danger of contracting it, and has never been in any locality where said bubonic plague, or any germs of bacteria thereof, has or have existed". *Jew Ho*, 103 F. 10 (C.C. Cal. 1900).



Verified Complaint                                                     Case No.

161.   California courts have found that "a mere suspicion [of a contagious disease], unsupported by facts giving rise to reasonable or probable cause, will afford no justification at all *for depriving persons of their liberty* and subjecting them to virtual imprisonment under a purported order of quarantine." *Ex parte Arta*, 52 Cal. App. 380, 383 (1921) (emphasis added).

162.   In *Jew Ho v. Williamson,* 103 F. 10 (C.C. Cal. 1900), and *Wong Wai v. Williamson,* 103 F. 1 (CC Cal. 1900), the California courts found that there were more than 15,000 people living in the twelve blocks of San Francisco Chinatown who were to be quarantined. The courts found it unreasonable to shut down the ability of over 15,000 people to make a living because of nine deaths. This was one death for every 1,666 inhabitants of Chinatown.

163.   As of July 1, 2020, San Bernardino and Riverside Counties have a combined population of 4,650,631 individuals and as of April 11, 2020, San Bernardino and Riverside Counties have a total of 66 coronavirus deaths. That is one death for every 70,464 inhabitants.

164.   Plaintiffs have never had or contracted said coronavirus; they have never been at any time exposed to the danger of contracting it, and have never been in any locality where said coronavirus, or any germs of bacteria thereof, has or have existed.

165.   Requiring Plaintiffs to abstain from all religious gatherings, despite substantial modifications to satisfy the public health interests at stake, violates their California Constitutional liberty rights.

166.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

167.   Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.



31

Verified Complaint                                                                      Case No.

## NINTH CLAIM FOR RELIEF

### Freedom of Speech

### (Cal. Const. Art. 1, § 2)

*(By all Plaintiffs against all Defendants)*

168.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

169.   In California "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const. Art. 1, §2.

170.   "The California Supreme Court has recognized that the California Constitution is 'more protective, definitive and inclusive of rights to expression and speech' than the First Amendment to the United States Constitution." *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1167 (9th Cir. 2007).

171.   For the reasons stated in Plaintiffs' Third Claim for Relief, requiring Plaintiffs to abstain from its religious gatherings, despite substantial modifications to satisfy the public health interests at stake, violates Plaintiffs' liberty of speech rights under the California Constitution as well.

172.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

173.   Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

//



Verified Complaint                                                                      Case No.

**TENTH CLAIM FOR RELIEF**

**Freedom of Assembly**

**(Cal. Const. Art. 1, § 3)**

(*By all Plaintiffs against all Defendants*)

174.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

175.   In California "[t]he people have the right to … assemble freely to consult for the common good." Cal. Const. Art. 1, §3.

176.   For the reasons stated in Plaintiffs' Fourth Claim for Relief, requiring Plaintiffs to abstain from its religious gatherings, despite substantial modifications to satisfy the public health interests at stake, violates Plaintiffs' right to assemble freely under the California Constitution as well.

177.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

178.   Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

**ELEVENTH CLAIM FOR RELIEF**

**Free Exercise and Enjoyment of Religion**

**(Cal. Const. Art. 1, § 4)**

(*By all Plaintiffs against all Defendants*)

179.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

180.   In California "[f]ree exercise and enjoyment of religion without discrimination or preference are guaranteed." Cal. Const. Art. 1, §4.



Verified Complaint                                                                                    Case No.

181.  "In general, the religion clauses of the California Constitution are read more broadly than their counterparts in the federal Constitution." *Carpenter v. City and County of San Francisco*, 93 F.3d 627, 629 (9th Cir. 1996).

182.  For the reasons stated in Plaintiffs' First Claim for Relief, requiring Plaintiffs to abstain from its religious gatherings, despite substantial modifications to satisfy the public health interests at stake, violates Plaintiffs' free exercise rights under the California Constitution as well.

183.  Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

184.  Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

A.  An order and judgment declaring that the Orders, facially and as-applied to Plaintiffs, violate the First and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 1, 2, and 4 of the California Constitution;

B.  An order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing the Orders;

C.  For attorneys' fees and costs;

D.  Such other and further relief as the Court deems appropriate and just.

Date: April 13, 2020          DHILLON LAW GROUP INC.

By:  /s/ Harmeet K. Dhillon
     HARMEET K. DHILLON (SBN: 207873)
     harmeet@dhillonlaw.com
     MARK P. MEUSER (SBN: 231335)
     mmeuser@dhillonlaw.com

34



Verified Complaint                                      Case No.

DocuSign Envelope ID: 8A5D3F55-713E-4B03-BA18-82A0F2BFF69A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GREGORY R. MICHAEL (SBN: 306814)
gmichael@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700

Attorneys for Plaintiffs



35

Verified Complaint                                    Case No.

## VERIFICATION OF COMPLAINT

I, the undersigned, declare as follows:

1.    I am a plaintiff in this matter.

2.    I have read the foregoing complaint and know the contents thereof.

3.    The same is true of my own knowledge, except as to those matters which are therein state on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: ____4/13/2020____

Wendy Gish

Date: ____4/13/2020____

Patrick Scales

Date: ____4/13/2020____

James Dean Moffatt

Date: ____4/13/2020____

Brenda Wood



Verified Complaint                                                                                    Case No.