HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
GREGORY R. MICHAEL (SBN: 306814)
gmichael@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| **WENDY GISH**, an individual, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM**, in his official capacity as Governor of California, *et al.*,<br><br>Defendants. | Case Number: 5:20-cv-00755-JGB-KK<br><br>Hon. Jesus G. Bernal<br><br>**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date Filed:    April 14, 2020 |



Plaintiffs' Application for TRO and
For OSC Re: Preliminary Injunction

Case No. 5:20-cv-00755-JGB-KK

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs Wendy Gish, Patrick Scales, James Dean Moffatt, and Brenda Wood, by and through counsel, will and hereby do apply to this Court pursuant to Fed. R. Civ. P. 65(b) and Local Rule 65-1 for a temporary restraining order against Defendants Gavin Newsom, in his official capacity as Governor of California; Xavier Becerra, in his official capacity as Attorney General of California; Erin Gustafson, in her official capacity as the San Bernardino County Acting Public Health Officer; John McMahon, in his official capacity as the San Bernardino County Sheriff; Robert A. Lovinggood, in his official capacity as a San Bernardino County Supervisor; Janice Rutherford, in her official capacity as a San Bernardino County Supervisor; Dawn Rowe, in her official capacity as a San Bernardino County Supervisor; Curt Hagman, in his official capacity as a San Bernardino County Supervisor; Josie Gonzales, in his official capacity as a San Bernardino County Supervisor; Cameron Kaiser, in his official capacity as the Riverside County Public Health Officer; George Johnson, in his official capacity as the Riverside County Executive Officer and Director of Emergency Services; Chad Bianco, in his official capacity as the Riverside County Sheriff; Kevin Jeffries, in his official capacity as a Riverside County Supervisor; Karen Spiegel, in her official capacity as a Riverside County Supervisor; Chuck Washington, in his official capacity as a Riverside County Supervisor; V. Manuel Perez, in his official capacity as a Riverside County Supervisor; and Jeff Hewitt, in his official capacity as a Riverside County Supervisor ("Defendants"), and for the issuance of an order to show cause why a preliminary injunction should not issue, as follows:

1.     Defendants, as well as their agents, employees, and successors in office, shall be restrained and enjoined from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with any prohibition on Plaintiffs' engagement in religious services, practices, or activities at which the Center for Disease Control's social distancing guidelines are followed.

1



2.    Defendants shall show cause, at a time and place to be directed by the Court, why a preliminary injunction should not issue requiring Defendants to act as described in above; the temporary restraining order shall remain effective until such time as the Court has ruled on whether a preliminary injunction should issue.

This Application is made on the grounds that Plaintiffs are likely to succeed on the merits of this case, they will suffer irreparable harm without injunctive relief, the balance of equities tips sharply in their favor, and the relief sought is in the public interest.

Good cause exists to issue the requested Order to preserve Plaintiffs' rights under the Constitution of the United States and the Constitution of the State of California, and to avoid irreparable harm to those rights. This Application is supported by the accompanying Memorandum of Points and Authorities, by Plaintiffs' Verified Complaint, and all exhibits attached thereto, by the declarations of Plaintiffs and their counsel, Mark P. Meuser, and all exhibits attached thereto, and by such further argument and evidence that may be adduced at any hearing on this matter or of which the Court may take judicial notice.

The Verified Complaint in this action was filed on April 13, 2020; this Application followed. All papers relating to this Application will be delivered by email to the Defendants' counsel by 4:00 p.m. on April 14. As reflected in the accompanying declaration of Mark P. Meuser, Plaintiffs have notified the Office of the California Attorney General and county counsel for San Bernardino and Riverside Counties, informing counsel of Plaintiffs' intention to file this Application and to seek a temporary restraining order of the nature described above.

Plaintiffs request that the Court waive any bond requirement, because enjoining Defendants from unconstitutionally prohibiting religious practices will not financially affect Defendants.

//



Plaintiffs' Application for TRO and          Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

Date: April 14, 2020                DHILLON LAW GROUP INC.

                          By:     /s/ Harmeet K. Dhillon
                                  HARMEET K. DHILLON (SBN: 207873)
                                  harmeet@dhillonlaw.com
                                  MARK P. MEUSER (SBN: 231335)
                                  mmeuser@dhillonlaw.com
                                  GREGORY R. MICHAEL (SBN: 306814)
                                  gmichael@dhillonlaw.com
                                  DHILLON LAW GROUP INC.
                                  177 Post Street, Suite 700
                                  San Francisco, California 94108
                                  Telephone: (415) 433-1700

                                  Attorneys for Plaintiffs



Plaintiffs' Application for TRO and          Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

# TABLE OF CONTENTS

*U.S. Attorney General William Barr Issues Statement on Religious Practice and Social Distance* ............................................................................. 1

On April 14, 2020, U.S. Attorney General William Barr issued the following statement: ....................................................................................... 1

INTRODUCTION ............................................................................... 1

RELEVANT FACTUAL BACKGROUND ......................................... 2

LEGAL STANDARD ........................................................................... 7

ARGUMENT ....................................................................................... 9

I.     PLAINTIFFS ARE ENTITLED TO TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF. .................................. 9

    A.    There Is a Strong Likelihood Plaintiffs' Will Succeed in Proving Their Claims on Multiple Constitutional Grounds. ........................... 9

        1.    Defendants' Ban on Communal Religious Worship Violates the First Amendment's Free Exercise Clause and California Constitution Article 1, Section 4. .................................. 9

        2.    The Orders Violate the Establishment Clause of the First Amendment. ................................................................ 11

        3.    Defendants Violate Plaintiffs' Free Speech Rights. .................. 12

        4.    The Orders Ban All Public and Private Assembly in Violation of the First Amendment to the U.S. Constitution and California Constitution. .............................................................. 15

        5.    Defendants' Orders Are Void for Reasons of Vagueness. ........... 16

        6.    The Orders Violate Plaintiffs' Substantive Due Process Rights Under the Fourteenth Amendment. ..................................... 17

        7.    The Orders Violate Article 1, Section 1 of the California Constitution. .............................................................. 18

        8.    Defendants Violate the Equal Protection Clause of the Fourteenth Amendment. ................................................................ 20

    B.    Plaintiffs Face Imminent Irreparable Harm Absent Immediate Injunctive Relief ......................................................... 21

    C.    The Balance of Hardships Tips Decidedly in Plaintiffs' Favor. ...... 22

i



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      D.      Injunctive Relief Is in the Public Interest ........................................... 23

II.     THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT ..................................................................................... 23

CONCLUSION ................................................................................................ 24



Plaintiffs' Application for TRO and                Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

# TABLE OF AUTHORITIES

**Case**                                                                 **Page(s)**

## UNITED STATES CONSTITUTION

U. S. Const. amend. I. ...............................................................................9, 13

U.S. Const. amend. XIV, § 1......................................................................20

## CALIFORNIA CONSTITUTION

Cal. Const. art. 1, § 1.................................................................................19

Cal. Const. art. 1, § 2............................................................................12, 13

Cal. Const. art. 1, § 3.................................................................................15

Cal. Const. art. 1, § 4............................................................................9, 10

## CASES

*All. for Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011)...............................................................8

*Am. Legion v. Am. Humanist Ass'n*,
   139 S. Ct. 2067 (2019). .......................................................................12

*Americans for Prosperity Foundation v. Harris*,
   182 F. Supp. 3d 1049 (C.D. Cal. 2016). ........................................22, 23

*Aptheker v. Secretary of State*,
   378 U.S. 500 (1964)...........................................................................18

*Bible Club v. Placentia-Yorba Linda School Dist.*,
   573 F. Supp. 2d 1291 (C.D. Cal. 2008). ............................................24

*Cantwell v. Connecticut*,
   310 U.S. 296 (1940)...........................................................................10

*Catholic Charities of Sacramento, Inc. v. Superior Court*,
   32 Cal. 4th 527 (2004) .........................................................................9

*Church of the Lukumi Babalu Aye, Inc. v. Hialeah*,
   508 U.S. 520 (1993)...........................................................................10

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
   473 U.S. 432 (1985)...........................................................................20

iii



*College Republicans at San Francisco State University v. Reed*,
   523 F. Supp. 2d 1005 (N.D. Cal. 2007). .......................................21, 22, 23

*Connally v. General Const. Co.*,
   269 U.S. 385 (1926)........................................................................16

*De Jonge v. Oregon*,
   299 U.S. 353 (1937).........................................................................15

*Dennis v. Higgins*,
   498 U.S. 439 (1991)...........................................................................9

*Doctor John's, Inc. v. Sioux City*,
   305 F. Supp. 2d 1022 (N.D. Iowa 2004)..............................................24

*Duncan v. Louisiana*,
   391 U.S. 145 (1968).........................................................................17

*Dunn v. Blumstein*,
   405 U.S. 330 (1972).....................................................................15, 18

*Earth Island Inst. v. United States Forest Serv*.,
   351 F.3d 1291 (9th Cir. 2003).............................................................8

*Eisenstadt v. Baird*,
   405 U.S. 438 (1972).........................................................................18

*Elrod v. Burns*,
   427 U.S. 347 (1976).........................................................................21

*Epperson v. Arkansas*,
   393 U.S. 97 (1968) ..........................................................................11

*Everson v. Board of Ed. of Ewing*,
   330 U.S. 1 (1947)............................................................................11

*Ex parte Arta*,
   52 Cal. App. 380 (1921)...................................................................20

*Ex parte Martin*,
   83 Cal. App. 2d 164 (1948)..............................................................19

*Fantasyland Video, Inc. v. Cty. of San Diego*,
   496 F.3d 1040 (9th Cir. 2007)...........................................................12

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*,
   415 U.S. 423 (1974)...........................................................................8

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972).........................................................................16



Plaintiffs' Application for TRO and                    Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

*Griswold v. Connecticut*,
    381 U.S. 479 (1965)..................................................................18

*Houston v. Hill*,
    482 U.S. 451 (1987)..................................................................14

*IDK, Inc. v. Clark Cnty.*,
    836 F.2d 1185 (9th Cir. 1988).............................................13, 14

*In re J.M.*,
    36 Cal. App. 5th 668 (2019). ..................................................13

*Jew Ho v. Williamson*,
    103 F. 10 (C.C. Cal. 1900)......................................................19

*Jorgensen v. Cassiday*,
    320 F.3d 906 (9th Cir. 2003)...................................................24

*Ketchum v. Alameda Cnty.*,
    811 F.2d 1243 (9th Cir. 1987)....................................................9

*Lemon v. Kurtzman*,
    403 U. S. 602 (1971).................................................................12

*Los Angeles All. For Survival v. City of Los Angeles*,
    22 Cal. 4th 352 (2000). .............................................................13

*Maher v. Roe*,
    432 U.S. 464 (1977)...................................................................18

*Maynard v. U.S. Dist. Court for Cent. Dist. of California*,
    915 F.2d 1581 (9th Cir. 1990)...................................................21

*Maynard v. U.S. Dist. Court for the Cent. Dist. of California*,
    701 F. Supp. 738 (C.D. Cal. 1988). ........................................21

*McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky.*,
    545 U.S. 844 (2005)...................................................................11

*Memorial Hospital v. Maricopa Cnty.*,
    415 U.S. 250 (1974)............................................................18, 21

*Monell v. Dept. of Soc. Servs.*,
    436 U.S. 658 (1978)....................................................................9

*People ex rel. Gallo v. Acuna*,
    14 Cal.4th 1090 (1997)..............................................................16

*People v. Chambers*,
    22 Cal. App 2d 687 (1937)........................................................15

v



Plaintiffs' Application for TRO and
For OSC Re: Preliminary Injunction

Case No. 5:20-cv-00755-JGB-KK

*S.O.C., Inc. v. Cnty. of Clark,*
   152 F.3d 1136 (9th Cir. 1998)..........................................................................21

*Sammartano v. First Jud. Dist. Ct.,*
   303 F.3d 959 (9th Cir. 2002)...............................................................21, 23

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
   411 U.S. 1 (1973).......................................................................................15

*Sessions v. Dimaya,*
   138 S. Ct. 1204 (2018)..............................................................................16

*Shapiro v. Thompson,*
   394 U.S. 618 (1969)...................................................................................18

*Stormans, Inc. v. Selecky,*
   586 F.3d 1109 (9th Cir. 2009)...................................................................22

*Stormans, Inc. v. Wiesman,*
   794 F.3d 1064 (9th Cir. 2015)...................................................................10

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,*
   240 F.3d 832 (9th Cir. 2001)......................................................................8

*Whitney v. California,*
   274 U.S. 357 (1927)...................................................................................15

*Widmar v. Vincent,*
   454 U.S. 263 (1981)...........................................................................13, 14

*Wilson v. Superior Court,*
   13 Cal.3d 652 (1975)..................................................................................13

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008).........................................................................................8

*Wong Wai v. Williamson,*
   103 F. 1 (C.C. Cal. 1900)...........................................................................19

**STATUTES**

42 U.S.C. § 1983...............................................................................9, 12

**RULES**

Fed. R. Civ. P. 65.                                                                          8

vi



1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### *U.S. Attorney General William Barr Issues Statement*

3

### *on Religious Practice and Social Distance*

4

On April 14, 2020, U.S. Attorney General William Barr issued the following

5

statement:

6

7

8

9

10

11

…As we explain in the Statement of Interest, where a state has not acted evenhandedly, it must have a compelling reason to impose restrictions on places of worship and must ensure that those restrictions are narrowly tailored to advance its compelling interest.  While we believe that during this period there is a sufficient basis for the social distancing rules that have been put in place, the scope and justification of restrictions beyond that will have to be assessed based on the circumstances as they evolve.

12

13

14

15

16

Religion and religious worship continue to be central to the lives of millions of Americans.  This is true more so than ever during this difficult time.  The pandemic has changed the ways Americans live their lives.  Religious communities have rallied to the critical need to protect the community from the spread of this disease by making services available online and in ways that otherwise comply with social distancing guidelines.

17

18

19

20

The United States Department of Justice will continue to ensure that religious freedom remains protected if any state or local government, in their response to COVID-19, singles out, targets, or discriminates against any house of worship for special restrictions.

21

Meuser Dec., Ex. 8.

22

23

## INTRODUCTION

24

The United States and California Constitutions do not contain blanket

25

exceptions for pandemics, and neither may California's lawmakers ignore

26

fundamental Constitutional norms on the basis of a health crisis. In a knee-jerk

27

response to the coronavirus pandemic, at a time when people of faith around the

28

world have a greater need than ever for spiritual solace, Defendants have

1



criminalized communal worship across California. While protecting the health and safety of the public during this crisis is certainly critically important—to Plaintiffs also—that interest may not be secured by abrogating the rights and liberties enshrined by the U.S. and California Constitutions.

Despite declarations of national, state, and local emergencies surrounding the coronavirus outbreak, Defendants have decided to allow "essential" businesses (as determined by Defendants on an *ad hoc* basis) to continue operations provided that certain social distancing guidelines are followed. For example, Defendants permit marijuana dispensaries, fast food restaurants, and laundromats to continue operations, subject to these restrictions. Statewide, the news media have been permitted to continue operations.

Churches and religious services, however, have not made Defendants' cut. Instead, Defendants insist that all religious worship take place only at home, by live-streaming, apparently assuming that all Californians have access to high-speed internet, computer equipment, a desire to add intrusive, data-collecting apps to their computer devices, and the willingness to suspend a lifetime of worship practices at the command of the government. The United States and California Constitutions simply do not tolerate such arbitrary and discriminatory restrictions thrust upon fundamental rights while less restrictive measures are available and are being allowed for entities the Government deems "essential." This Court should immediately enjoin Defendants from further violating Plaintiffs' religious liberty by ascribing second-class status to faith practices.

### RELEVANT FACTUAL BACKGROUND

On March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of a novel coronavirus, COVID-19. Verified Complaint [dkt. #1-1] ("Compl."), ¶ 28. Since the initial outbreak of COVID-19 in the United States in February and March 2020, the federal government's projections of the anticipated national death toll related to the virus has



decreased substantially, by an order of magnitude. Despite such revisions, Defendants have increasingly restricted—where not outright banned— Plaintiffs' engagement in constitutionally-protected activities. Compl., ¶ 29.

On March 4, 2020, California Governor Gavin Newsom proclaimed a State of Emergency as a result of the threat of COVID-19. Compl., ¶ 30. On March 19, 2020, California Governor Newsom issued Executive Order N-33-20 in which he ordered "all residents are directed to immediately heed the current State public health directives." Compl., ¶ 31. The state public health directive requires "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors …". Compl., ¶ 32. The public health directive provides that its directives "shall stay in effect until further notice." Compl., ¶ 35.

On March 22, 2020, the California Public Health Officer designated a list of "Essential Critical Infrastructure Workers." Included on the list of the "essential workforce" are "faith based services that are provided through streaming or other technology." Compl., ¶ 33. The California state decree prohibits all religious leaders from conducting in-person and out-of-home religious services, regardless of measures taken to reduce or eliminate the risk of the virus spreading, such as offering socially distanced seating for family units, mask and glove requirements, or drive-in-only services. Meanwhile, the list deems the continuity of services provided by coffee baristas, burger flippers, and laundromat technicians to be so necessary for society that these activities are permitted to continue under the State Order, despite the existence of the very same risk Defendants rely on to inhibit the exercise of fundamental First Amendment rights. Compl., ¶ 34.

On or about April 7, 2020, Dr. Erin Gustafson signed the San Bernardino Order. Compl., ¶ 36. This Order "allow[s] faith based services that are provided through streaming or other technology, while individuals remain in their homes, but does not allow individuals to leave their home for driving parades or drive-up services, or for

Plaintiffs' Application for TRO and
For OSC Re: Preliminary Injunction

Case No. 5:20-cv-00755-JGB-KK

picking up non-essential items." Compl., ¶ 37. It also states that any violation "is a crime punishable by fine, imprisonment, or both." Compl., ¶ 39. The Order states that it will remain in effect "until rescinded." Compl., ¶ 40.

On April 8, 2020, San Bernardino County released a document on their website titled "Clarification of religious services and face-covering order" (hereinafter Clarification"). The Clarification is not signed by the Public Health Officer nor does it revoke the April 7th Order. Compl., ¶ 44-45. It states "[o]n the subject of enforcement, the public is advised that although violation of a health order is a violation of the California Health and Safety Code, the County does not expect law enforcement to broadly impose citations on violators." Compl., ¶ 46. The Clarification does not revoke law enforcement authority to criminally charge any individual who violates the San Bernardino Order. Compl., ¶ 47.

Defendants have granted law enforcement unfettered discretion when deciding whether or not to enforce the San Bernardino Order. Compl., ¶ 48. The Clarification states that the "specific reference to drive-in religious service so close to major religious observances taking place during the next four days, for which organizations had already conducted considerable planning and incurred expenses, are clarified as follows: Organizations that have planned such services for the coming weekend should proceed with those services if they choose to do so and make every effort to prevent contact between congregants." Compl., ¶ 49.

Patrick Scales' church, Shield of Faith Family Church, Inc., is located in San Bernardino County. Compl., ¶ 51. He desires to hold in-person religious services for those congregants who desire to attend church. Compl., ¶ 52. Scales believes that he can hold such religious services and abide by social distancing tips recommended by the CDC by keeping congregants at least six feet apart, and provide for the wearing of masks and gloves. Compl., ¶ 53. He believes that religious services are essential for the spiritual health of the congregation so that the congregants can exhort one another during these difficult times. Compl., ¶ 54. Scales recognizes that most of his

4

1  congregants will stay at home, but he wants to be available for those who are healthy
2  and feel that in-person church service can be safely attended with social distancing
3  and other measures. Compl., ¶ 55.

4      Wendy Gish attends Shield of Faith Family Church and would attend an in-
5  person church service should it be made available to her. Compl., ¶ 56. She regularly
6  attends church services and believes that she has a scriptural command to "not neglect
7  meeting together." Compl., ¶ 57. To her knowledge, Gish has never had or contracted
8  said coronavirus; she has never been at any time exposed to the danger of contracting
9  it and has never been in close proximity to any locality where said coronavirus has or
10  have existed. Compl., ¶ 58. As a result of not being able to attend in-person church,
11  she has been deprived of the opportunity for important cultural, social, and religious
12  activities, including speech activities pertaining to the coronavirus outbreak and the
13  government's response. Compl., ¶ 59.

14      As of April 11, 2020, San Bernardino County has eight hundred ten (810)
15  coronavirus cases and twenty-five (25) COVID-19 associated deaths, according to
16  information posted on the county's website. Compl., ¶ 60. The United States Census
17  estimates that as of July 1, 2019, San Bernardino County's population is 2,180,085
18  people. Compl., ¶ 61.

19      On or about April 6, 2020, Dr. Cameron Kaiser and George Johnson signed the
20  Riverside Order. Compl., ¶ 62. It prohibits "[a]ll public or private gatherings . . .
21  including, but not limited to an auditorium, . . . church, . . . or any other indoor or
22  outdoor space used for any non-essential purpose including, but not limited to . . .
23  church . . . ." Compl., ¶ 63. Exempted from its prohibition on public or private
24  gatherings are numerous services, industries, and activities, including: "courts of law,
25  medical providers . . . daycare and child care . . . [and] necessary shopping at fuel
26  stations, stores or malls," provided that a "state and federal guidelines for infection
27  control" are observed. Compl., ¶ 64. The Riverside Order provides that "[a]ll essential
28  business that remain in operation . . . shall follow the Social Distancing and Infection

5

Control Guidelines published by the [Center for Disease Control] and California Department of Public Health . . . or the facility shall be closed." Compl., ¶ 65. The Order expressly states that any violation "is a crime publishable by fine, imprisonment, or both." Compl., ¶ 67.

On April 10, 2020, Riverside County issued a press release in which they stated that "Drive-up church services that practice proper social distancing will be allowed this weekend in Riverside County, although the order to prohibit such activates will remain after Easter Sunday." Compl., ¶ 71. The April 10th clarification was issued by George Johnson. Compl., ¶ 72.

James Moffatt's church, "Church Unlimited" is located in Riverside County. Compl., ¶ 73. Upon learning about the coronavirus, he immediately had his church building cleaned and disinfected. Compl., ¶ 74. Moffatt ensured that sanitizing materials were available to each person who entered his church and encouraged family units to sit at least six feet apart. Compl., ¶ 75. He encouraged anyone who was uncomfortable with gathering during coronavirus to stay at home. Compl., ¶ 76. He also encouraged anyone who was sick to stay at home. Compl., ¶ 77.

On April 9, 2020, Moffatt was fined $1,000 for violating the Riverside Order for holding a church service on April 5, 2020, Palm Sunday. Compl., ¶ 78. To his knowledge, he has never had or contracted the coronavirus; he has never been at any time exposed to the danger of contracting it; and has never been in close proximity to any locality where said coronavirus has or have existed. Compl., ¶ 79. But for the Riverside Order and Defendants' enforcement thereof, Moffatt would continue to hold in-person religious services in Riverside County, while taking the same social distancing precautions taken by "essential businesses" that Defendants continue to allow to operate in the county, despite any prevalence of COVID-19. He believes that it is important for Christians to come together, remember, and celebrate all that Jesus has done for this world. Compl., ¶ 80. As a result of not being able to conduct an in-person church service, Moffatt has been deprived of the opportunity for important



Plaintiffs' Application for TRO and
For OSC Re: Preliminary Injunction

Case No. 5:20-cv-00755-JGB-KK

cultural, socials, and religious activities, including speech activities pertaining to the coronavirus outbreak and the government's response. Compl., ¶ 81.

Brenda Wood's church, Word of Life Ministries International Inc. is located in Riverside County. Compl., ¶ 82. Word of Life Ministries International Inc. has approximately 20-30 regular attendees. Compl., ¶ 83. Wood believes Scripture commands her to provide opportunities for the believers to obey Hebrews 10:25 where the believers meet together and encourage one another. Compl., ¶ 84.

Wood held a drive-up church service on Easter Sunday. Compl., ¶ 85. The drive-up church service provided appropriate social distancing, with everyone wearing masks and staying in their vehicles. The restrooms were not made available. Each car was parked at least six feet from other vehicles. Compl., ¶ 86. During the service, Wood used a portable sound amplification system. The congregants had to roll down their windows in order to listen. Compl., ¶ 87. During the service, communion was served by an individual wearing a mask and gloves and the elements were pre-packaged. The person serving communion used tongs to remove the communion cups from the pre-packaged box. Compl., ¶ 88. At this time, Wood has postponed all baptisms at her church. Compl., ¶ 89. She would like to hold drive-up church services every Sunday following safe social distancing practices until the state of emergency has been lifted. Compl., ¶ 89.

As of April 11, 2020, Riverside County has one thousand four hundred thirty-one (1,431) coronavirus cases and forty-one (41) coronavirus associated deaths, according to information posted on the county's website. Compl., ¶ 91. The United States Census estimates that as of July 1, 2019, Riverside County's population is 2,470,546 people. Compl., ¶ 92.

## LEGAL STANDARD

A temporary restraining order preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423,

439 (1974). A temporary restraining order may be issued without providing the opposing party an opportunity to be heard where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

The standards for issuing a temporary restraining order and a preliminary injunction are the same. *See, e.g.*, *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The Ninth Circuit has established two sets of criteria for evaluating a request for injunctive relief. *Earth Island Inst. v. United States Forest Serv.*, 351 F.3d 1291, 1297 (9th Cir. 2003). Under the "traditional" criteria, a plaintiff must show (1) a strong likelihood of success on the merits, (2) a likelihood of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest. *See, e.g.*, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, a temporary restraining order or preliminary injunction may be appropriate when a movant raises "serious questions going to the merits" and the "balance of hardships tips sharply in the plaintiff's favor," provided that the plaintiff is able to show there is a likelihood of irreparable injury and that the injunction is in the public interest. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

//
//
//



8

**ARGUMENT**

**I.     PLAINTIFFS ARE ENTITLED TO TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF.**

> **A.     There Is a Strong Likelihood Plaintiffs' Will Succeed in Proving Their Claims on Multiple Constitutional Grounds.**

>> **1.     Defendants' Ban on Communal Religious Worship Violates the First Amendment's Free Exercise Clause and California Constitution Article 1, Section 4.**

As Plaintiffs' first and eleventh causes of action, they assert facial and as-applied challenges pursuant to (1) 42 U.S.C. Section 1983 on the grounds that Defendants' Orders violate the Free Exercise Clause of the First Amendment to the U.S. Constitution, and (2) state law on the grounds that the Orders violate Article 1, Section 4 of the California Constitution.[1] *See Catholic Charities of Sacramento, Inc. v. Superior Court*, 32 Cal. 4th 527, 562 (2004) (implicitly recognizing state law claim for violations of Art. 1, Section 4 of the California Constitution); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987) (a cause of action arises under Section 1983 where "(1) the conduct that harm[ed] [Plaintiffs] [was] committed under color of state law (i.e. state action), and (2) the conduct . . . deprive[d] [Plaintiffs] of a constitutional right."); *Dennis v. Higgins*, 498 U.S. 439 (1991) (The rights guaranteed by Section 1983 are to be "liberally and beneficently construed.") (*quoting Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 684 (1978)).[2]

The First Amendment to the U.S. Constitution prohibits government actors from enforcing any "law respecting an establishment of religion, or prohibiting the free exercise thereof." U. S. Const. amend. I; *see also Cantwell v. Connecticut*, 310

---

[1] Defendants cannot credibly contest that the issuance and enforcement of the Orders by Defendants in their official capacities constitute state action. Accordingly, the likelihood of Plaintiffs' success turns on whether Defendants deprived Plaintiffs of a constitutional right. As discussed herein, Plaintiffs have amply established such deprivations.



Plaintiffs' Application for TRO and                    Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

U.S. 296, 303 (1940) (applying the First Amendment to the States through the Fourteenth Amendment). The California Constitution similarly protects the "[f]ree exercise and enjoyment of religion without discrimination or preference." Cal. Const., art. I, § 4; *see also Catholic Charities of Sacramento, Inc.*, 32 Cal. 4th at 562.

As the Supreme Court has noted, "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993). "A law is not generally applicable if its prohibitions substantially underinclude non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1079 (9th Cir. 2015) (citing *Lukumi*, 508 U.S. at 542–46). "In other words, if a law pursues the government's interest 'only against conduct motivated by religious belief,' but fails to include in its prohibitions substantial, comparable secular conduct that would similarly threaten the government's interest, then the law is not generally applicable." *Id.*

The Orders are neither neutral nor of general application. Defendants' restrictions have specifically and explicitly targeted religious and "faith-based" services and are thus not neutral on their face. Defendants have prohibited certain public and private gatherings deemed "non-essential," including out-of-home religious services, while exempting a laundry list of industries and services purportedly "essential" to the government's various interests, including medical cannabis dispensaries and other medical providers, courts, public utilities, daycare and childcare, and "necessary" shopping. Further, several Defendants have granted *ad hoc* exemptions to the Orders for particular religious gatherings of particular faiths – i.e., Christians permitted to celebrate Easter, but not for other gatherings or other faiths.

Defendants' mandates are not "narrowly tailored" to further any compelling governmental interest. Defendants have granted numerous special exemptions to their bans on public gatherings and conduct, including for purportedly "essential"

10



businesses and activities, provided that social distancing practices are observed; and even for out-of-home religious services during Easter, an important day of religious significance for Christians. Since these gatherings may be permitted, there can be no doubt that Defendants may, and therefore must, permit Plaintiffs to engage in equivalent religious activities and services provided that Plaintiffs also adhere to the social distancing guidelines currently in place.

Requiring Plaintiffs to abstain from religious gatherings, despite substantial modifications to satisfy the public health interests at stake, violates Plaintiffs' Constitutional right to free exercise of religion. The state does not have the power under our Constitutional scheme to decree that as to faith activities, "streaming" (for those congregations and parishioners with the wealth and technological acumen to partake of such truncated substitutes) is "good enough" while at the same time acknowledging media organizations' First Amendment rights to freedom of the press. Because narrower restrictions may be applied to Plaintiffs, while still protecting legitimate governmental interests, the Orders are unconstitutional and Defendants should be enjoined.

### 2. The Orders Violate the Establishment Clause of the First Amendment.

The Orders and Defendants' enforcement thereof violate the First Amendment, both facially and as-applied to Plaintiffs. The Establishment Clause of the "First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion." *McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 860 (2005) (*citing Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). The Establishment Clause applies to the states through the Due Process Clause of the Fourteenth Amendment. *Everson v. Board of Ed. of Ewing*, 330 U.S. 1 (1947).

Under the *Lemon* test, the courts ask whether the government action (1) has a clear secular purpose; (2) has a "principal or primary effect" that "neither advances



Plaintiffs' Application for TRO and
For OSC Re: Preliminary Injunction

Case No. 5:20-cv-00755-JGB-KK

nor inhibits religion"; and (3) does not foster "an excessive government entanglement with religion." *Lemon v. Kurtzman*, 403 U. S. 602 (1971); *but see Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067 (2019) (writing for the plurality, Justice Samuel Alito refused to apply the *Lemon* test to a religious-display case, but failed to garner majority support for any other test).

Defendants have not and do not act with a clearly secular purpose in adopting and enforcing the Orders. The Orders are ambiguous in scope and application, granting law enforcement unfettered discretion in deciding what conduct shall constitute a crime, and what conduct is "essential," and therefore permissible. This discretion has already been exercised by government officials to temporarily exempt specific faiths (namely, Christians) from compliance with the Orders during Easter. It is not for Defendants to determine which faiths, and on which days of religious significance to those faiths, religious services may take place.

The Orders and Defendants' *ad hoc* enforcement thereof have the primary effect of inhibiting religious activity. Indeed, the Orders expressly prohibit religious services unless practiced within the home, by live-streaming. As a result, Defendants have also failed to avoid excessive government entanglement with religion. Defendants permit only some forms of religious observance, while disallowing all communal worship. Thus, the Court should grant this Application and enjoin further enforcement of the Orders.

### 3. Defendants Violate Plaintiffs' Free Speech Rights.

As Plaintiffs' third and ninth causes of action, they assert facial and as-applied challenges pursuant to (1) 42 U.S.C. Section 1983 on the grounds that Defendants' Orders violate the Free Speech Clause of the First Amendment to the U.S. Constitution, and (2) state law on the grounds that the Orders violate Article 1, Section 2 of the California Constitution. "[T]he California liberty of speech clause is broader and more protective than the free speech clause of the First Amendment." *Fantasyland Video, Inc. v. Cty. of San Diego*, 496 F.3d 1040, 1042 (9th Cir. 2007).



However, in some areas, the protection afforded by the California liberty of speech clause is coterminous with that provided by the federal Constitution. *Los Angeles All. For Survival v. City of Los Angeles*, 22 Cal. 4th 352, 367, n.12 (2000). California courts treat the prior restraint and overbreadth doctrine similarly to federal courts. *See Wilson v. Superior Court*, 13 Cal.3d 652, 658-62 (1975) (relying mostly on federal citations to analyze prior restraint doctrine under California Constitution); *In re J.M.*, 36 Cal. App. 5th 668, 680 (2019) (citing some federal cases and paralleling overbreadth doctrine analysis under California Constitution with that under the U.S. Constitution).

The Orders—by acting as a prior restraint to protected speech—are unconstitutional facially and as-applied because they impermissibly burden Plaintiffs' right to freedom of speech under the First Amendment and California Constitution, Article 1, Section 2. *See IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1191 (9th Cir. 1988) (stating that a law is facially unconstitutional if it impermissibly burdened the plaintiff's rights, such as in the case of a prior restraint); U.S. Const., amend. I; Cal. Const., art. I, § 2. The term prior restraint is used "to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation omitted). "Religious worship and discussion are protected speech under the First Amendment." *Widmar v. Vincent* ("*Widmar*"), 454 U.S. 263, 269, n. 6 (1981).

Here, the Orders, with the exception of Easter, ban all in-person, religious meetings by excluding faith-based services from a list of essential businesses, and prohibiting people from going outside their homes. Compl. at ¶¶ 31-50, 62-71. The Orders were issued before the protected speech was to occur because they prohibit congregating to engage in protected speech for the foreseeable future. Accordingly, the Orders are facially unconstitutional because they act as a prior restraint to protected speech: religious services.

13



Plaintiffs' Application for TRO and                          Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

The Orders are also facially unconstitutional on the separate basis that they are substantially overbroad. *See IDK, Inc.*, 836 F.2d at 1191 (stating that a law is facially unconstitutional if it impermissibly burdens the rights of third parties, such as in the case of an unconstitutionally overbroad law). "Substantial overbreadth" is shown not where one shows that he can conceive of some impermissible applications of the order, but where one can show a significant number of situations where an order could be applied to prohibit constitutionally protected speech. *Houston v. Hill* ("*Houston*"), 482 U.S. 451 (1987) (ordinance--outlawing interruption of police officers while carrying out their duties--was unconstitutionally overbroad because it criminalized substantial amount of constitutionally protected speech and allowed police unfettered discretion in enforcement of the ordinance).

Here, the purpose of the Orders is to slow the transmission rate of the COVID-19 pandemic in California and its counties. However, it virtually eliminates all in-person, religious meetings (Compl. ¶¶ 37-39, 63-67), a form of protected speech (*Widmar*, 454 U.S. at 269, n.6), despite the fact that alternatives, such as drive-in services, would allow such religious speech without risking transmission. This is a substantial burden because it covers the protected speech that every Californian who attends mosques, temples, synagogues, gurdwaras, and churches regularly usually would enjoy. In their current form, the Orders do not allow drive-in church services; unsigned clarifications from San Bernardino and Riverside County allowed such services for Easter, but not for any Sunday thereafter, nor exceptions for other faiths. Compl. ¶¶ 37, 49-50.

Not only this, but here, akin to *Houston*, law enforcement officers have unfettered discretion in enforcing the law because they are provided no standards as to when to enforce, or exempt some event from, the law. Furthermore, violators of the Orders are liable for criminal penalties. Compl. ¶¶ 39, 67. Because the Orders criminalize a substantial amount of protected speech that is unnecessary for their underlying purpose, and provide law enforcement officers no guidance as to

14



Plaintiffs' Application for TRO and
For OSC Re: Preliminary Injunction

Case No. 5:20-cv-00755-JGB-KK

enforcement, the Orders are unconstitutionally overbroad, and this Court should grant injunctive relief.

### 4. The Orders Ban All Public and Private Assembly in Violation of the First Amendment to the U.S. Constitution and California Constitution.

"The right of free speech, the right to teach, and the right of assembly are, of course, fundamental rights." *Whitney v. California*, 274 U.S. 357, 373 (1927). The First Amendment of the Constitution protects the "right of the people peaceably to assemble." The Freedom of Assembly Clause was incorporated against the states in *De Jonge v. Oregon*, 299 U.S. 353 (1937). The California Constitution also protects the right to freely assemble. *See, e.g.*, Cal. Const. art. 1, § 3; *People v. Chambers*, 22 Cal. App 2d 687, 706 (1937) ("laws should not infringe upon our guaranteed freedom of speech and lawful assembly."). When a government practice restricts fundamental rights, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose and, even then, only if no less restrictive alternative is available. *See, e.g.*, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16-17 (1973); *Dunn v. Blumstein*, 405 U.S. 330 (1972).

The Orders and Defendants' enforcement thereof violate the First Amendment, both facially and as-applied to Plaintiffs. By denying Plaintiffs the ability to conduct services that complies with the CDC guidelines for social distancing, Defendants are in violation of the Freedom of Assembly Clause. Defendants cannot meet the no-less-restrictive-alternative test. The CDC's social distancing guidelines are appropriate to limit the spread of COVID-19. Imposing more restrictive requirements that target churches and their drive-in services while at the same time allowing restaurants, coffee shops, marijuana dispensaries to operate drive-ups is not the least restrictive means of achieving Defendants' public safety goals.

Requiring Plaintiffs to abstain from religious gatherings, despite substantial modifications to satisfy the public health interests at stake (modifications that have



been deemed acceptable in the cases of operations deemed "essential" by government decree), violates Plaintiffs' Constitutional right to peaceably assemble.

### 5. Defendants' Orders Are Void for Reasons of Vagueness.

A regulation is constitutionally void on its face when, as matter of due process, it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926); *People ex rel. Gallo v. Acuna*, 14 Cal.4th 1090, 1115 (1997). Vague laws "trap the innocent by not providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972). If "arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id.* The problem with a vague regulation is that it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis with the attendant dangers of arbitrary and discriminatory application." *Id.*; *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018).

The Orders at issue in this case are so vague as to their scope and application as to run afoul of the Due Process Clause of the Fourteenth Amendment. Embedded within the State Order is a public health directive to shelter in place. The State Order itself merely orders the public to "heed" the public health directive, it does not appear to order compliance therewith; Webster's Dictionary defines the word "heed" to mean "to give consideration or attention to"—not to "adhere" or comply. Despite this, state and local officials and the media have widely reported the State Order to require compliance with the public health directive by sheltering in place. The San Bernardino and Riverside Orders, for example, both state this.[3] Complt. Ex. 2, ¶ 2; Ex. 3, ¶ 1

---

[3] The New York Times, for example, reported that "Gov. Gavin Newsom of California on Thursday ordered Californians—all 40 million of them—to stay in their houses…." As of the date of this filing, the article is available online at the following URL: https://www.nytimes.com/2020/03/19/us/California-stay-at-home-order-virus.html.

Plaintiffs' Application for TRO and                    Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

("Executive Order N-33-20 issued by the Governor of the State of California . . . ordered all individuals living in the State of California to stay home . . . ."). Given this ambiguity, neither Plaintiffs nor any other reasonable person can understand precisely what is being ordered, and what actions may result in criminal penalties, fines, or imprisonment. As such, the State Order is void for vagueness.

The San Bernardino and Riverside Orders, and Defendants enforcement thereof, muddle the issue further. None of the Orders exempt specific religious holidays. Nevertheless, San Bernardino County explicitly exempted compliance during Easter weekend, only. Meuser Decl., Ex. 5. San Bernardino County officials have also stated that it "does not expect law enforcement to broadly impose citations on violators" and that "the expectation is that law enforcement will rely upon community members to use good judgment, common sense, and act in the best interest of their own health and the health of their loved ones and the community at large." Meuser Decl., Ex. 2. In apparent self-contradiction, the Riverside Order states that "non-essential personnel . . . are prohibited from entry into any hospital or long-term care facility," ostensibly banning "non-essential" people from seeking medical care. Complt., Ex. 3. Yet, that same Order states that "visitors" may be permitted access to hospitals under certain conditions. Complt., Ex. 3.

No reasonable person can make sense of what conduct is permitted under the Orders and what conduct will result in criminal penalties.

### 6. The Orders Violate Plaintiffs' Substantive Due Process Rights Under the Fourteenth Amendment.

The Orders and Defendants' enforcement thereof violate Plaintiffs' substantive due process rights secured by the Fourteenth Amendment to the U.S. Constitution. Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. *See Duncan v. Louisiana*, 391 U.S. 145, 147–149 (1968). In addition, these

17

liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs. *See, e.g.*, *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 484–486 (1965).

Plaintiffs' rights to freedom of religion, assembly, speech, and travel are fundamental rights protected by the U.S. Constitution. *See, e.g.*, *Aptheker v. Secretary of State*, 378 U.S. 500, 520 (1964); *Kent v. Dulles*, 357 U.S. 116, 127 (1958). When a government practice restricts fundamental right, as is the case here, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose, and, even then, only if no less restrictive alternative is available. *See, e.g.* *Memorial Hospital v. Maricopa Cnty.*, 415 U.S. 250, 257-258 (1974); *Dunn*, 405 U.S. at 339-341; *Shapiro v. Thompson*, 394 U.S. 618, 660 (1969); *Maher v. Roe*, 432 U.S. 464, 488 (1977).

Strict scrutiny applies to Plaintiffs' claims because all three Orders mandate that Plaintiffs stay at home because Plaintiffs desired actions are not deemed essential, impinging on their fundamental rights to freedom of religion, assembly, speech, and travel. Defendants' mandates are not "narrowly tailored" to further any compelling governmental interest. Defendants' have granted numerous special exemptions to their bans on public gatherings, including for purportedly "essential" businesses and activities, provided that social distancing practices are observed; and even for out-of-home religious services during Easter. Since these gatherings can be permitted, there can be no doubt that Defendants may, and therefore must, permit Plaintiffs to engage in equivalent constitutionally-protected activities provided that Plaintiffs also adhere to the social distancing guidelines.

### 7. The Orders Violate Article 1, Section 1 of the California Constitution.

All Californians "are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing,

18



and protecting property, and pursuing and obtaining safety, happiness, and privacy. Cal. Const. art. 1, § 1. Understanding the basic fundamental right of liberty, California courts have held that Public Health Officials' authority is limited. Before exercising their full powers to quarantine, there must be "reasonable grounds [] to support the belief that the person so held is infected." *Ex parte Martin*, 83 Cal. App. 2d 164 (1948). Public Health Officials must be able to show "probable cause to believe the person so held has an infectious disease …" *Id.*

In a case that is somewhat analogous to what Californians are facing with the coronavirus pandemic of 2020, California courts found that Public Health Officials could not quarantine 12 blocks of San Francisco Chinatown because of nine deaths due to bubonic plague. *See Jew Ho v. Williamson*, 103 F. 10 (C.C. Cal. 1900); *Wong Wai v. Williamson*, 103 F. 1 (C.C. Cal. 1900). These courts found it "purely arbitrary, unreasonable, unwarranted, wrongful, and oppressive interference with the personal liberty of complainant" who had "never had or contracted said bubonic plague; that he has never been at any time exposed to the danger of contracting it, and has never been in any locality where said bubonic plague, or any germs of bacteria thereof, has or have existed." *Jew Ho*, 103 F. at 10.

In *Jew Ho* and *Wong Wai*, the courts found that there were more than 15,000 people living in the twelve blocks of San Francisco Chinatown who were to be quarantined. The courts found it unreasonable to shut down the ability of over 15,000 people to make a living because of nine deaths. This was one death for every 1,666 inhabitants of Chinatown. As of July 1, 2020, San Bernardino and Riverside Counties have a combined population of 4,650,631 individuals and as of April 11, 2020, San Bernardino and Riverside Counties have a total of 66 coronavirus deaths. That is one death for every 70,464 inhabitants.

California courts have found that "a mere suspicion [of a contagious disease], unsupported by facts giving rise to reasonable or probable cause, will afford no justification at all *for depriving persons of their liberty* and subjecting them to virtual



Plaintiffs' Application for TRO and                        Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

imprisonment under a purported order of quarantine." *Ex parte Arta*, 52 Cal. App. 380, 383 (1921) (emphasis added). Plaintiffs have never had or contracted said coronavirus; they have never been at any time exposed to the danger of contracting it, and have never been in any locality where said coronavirus, or any germs of bacteria thereof, are known to have existed.

Requiring Plaintiffs to abstain from all religious gatherings, despite substantial modifications to satisfy the public health interests at stake, violates their California Constitutional liberty rights.

### 8. Defendants Violate the Equal Protection Clause of the Fourteenth Amendment.

As to Plaintiffs' seventh claim, the Orders and Defendants' enforcement thereof violate the Fourteenth Amendment, both facially and as applied to Plaintiffs. The Fourteenth Amendment of the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal protection requires the state to govern impartially—not draw arbitrary distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objection. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985).

Defendants intentionally and arbitrarily categorize individuals and conduct as either "essential" or "non-essential." Compl. ¶¶ 31-34, 37, 63-65. Those persons classified as "essential," or as participating in essential services, are permitted to go about their business and activities provided certain social distancing practices are employed. *Id*. Those classified as "nonessential," or as engaging in non-essential activities, are required to stay in their residence, unless it becomes necessary for them to leave for one of the enumerated "essential" activities. *Id*.

Strict scrutiny under the Equal Protection Clause applies where, as here, the classification impinges on a fundamental right, including the right to practice religion freely, to right to free speech and assembly, and the right to travel, among

20

DIG
DHILLON LAW GROUP INC.

others. *Maynard v. U.S. Dist. Court for the Cent. Dist. of California*, 701 F. Supp. 738, 742 (C.D. Cal. 1988) ("When a law disadvantages a suspect class or impinges upon a 'fundamental right,' the court will examine the law by applying a strict scrutiny standard"), *aff'd sub nom. Maynard v. U.S. Dist. Court for Cent. Dist. of California*, 915 F.2d 1581 (9th Cir. 1990). Under strict scrutiny review, the law can be justified only if it furthers a compelling government purpose, and, even then, only if no less restrictive alternative is available. *See, e.g. Memorial Hospital*, 415 U.S. at 257-258.

Defendants cannot satisfy strict scrutiny; their arbitrary classifications are not narrowly tailored measures (that further a compelling government interest) because defendants' have granted numerous special exemptions to their bans on public gatherings, including for purportedly "essential" businesses and activities—provided that social distancing practices are observed—and even for out-of-home religious services during Easter. Since these gatherings can be permitted, there can be no doubt that Defendants must permit Plaintiffs to engage in equivalent constitutionally-protected activities provided that Plaintiffs also adhere to the social distancing guidelines.

## B. Plaintiffs Face Imminent Irreparable Harm Absent Immediate Injunctive Relief

"In a case like the one at bar, where the First Amendment is implicated, the Supreme Court has made clear that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury' for purposes of the issuance of a preliminary injunction." *College Republicans at San Francisco State University v. Reed*, 523 F. Supp. 2d 1005, 1011 (N.D. Cal. 2007) (*citing Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 973-74 (9th Cir. 2002), *in turn citing Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also S.O.C., Inc. v. Cnty. of Clark*, 152 F.3d 1136, 1148 (9th Cir. 1998) (holding that a civil liberties organization that had demonstrated probable success on the merits of its First Amendment overbreadth



Plaintiffs' Application for TRO and
For OSC Re: Preliminary Injunction

Case No. 5:20-cv-00755-JGB-KK

claim had thereby also demonstrated irreparable harm). "In other words, the requirement that a party who is seeking a preliminary injunction show 'irreparable injury' is deemed fully satisfied if the party shows that, without the injunction, First Amendment freedoms would be lost, even for a short period." *Reed*, 523 F. Supp. 2d at 1011. "Unlike a monetary injury, violations of the First Amendment 'cannot be adequately remedied through damages.'" *Americans for Prosperity Foundation v. Harris*, 182 F. Supp. 3d 1049, 1058 (C.D. Cal. 2016) (*citing Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009)).

Without an injunction preventing Defendants from further enforcing the Orders will suffer irreparable harm in the form of deprivation of fundamental freedoms secured by the First and Fourteenth Amendment to the U.S. Constitution and the California Constitution. Plaintiffs' irreparable injuries cannot adequately be compensated by damages or any other remedy available at law. Thus, irreparable injury is clearly shown, necessitating the relief Plaintiffs seek in this Application.

**C.    The Balance of Hardships Tips Decidedly in Plaintiffs' Favor.**

In cases implicating constitutional rights, "the 'balancing of the hardships' factor also tends to turn on whether the challengers can show that the regulations they attack are substantially overbroad." *Reed*, 523 F. Supp. 2d at 1101.

Given Plaintiffs' showing of the facially and as-applied invalidity of the vague, overbroad Orders, Plaintiffs necessarily have shown that leaving those Orders in place for even a brief period of time "would substantially chill the exercise of fragile and constitutionally fundamental rights," and thereby constitute an intolerable hardship to Plaintiffs. *Reed*, 523 F.Supp.2d at 1101. As mentioned above, Defendants' ban on communal religious services will deprive Plaintiffs, and potentially millions of other Californians, of their ability to exercise religious freedom as secured by the First and Fourteenth Amendments and Article 1 of the California Constitution.

By contrast, temporarily enjoining Defendants' enforcement of the Orders will not result in hardship to Defendants, who are in a position to adopt, at least on an



Plaintiffs' Application for TRO and                                    Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

interim basis, a more narrowly crafted set of equally applied provisions that enable the government to achieve any legitimate ends without unjustifiably invading First and Fourteenth Amendment freedoms. *See id.* In addition, Defendants will suffer no legitimate harm by accommodating a Plaintiffs' exercise of fundamental rights in the same manner Defendants are accommodating thousands—and millions—of others engaged in secular activities. The Constitution demands no less.

### D.    Injunctive Relief Is in the Public Interest

"As the Ninth Circuit has consistently recognized, there is a significant public interest in upholding First Amendment principles." *Americans for Prosperity Foundation*, 182 F. Supp. 3d at 1059 (internal citations omitted); *see also Doe v. Harris*, 772 F.3d 563, 683 (9th Cir.2014); *Sammartano*, 303 F.3d at 974. As such, the requirement that issuance of a preliminary injunction be in the "public interest" usually is deemed satisfied when it is clear that core constitutional rights would remain in jeopardy unless the court intervened. *Reed*, 523 F. Supp. 2d at 1101. The public is best served by preserving a foundational tenet of this American democracy: religious liberty. *See Sammartano*, 303 F.3d at 974 ("Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles.").

As discussed above, Plaintiffs' core constitutional rights to practice religion freely, free speech, due process, and equal protection, will remain in jeopardy so long as Defendants remain free to enforce their Orders. Accordingly, issuance of injunctive relief is proper, and the Court should grant this Application.

## II.    THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT

Rule 65(c) of the Federal Rules of Civil Procedure provides that a TRO or preliminary injunction may be issued "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).



23

1    However, the Court has discretion as to whether any security is required and, if so, the

2    amount thereof. *See, e.g., Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

3        Plaintiffs request that the Court waive any bond requirement, because enjoining

4    Defendants from unconstitutionally enforcing the orders as to religious activities will

5    not financially affect Defendants, who already categorically exempt specified non-

6    religious activities from compliance. A bond would, however, be burdensome on

7    already burdened Plaintiffs under these circumstances. *See, e.g., Bible Club v.*

8    *Placentia-Yorba Linda School Dist.*, 573 F. Supp. 2d 1291, fn. 6 (C.D. Cal. 2008)

9    (waiving requirement of student group to post a bond where case involved "the

10   probable violation of [the club's] First Amendment rights" and minimal damages to

11   the District of issuing injunction); *citing Doctor John's, Inc. v. Sioux City*, 305 F.

12   Supp. 2d 1022, 1043-44 (N.D. Iowa 2004) ("requiring a bond to issue before

13   enjoining potentially unconstitutional conduct by a governmental entity simply seems

14   inappropriate, because the rights potentially impinged by the governmental entity's

15   actions are of such gravity that protection of those rights should not be contingent

16   upon an ability to pay.").

17                                    **CONCLUSION**

18       Plaintiffs respectfully request that the Court grant Plaintiffs' motion for a

19   temporary restraining order, and issue an order to show cause why a preliminary

20   injunction should not be issued, as follows:

21       1.     Defendants, as well as their agents, employees, and successors in office,

22   shall be restrained and enjoined from enforcing, attempting to enforce, threatening to

23   enforce, or otherwise requiring compliance with any prohibition on Plaintiffs'

24   engagement in religious services, practices, or activities at which the Center for

25   Disease Control's social distancing guidelines are followed.

26       2.     Defendants shall show cause, at a time and place to be directed by the

27   Court, why a preliminary injunction should not issue requiring Defendants to act as

28



Plaintiffs' Application for TRO and                    Case No. 5:20-cv-00755-JGB-KK
For OSC Re: Preliminary Injunction

1   described in above; the temporary restraining order shall remain effective until such

2   time as the Court has ruled on whether a preliminary injunction should issue.

3   Such relief is necessary to prevent Defendants from further violating Plaintiffs'

4   constitutional rights, pending trial on the merits of Plaintiffs' claims.

5                            Respectfully submitted,

6   Date: April 14, 2020           DHILLON LAW GROUP INC.

7

8                   By:   /s/ Harmeet K. Dhillon
                         HARMEET K. DHILLON (SBN: 207873)

9                        harmeet@dhillonlaw.com

10                      MARK P. MEUSER (SBN: 231335)
                        mmeuser@dhillonlaw.com

11                      GREGORY R. MICHAEL (SBN: 306814)
                        gmichael@dhillonlaw.com

12                      DHILLON LAW GROUP INC.

13                      177 Post Street, Suite 700
                        San Francisco, California 94108

14                      Telephone: (415) 433-1700

15

16                      Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

