1   XAVIER BECERRA
    Attorney General of California
2   MARK R. BECKINGTON
    Supervising Deputy Attorney General
3   AMIE L. MEDLEY
    Deputy Attorney General
4   TODD GRABARSKY
    Deputy Attorney General
5   State Bar No. 286999
      300 South Spring Street, Suite 1702
6     Los Angeles, CA  90013
      Telephone:  (213) 269-6044
7     Fax:  (916) 731-2124
      E-mail:  Todd.Grabarsky@doj.ca.gov
8   *Attorneys for Gavin Newsom, in his official*
    *capacity as Governor of California, and Xavier*
9   *Becerra, in his official capacity as Attorney*
    *General of California*

10                IN THE UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                        EASTERN DIVISION

13

14

| | |
|---|---|
| 15  **WENDY GISH, et al.,** | 5:20-cv-00755-JGB-KK |
| 16                              Plaintiffs, | **OPPOSITION OF DEFENDANTS GOVERNOR GAVIN NEWSOM** |
| 17      **v.** | **AND ATTORNEY GENERAL XAVIER BECERRA TO** |
| 18  **GAVIN NEWSOM, in his official** | **PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW** |
| 19  **capacity as Governor of California, et al,** | **CAUSE** |
| 20 | Judge:        The Honorable Jesus G. Bernal |
| 21                              Defendants. | Action Filed: April 13, 2020 |
| 22 | |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................1

Background...........................................................................................................3

   I.     The Governor's Proclamation of a State of Emergency Related to the COVID-19 Pandemic....................................................................3

   II.    The Present Lawsuit..............................................................................5

Legal Standard.....................................................................................................6

Argument ..............................................................................................................7

   I.     Plaintiffs Are Not Likely to Succeed on the Merits of Their Claims ..................................................................................................7

       A.   The State Executive Order Is a Constitutional Exercise of the Governor's Emergency Powers to Combat the COVID-19 Pandemic ..........................................................7

       B.   Even Under the Standard of Review for Non-Emergency Situations, the State Executive Order Would Not Violate Plaintiffs' Constitutional Rights Given the Current Pandemic .....................................................................................14

          1.    The Executive Order Is a Neutral Law of General Application that Survives Rational Basis Review..........15

          2.    The Executive Order Survives Strict Scrutiny ..............16

   II.    The Remaining Factors Weigh Heavily Against Issuance of a Temporary Restraining Order ............................................................20

Conclusion..........................................................................................................23

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abeel v. Clark*
    84 Cal. 226 (1890)...........................................................................................9

*Abiding Place Ministries v. Wooten*
    No. 3:20-cv-00683-BAS-AHG (S.D. Cal. Apr. 10, 2020)................................11

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ..........................................................................7

*Benson v. Walker*
    274 F. 622 (4th Cir. 1921) ................................................................................8

*Compagnie Francaise de Navigation a Vapeur v. Bd. of Health of State of La.*
    186 U.S. 380 (1902) ..........................................................................................8

*Drakes Bay Oyster Co. v. Jewell*
    747 F.3d 1073 (9th Cir. 2014)..........................................................................20

*Hickox v. Christie*
    205 F. Supp. 3d 579 (D.N.J. 2016)................................................................8, 13

*In re Abbott*
    No. 20-50264, 2020 WL 1685929 (5th Cir. Apr. 7, 2020) ...........................9, 10

*In re Approval of the Judicial Emergency Declared in the S. Dist. of Cal.*
    2020 WL 1814265 (9th Cir. Apr. 2, 2020).......................................................10

*Jacobson v. Massachusetts*
    197 U.S. 11 (1905) ..................................................................................8, 9, 10

*Jew Ho v. Williamson*
    103 F. 10 (C.C.N.D. Cal. 1900) ................................................................12, 13

*Kansas v. Hendricks*
    521 U.S. 346 (1997) ..........................................................................................8

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Mazurek v. Armstrong*

4

520 U.S. 968 (1997) ...........................................................................7

5

*Murphy v. Palmer*

6

2017 WL 2364195 (D.N.J. May 31, 2017) ........................................10

7

*Phillips v. City of New York*

775 F.3d 538 (2d Cir.) .........................................................................9

8

*Prince v. Massachusetts*

9

321 U.S. 158 (1944) ....................................................................*passim*

10

*Rasmussen v. Idaho*

11

181 U.S. 198 (1901) ...........................................................................8

12

*Smith v. Avino*

13

91 F.3d 105 (11th Cir. 1996)............................................................10

14

*Stormans, Inc. v. Wiesman*

15

794 F.3d 1064 (9th Cir. 2015)....................................................15, 16

16

*United States v. Chalk*

17

441 F.2d 1277 (4th Cir. 1971).........................................................8, 9

18

*Vaccaro v. Sparks*

19

No. SACV 11-00164, 2011 WL 318039 (C.D. Cal. Jan. 28, 2011).....................6

20

*Whitlow v. California*

203 F. Supp. 3d 1079 (S.D. Cal. 2016) ...............................................9

21

*Winter v. Nat. Res. Def. Council, Inc.*

22

555 U.S. 7 (2008) ...................................................................6, 7, 20

23

*Wong Wai v. Williamson*

24

103 F. 1 (C.C.N.D. Cal. 1900) ....................................................12, 13

25

*Workman v. Mingo Cty. Bd. of Educ.*

26

419 Fed.Appx. 348 (4th Cir. 2011) ...................................................16

27

*Zucht v. King*

28

260 U.S. 174 (1922) ...........................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    First Amendment ..........................................................................6, 20
    Fourteenth Amendment ................................................................6, 9

California Constitution Article 1 ...............................................................6

iv

Defendants California Governor Gavin Newsom and California Attorney General Xavier Becerra (collectively, the State Defendants) file this opposition to Plaintiffs' Application for Temporary Restraining Order and for Order to Show Cause Why Preliminary Injunction Should Not Issue (ECF No. 8).

## INTRODUCTION

The State of California, like the rest of the world, is combatting a public health emergency of a magnitude unseen for at least a century.  COVID-19, the novel coronavirus spreading through the country, is a virulently infectious and frequently deadly disease that already has killed nearly 35,000 Americans, and because the virus is new, there is not yet any vaccine or even widely effective treatment for it.  This extraordinary pandemic calls for swift and decisive action using the limited tools available to curb the disease's spread.  Accordingly, the Governor has proclaimed a state of emergency and issued an Executive Order prohibiting public and private gatherings of any size and directing all Californians except those working in critical infrastructure to stay home to slow the spread of COVID-19 and preserve the health and safety of all Californians.

Both the virulence of COVID-19 and the emergency public health stay-at-home order issued to combat it have forced changes on many fundamental institutions.  Schools have closed their classrooms and moved classes online.  Courthouses have been closed to the public, jury trials have been postponed, and hearings are now conducted telephonically.  Public meetings across the State are similarly being conducted electronically.  And houses of worship have stopped holding in-person services.

Most churches, mosques, synagogues, and other places of worship have accepted the need for these temporary emergency measures, and are now conducting their services online, often through free video conferencing tools such as Zoom, Skype, and WebEx.  Plaintiffs, however, believe that these precautions are unnecessary and that they can conduct in-person services safely by providing

1   hand sanitizers, enforcing physical distancing, and using other measures.  Indeed,

2   they contend that the Executive Order—along with related orders issued by San

3   Bernardino and Riverside Counties—is unconstitutional, claiming that it infringes

4   on their religious freedom to congregate in indoor places of worship and perform

5   rituals that involve physical contact with others.  Moreover, they seek a temporary

6   restraining order to immediately enjoin the enforcement of the Order against

7   religious or faith based services.

8          In seeking emergency equitable relief, plaintiffs always bear a heavy burden,

9   and that burden is even heavier where they are asking the Court to grant such relief

10  in the midst of a public health emergency.  Plaintiffs have not even begun to satisfy

11  this burden.  Indeed, in seeking a temporary restraining order, Plaintiffs all but

12  ignore the extraordinary and imminent threat the COVID-19 pandemic poses to the

13  health and safety of Californians absent measures like those outlined in the

14  Executive Order.  The State, however, has a compelling interest in protecting public

15  health, and it is well-settled that it has broad emergency power to combat an

16  epidemic even where the temporary measures taken to do so restrict activities that

17  normally would be constitutionally protected.  And though the free exercise of

18  one's religion is a fundamental right afforded constitutional protection, as the

19  Supreme Court has recognized, "[t]he right to practice religion freely does not

20  include liberty to expose the community . . . to communicable disease."  *Prince v.*

21  *Massachusetts*, 321 U.S. 158, 166-67 (1944).  Plaintiffs do not—and cannot—show

22  that the Executive Order exceeds those emergency powers.  Therefore, Plaintiffs

23  have failed to show a likelihood of success on their challenge to the Order.

24         Nor have Plaintiffs shown that the balance of equities weighs in favor of a

25  temporary restraining order.  Any injury that Plaintiffs have suffered to their

26  constitutional rights is limited, not only because the Executive Order is temporary

27  and restricted to the current emergency, but also because the Order permits them to

28  conduct services online and even to hold drive-in services as long as those in

2

attendance abide by physical distancing guidelines and refrain from direct and indirect physical contact with others.  Moreover, the public interest weighs heavily against the relief that Plaintiffs seek.  The current pandemic unfortunately provides copious examples of individuals, including asymptomatic ones, spreading COVID-19 throughout communities through attendance at public gatherings, including in places of worship where physical distancing and cleanliness precautions were implemented.  Exempting Plaintiffs from the Executive Order's stay-at-home requirement so they may congregate for extended periods of time would pose a public health risk and create an unreasonable risk of exacerbating the spread of COVID-19, infecting, and potentially killing, many others.  It is hard to imagine a situation in which equitable relief could be more inappropriate.

For these reasons, and those explained herein, the Court should deny Plaintiff's Application for a Temporary Restraining Order.

## BACKGROUND

**I.    THE GOVERNOR'S PROCLAMATION OF A STATE OF EMERGENCY RELATED TO THE COVID-19 PANDEMIC**

In mere months, the infectious coronavirus disease 2019 (COVID-19) has infected nearly two million people and caused the deaths of over 130,000 people worldwide.[1]  In the United States alone, COVID-19 has infected over 600,000 people and caused the deaths of over 30,000 people to date.[2]  California recognized early that COVID-19 has the potential to spread rapidly throughout the state.  As early as December 2019, California began working closely with the national Centers for Disease Control and Prevention, the United States Health and Human Services Agency, and local health departments to monitor and plan for the potential

---

[1] *See* Coronavirus disease 2019 (COVID-19) Situation Report, https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200416-sitrep-87-covid-19.pdf?sfvrsn=9523115a_2 (last accessed April 16, 2020).

[2] *See* Cases in U.S., https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last accessed April 16, 2020).

1    spread of COVID-19 to the United States.  *See* Decl. of Todd Grabarsky in Supp. of

2    Opp'n to Pls.' TRO Ex. 1. The California Department of Public Health has been in

3    regular communication with hospitals, clinics, and other health providers and has

4    been providing guidance to health facilities and providers regarding COVID-19.  *Id.*

5         To prepare for and respond to suspected or confirmed cases of COVID-19 in

6    California and to implement measures to mitigate the spread of COVID-19, the

7    Governor proclaimed a State of Emergency in California on March 4, 2020.  *Id.*

8    This proclamation makes additional resources available, formalizes emergency state

9    actions already underway, and helps the state prepare for the broader spread of

10    COVID-19.  *See* Grabarsky Decl. Ex. 2.

11         On March 19, 2020, the Governor issued Executive Order N-33-20.

12    Grabarsky Decl. Ex. 3.  Executive Order N-33-20 directed all California residents

13    to heed the State public health directives relating to COVID-19, which the

14    Executive Order expressly incorporated in the form of the March 19, 2020 Order of

15    the State Public Health Officer (Public Health Order).  *Id.*  Specifically, the Public

16    Health Order, and thus Executive Order N-33-20, requires "all individuals living in

17    the State of California to stay home or at their place of residence except as needed

18    to maintain continuity of operations of the federal critical infrastructure sectors, as

19    outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-

20    19."  *Id.*  Observing that "[t]he federal government has identified 16 critical

21    infrastructure sectors" considered vital to the United States, the order provides that

22    "Californians working in these 16 critical infrastructure sectors may continue their

23    work because of the importance of these sectors to Californians' health and well-

24    being."  *Id.*  The Order does not identify any specific industry, retailer, or business

25    as essential or provide any specific criteria, instead incorporating the infrastructure

26    designations of the federal government.  *See* Grabarsky Decl. Exs. 3, 5.

27         The Executive Order further provides that the Public Health Officer "may

28    designate additional sectors as critical in order to protect the health and well-being

of all Californians." *Id.* On March 22, 2020, the Public Health Officer designated a list of "Essential Critical Infrastructure Workers."[3] Grabarsky Decl. Ex. 4. Included in that list is "[f]aith based services that are provided through streaming or other technology."[4] *Id.* at 11.

In April 2020, the Counties of Riverside and San Bernardino issued similar "stay-at-home" orders that prohibit non-essential public gatherings. Compl. (ECF No. 1) Exs. 2, 3.

## II. THE PRESENT LAWSUIT

Plaintiffs filed their Complaint in this action on April 13, 2020, against the State Defendants as well as numerous officials of San Bernardino and Riverside Counties. Compl. ¶¶ 10-26 (listing defendants). Plaintiffs include: Wendy Gish, a congregant of the Shield of Faith Family Church in Fontana, California, located in San Bernardino County; Patrick Scales, head pastor at Shield of Faith; James Dean Moffatt, senior pastor at Church Unlimited in Indio, California, located in Riverside County;[5] and Brenda Wood, senior pastor at Word of Life Ministries International, Inc., in Riverside, California. *Id.* ¶¶ 6-9.

Plaintiffs challenge the State's Executive Order and the county orders on state and federal constitutional grounds, alleging primarily that they infringe on Plaintiffs' freedom to engage in in-person religious congregation, worship, and

---

[3] Executive Order N-33-20 and the March 22 Public Health Officer designations will be collectively referenced as the "Executive Order."

[4] Given the rapidly evolving circumstances relating to COVID-19 in California and in the United States, the State Defendants continue to update the list of essential workers and may issue other orders or directives in the future to combat the further spread of COVID-19. *See* Grabarsky Decl. Ex. 3.

[5] On April 8, 2020, the County of Riverside sought a temporary restraining order in the California Superior Court for the County of Riverside enjoining Plaintiff James Moffatt and Church Unlimited from holding an in-person service on Easter Sunday. That request was denied as moot once Mr. Moffatt represented that he would "not host in-person church services, including but not limited to on Easter Sunday, April 12, 2020." Grabarsky Decl. Ex. 6.

ritual.  In total, Plaintiffs bring eleven claims under the First and Fourteenth Amendments to the United State Constitution and Article 1 of the California Constitution.  *See id.* ¶ 3.  Plaintiffs primarily object to the Executive Order's prohibition on in-person public gatherings and the lack of an exemption for in-person religious worship services.  They contend that the Order infringes on their religious mandate to congregate in indoor places of worship as well as to perform rituals that involve the physical touching of other individuals such as baptisms, communions, and "lay[ing] hands on people to pray for them." *Id.* ¶¶ 6-9, 88.

On April 14, 2019, one day after filing their Complaint, Plaintiffs filed the instant Application for Temporary Restraining Order and for Order to Show Cause Why Preliminary Injunction Should Not Issue (herein, "Pls.' TRO").[6]  ECF No. 8. For the reasons explained herein, the Court should deny that Application.

## LEGAL STANDARD

"An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action." *Vaccaro v. Sparks*, No. SACV 11-00164, 2011 WL 318039, at *1 (C.D. Cal. Jan. 28, 2011) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 978, 980 (D.D.C. 1952)).  Temporary restraining orders are subject to standards similar to those governing preliminary injunctions.  Plaintiffs must demonstrate that they are likely to succeed on the merits of their claims, that they are likely to suffer irreparable harm without preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*,

---

[6] In their memorandum of points and authorities supporting their TRO Application, Plaintiffs request that Defendants be enjoined from enforcing the relevant orders against *Plaintiffs*.  Pls.' TRO at 24-25.  However, in their proposed order submitted with their application, Plaintiffs request that Defendants be enjoined from enforcing the orders against "any faith based or religious services *in the State of California*." ECF No. 8-1. Neither form of relief is merited here.

555 U.S. 7, 20 (2008); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Alternatively, injunctive relief "is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134-35. Even under this alternative sliding scale test, plaintiffs must make a showing of all four *Winter* factors. *Id.* at 1132, 1135. Injunctive relief "is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

## ARGUMENT

Plaintiffs have not met their burden of demonstrating that they are entitled to a temporary restraining order or a preliminary injunction in this case. They cannot demonstrate a likelihood of success on the merits of their claims in light of the current public health crisis and the constitutional standard applicable to the Governor's exercise of his emergency powers to combat that crisis. Nor have Plaintiffs shown that the balance of equities tips in their favor. To the contrary, any harm they may suffer in absence of a temporary restraining order is greatly outweighed by the significant risk of harm to the public if Plaintiffs are permitted to hold gatherings that could further spread COVID-19 and undermine efforts to protect the health of the public. Plaintiffs' application should be denied.

## I. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

### A. The State Executive Order Is a Constitutional Exercise of the Governor's Emergency Powers to Combat the COVID-19 Pandemic.

California is in the throes of an unprecedented, once-in-a-century public health crisis that has essentially brought normal life to a halt. In response, the Governor— along with other state, local, and national officials—proclaimed a state of

emergency and issued the Executive Order to protect the health and safety of Californians.  In an extraordinary public health crisis such as this, the State has broad emergency powers, and courts must afford deference to temporary actions taken to curb the spread of a dangerous disease and mitigate its effects.

The Supreme Court has long recognized that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905) (internal quotation marks omitted).[7]  In that regard, the Court has permitted states to enact "quarantine laws and health laws of every description," *id.* at 25, similar to the Executive Order's measures to combat the COVID-19 pandemic.  *See, e.g.*, *Compagnie Francaise de Navigation a Vapeur v. Bd. of Health of State of La.*, 186 U.S. 380 (1902) (upholding quarantine law against constitutional challenges); *Rasmussen v. Idaho*, 181 U.S. 198 (1901) (permitting a ban on certain animal imports if evidence of disease was found); *see also Benson v. Walker*, 274 F. 622 (4th Cir. 1921) (upholding board of health resolution that prevented carnivals and circuses from entering a certain county in response to the 1918-1919 influenza epidemic); *Hickox v. Christie*, 205 F. Supp. 3d 579 (D.N.J. 2016) (upholding the eighty-hour quarantine of a nurse returning from treating Ebola patients in Sierra Leone).

The State's proclamation of a state of emergency and invocation of emergency powers "necessarily restrict[] activities that would normally be constitutionally protected," and "[a]ctions which citizens are normally free to engage in [have] become subject to criminal penalty." *United States v. Chalk*, 441 F.2d 1277, 1281 (4th Cir. 1971).  But "measures [that] would be constitutionally intolerable in ordinary times [] are recognized as appropriate and even necessary responses to the

---

[7] *Jacobson*'s restriction of civil liberties in the face of overriding circumstances has been recognized as potent precedent by the Supreme Court as recently as 1997.  *See Kansas v. Hendricks*, 521 U.S. 346, 356 (1997) (recognizing that an individual's constitutionally protected interest in avoiding physical restraint may be overridden in the civil context) (citing *Jacobson*, 197 U.S. at 26).

present [COVID-19 pandemic] crisis." *In re Abbott*, No. 20-50264, 2020 WL 1685929, at *9 (5th Cir. Apr. 7, 2020).  Although the Constitution is not suspended during a state of emergency, the Supreme Court has recognized that "under the pressure of great dangers," constitutional rights may be reasonably restricted "as the safety of the general public may demand."[8]  *Jacobson*, 197 U.S. at 29; *see also Prince*, 321 U.S. at 166-67 ("The right to practice religion freely does not include liberty to expose the community . . . to communicable disease.").  This "settled rule" allows states facing emergencies to "restrict, for example, one's right to peaceably assemble, *to publicly worship*, to travel, and even to leave one's home." *Abbott*, 2020 WL 1685929, at *1 (emphasis added).

To combat a virulently infectious disease in an emergency pandemic, the State must be able to take swift and decisive action.  *Cf. Chalk*, 441 F.2d at 1281.  The court's review of temporary measures taken during such an emergency, accordingly, is "limited to a determination of whether the [executive's] actions were taken in good faith and whether there is some factual basis for [the Governor's] decision that the restrictions he imposed were necessary to maintain order."  *Id.* (citing *Moyer v. Peabody*, 212 U.S. 78 (1909)); *see also Jacobson*, 197 U.S. at 29 ("reasonable regulations" may be implemented in the face of an

---

[8] That is why courts have routinely upheld mandatory vaccination programs against infectious diseases even in the face of challenges based on freedom of religion and other liberties.  *See, e.g.*, *Jacobson*, 197 U.S. 11 (upholding a mandatory vaccination program for smallpox against a Fourteenth Amendment challenge); *Zucht v. King*, 260 U.S. 174 (1922) (upholding the exclusion of non-vaccinated children from a school district in against a due process and equal protection challenge); *Abeel v. Clark*, 84 Cal. 226 (1890) (upholding vaccination mandate in California); *Phillips v. City of New York*, 775 F.3d 538 (2d Cir.) (finding that a challenge to mandatory vaccination law was "foreclosed" by *Jacobson*), *cert. denied*, 136 S.Ct. 104 (2015); *Whitlow v. California*, 203 F. Supp. 3d 1079, 1083 (S.D. Cal. 2016) (finding no likelihood of success on a free exercise challenge to a law removing a religious- or conscious-based exemption for mandatory vaccination of schoolchildren).

infectious disease epidemic); *Abbott*, 2020 WL 1685929, at *8-*9 (applying a deferential, rational-basis standard to an executive order restricting otherwise constitutionally protected abortion access in the face of the COVID-19 crisis); *Murphy v. Palmer*, 2017 WL 2364195, at *10 (D.N.J. May 31, 2017) ("Courts have concluded that, during a state of emergency, governmental entities may impose more onerous restrictions upon its citizens, as long as such restrictions are reasonably necessary for the preservation of order."). This deferential standard recognizes that, in a public health crisis, "it is no part of the function of a court . . . to determine which one of two modes was likely to be the most effective for the protection of the public against disease." *Jacobson*, 197 U.S. at 30. And, it reflects the reality that "governing authorities must be granted the proper deference and wide latitude necessary for dealing with . . . emergenc[ies]." *Smith v. Avino*, 91 F.3d 105, 109 (11th Cir. 1996), *abrogated on other grounds*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998); *see also In re Approval of the Judicial Emergency Declared in the S. Dist. of Cal.*, 2020 WL 1814265 (9th Cir. Apr. 2, 2020) (approving declaration of emergency extending time limits in the Speedy Trial Act for bringing accused criminal defendants to trial).[9]

The current emergency brought on by the COVID-19 pandemic is undoubtedly a moment demanding deference to temporary measures taken to combat that pandemic. The Governor issued the Executive Order and ensuing directives in good-faith response to the imminent threat COVID-19 poses to the State of California and its residents. To date, the disease has infected over 600,000

---

[9] In citing case law recognizing the broad authority of state executive officials to combat a public health emergency, the State Defendants do not mean to suggest that they necessarily agree with the actions taken by officials of other states in each and every case. But the broad principle of deference to state officials stands universally recognized.

1   people and caused the deaths of over 30,000 people in the United States;[10] in

2   California, which fortunately took measures early on to prevent the spread, more

3   than 26,000 people have been infected and 890 have died.[11]  The virulently

4   infectious nature of the novel coronavirus and the absence of any vaccination or

5   widely effective treatment has made the Order's temporary prohibition on

6   gatherings crucial to slowing spread of the disease.[12]  Public gatherings generally—

7   including, but not limited to, in-person religious services—have fueled the spread

8   of COVID-19.  *See* Section I(B)(2), *infra* (detailing instances of public gatherings

9   exacerbating the spread of COVID-19).  Authorities have estimated that, in the

10  worst case scenario, millions of Americans will die if governments did nothing to

11  prevent the spread of COVID-19, and the CDC has determined that limiting face-

12  to-face contact is the best way to slow to its spread.[13]  The clear and manifest need

13  for the Executive Order's temporary prohibition on in-person gatherings in light of

14  this emergency—which parallels similar measures by other state, local, and national

15  officials—refutes any suggestion that the Governor acted in bad faith or arbitrarily.

16  Accordingly, the Governor's "stay-at-home" strategy for combating the spread of

17

18          [10] *See* Cases in U.S., https://www.cdc.gov/coronavirus/2019-ncov/cases-
19  updates/cases-in-us.html (last accessed April 16, 2020).
            [11] *See* COVID-19 by the Numbers,
20  https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.asp
21  x#COVID-19%20by%20the%20Numbers (last accessed April 16, 2020).
            [12] Plaintiffs appear to argue that because "the anticipated national death toll
22  related to the virus has decreased substantially, by an order of magnitude,"
    Defendants should loosen the restrictions currently in place.  Pls.' TRO at 2.  This
23  argument ignores the role played by the precise types of orders Plaintiffs challenge
24  here in the reduction of anticipated deaths and the ongoing nature of the threat.  The
    argument also ignores the proper role of government, as distinct from Plaintiffs or
25  even the Court, in making informed decisions regarding what emergency measures
26  are no longer needed and when.
            [13] *See* Social Distancing, Quarantine, and Isolation,
27  https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-
28  distancing.html (last accessed April 16, 2020).

COVID-19 warrants appropriate judicial deference. *See Abiding Place Ministries v. Wooten*, No. 3:20-cv-00683-BAS-AHG (S.D. Cal. Apr. 10, 2020) (ECF No. 7) (denying an *ex parte* motion for a temporary restraining order in a religious free exercise challenge to San Diego County's stay-at-home COVID-19 order) (available at Grabarsky Decl. Ex. 7).

Plaintiffs have not met their burden of showing that the Executive Order was issued in bad faith, nor do they argue a lack of rational basis for the Order. Although they recognize the state of emergencies proclaimed at the national and state level, Plaintiffs contend that their religious exercise rights have been violated as if this temporary, emergency action occurred during normal times. But Plaintiffs do not cite any cases applying the constitutional analysis applicable under such extraordinary emergency circumstances as the COVID-19 pandemic. In fact, Plaintiffs largely ignore the once-in-a-century nature of the current global health crisis, and they fail to consider the scope of the COVID-19 pandemic, the Governor's rationale behind the Executive Order, the Order's temporary nature, or its effectiveness so far in slowing the spread of COVID-19.

The only case Plaintiffs cite involving a government order issued to combat an infectious disease concerned a suspect quarantine of San Francisco's Chinatown in 1900. *See* Pls.' TRO at 19 (analogizing *Jew Ho v. Williamson*, 103 F. 10 (C.C.N.D. Cal. 1900) and *Wong Wai v. Williamson*, 103 F. 1 (C.C.N.D. Cal. 1900) to the COVID-19 pandemic). But the situation in that case was drastically different from the present COVID-19 pandemic; it involved a racially motivated quarantine of a few city blocks. The *Jew Ho* court found that the quarantine of tens of thousands of persons in the same area where nine incidents of the bubonic plague purportedly occurred was an irrational measure that would not contain the disease but, to the contrary, would "increase its danger and its destructive force." *Jew Ho*, 103 F. at 22-23. Thus, the purported quarantine was "not a reasonable regulation to accomplish the purposes sought," especially considering that the evidence

demonstrated that "the bubonic plague has not existed, and does not now exist, in San Francisco." *Id.* at 22-23, 26.[14]  That conclusion was bolstered by the finding of an impermissible motivation:

> The evidence here is clear that this is made to operate against the Chinese population only, and the reason given for it is that the Chinese may communicate the disease from one to the other.  That explanation, in the judgment of the court, is not sufficient.  It is, in effect, a discrimination, and it is the discrimination that has been frequently called to the attention of the federal courts where matters of this character have arisen with respect to Chinese.

*Id.* at 23; *see also Hickox*, 205 F. Supp. 3d at 592 n.4 ("The rationale for the quarantine [in *Jew Ho*] was also suspect on its own terms. . . . [T]he court found the quarantine to be discriminatory because it targeted people of Chinese origin. . . . There is, in the fact patterns of the old cases, a lamentable tinge of xenophobia; declarations of quarantine seem to have borne some relation to exclusionary sentiment.").  *Jew Ho*'s decision to overturn the lamentable order before it does not undermine in any way the numerous cases permitting the State to impose temporary restrictions on constitutionally protected freedoms—including religious freedoms— to combat a public health crisis in good faith.

It is also important to recognize that the Executive Order is limited in scope. Plaintiffs may continue their religious practices in their homes and connect with others in their religious communities online or through other technologies.  Indeed, drive-in worship services are permitted under the existing Executive Order, which expressly allows "[f]aith based services that are provided through . . . other technology," as long as the individuals engaged in such services abide by physical distancing guidelines and refrain from direct and indirect physical touching of others.  And while the inability to hold in-person indoor services does restrict the

---

[14] *Wong Wai v. Williamson*, too, is inapposite in that it involved racially motivated, irrational, and dangerous measures directed at persons of Chinese descent, measures that endangered public health and safety. 103 F. at 7-9.

1     manner in which Plaintiffs may practice their religion during the existing

2     emergency, the Executive Order and its suspension on public gatherings are

3     temporary.

4          In sum, California has a legitimate—and, indeed, compelling—interest in

5     slowing the spread of COVID-19 and protecting public health, and the temporary

6     stay-at-home order issued by the Governor is rationally related to that purpose.

7     And though Plaintiffs' religious exercise rights are fundamental, they do not

8     include the "liberty to expose the community . . . to communicable disease,"

9     *Prince*, 321 U.S. at 166-67, especially one as contagious and deadly as COVID-19.

10         Therefore, Plaintiffs are unlikely to succeed on the merits of their claims

11    challenging the Executive Order.

12

13      **B.**     **Even Under the Standard of Review for Non-Emergency Situations, the State Executive Order Would Not Violate Plaintiffs' Constitutional Rights Given the Current Pandemic.**

14

15          For the reasons explained in the previous section, the State's Executive Order

16    is entitled to substantial judicial deference in light of the public health emergency it

17    attempts in good faith to combat.  But even if Plaintiffs' claims are analyzed under

18    the normally applicable constitutional standard of review that is applied in non-

19    emergency circumstances, Plaintiffs' claims are still unlikely to succeed because

20    the Governor's Order is a response to extraordinary health concerns presented by

21    the pandemic.  Plaintiffs bring eleven claims raising a variety of constitutional

22    issues, such as free speech, assembly, due process, equal protection, and the federal

23    Establishment Clause.  All of those claims, however, hinge on Plaintiffs' right to

24    freely exercise their religious rights by holding in-person gatherings during the

25    current pandemic despite the Executive Order's stay-at-home provisions.[15]

26    _____

27          [15] In light of the expedited circumstances under which Plaintiffs' Application

28    was filed and is being heard, the State Defendants consider all the claims under the

(continued…)

1

2

### 1. The Executive Order Is a Neutral Law of General Application that Survives Rational Basis Review.

3

4

5

6

7

8

The Executive Order does not violate Plaintiffs' constitutional right to freedom of religion because it is a neutral law of general application. "[A] neutral law of general application need not be supported by a compelling government interest even when 'the law has the incidental effect of burdening a particular religious practice.'" *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075-76 (9th Cir. 2015). Instead, "[s]uch laws need only survive rational basis review." *Id.* at 1076.

9

10

11

12

13

14

15

16

17

The Executive Order is a neutral law. It "make[s] no reference to any religious practice, conduct, belief, or motivation" and is thus facially neutral. *Id.* The Executive Order is also operationally neutral, because it does not single out religious or faith based services as opposed to other public gatherings such as sporting events, conferences, or festivals. To the contrary, the Order is broad and instructs California residents to heed the Public Health Officer's order to "stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors." Grabarsky Decl. Ex. 3. The Order makes no exceptions for public gatherings of any kind.

18

19

20

21

22

23

24

The Executive Order is also generally applicable. It does not "'in a selective manner, impose[] burden[] only on conduct motivated by religious belief.'" *Stormans*, 794 F.3d at 1079 (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993)). Rather, the Order broadly instructs California residents to heed the Public Health Officer's order to "stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors." Grabarsky Decl. Ex. 3. As a result of the COVID-

25

26

27

28

free exercise jurisprudential analysis. Should the Court wish to analyze the claims that are not explicitly labeled as free exercise claims under their corresponding constitutional analyses, the State Defendants would be happy to provide supplemental briefing demonstrating why those claims are unlikely to prove successful.

19 pandemic and Executive Order, a wide variety of California businesses and community activities have shut down or reduced operations.  Rather than allow people to gather, restaurants have shuttered dining rooms, sporting events and concerts have been cancelled, schools have moved online, and outdoor recreational areas like beaches, parks, playgrounds, and hiking trails are off-limits; even the state and federal courts have taken the drastic measures of closing their doors with only narrow exceptions.  For Plaintiffs to argue that the Executive Order targets them based on their religion ignores the dire public health crisis that has halted nearly every type of public gathering across California.

Because the Executive Order is both neutral and generally applicable, it is subject to rational basis review, which it easily satisfies.  *See Stormans*, 794 F.3d at 1084.  California's interest in stopping the spread of COVID-19 and protecting the health of its citizens is not only legitimate—it is compelling.  *See* Section I(A)(1), *supra*, and Section I(C), *infra*.  And the temporary stay-at-home instructions issued in the Executive Order are rationally related to that purpose.

## 2. The Executive Order Survives Strict Scrutiny.

As explained above, there is no reason to apply strict scrutiny to Plaintiffs' claims in light of the current pandemic emergency and also the neutral and generally applicable nature of the Executive Order.  But even if strict scrutiny were applied, the Executive Order would satisfy that standard.  The State and other Defendants have a compelling interest in protecting the public from the spread of the COVID-19 virus.  As explained above, "[t]he right to practice religion freely does not include liberty to expose the community . . . to communicable disease." *Prince*, 321 U.S. at 166-67; *see also Workman v. Mingo Cty. Bd. of Educ.*, 419 Fed.Appx. 348, 353 (4th Cir. 2011) ("[T]he state's wish to prevent the spread of communicable diseases clearly constitutes a compelling interest.").  Plaintiffs do not—and cannot—argue otherwise.

16

1    To appreciate the gravity of the threat facing the State of California and its

2    residents, one need only to look at the number of confirmed cases of COVID-19

3    and the resulting deaths that have occurred in the state of New York—222,284

4    cases and 12,192 deaths as of April 16, 2020.[16]  New York state has suffered 1,161

5    cases and 50.3 deaths per 100,000 people, compared to California's 61 cases and

6    1.8 deaths per 100,000 people.[17]  Indeed, California's swift and decisive measures

7    in instructing residents to stay at home and prohibiting public gatherings may prove

8    to have been determinative, allowing the State to limit the spread of the disease and

9    not experience the overwhelming of hospitals and health care providers that has

10   been seen in other places.  Thus, the State has a compelling interest in continuing

11   its public health measures, including the Executive Order, that appear to be

12   working.

13   The Executive Order is narrowly tailored to serve the State's interest in

14   avoiding the spread of the COVID-19 disease because the virus is highly

15   contagious and has been shown to spread from person to person, including and

16   especially at public gatherings.  The current pandemic has provided many examples

17   of individuals, including asymptomatic individuals, spreading the virus through

18   attendance at public gatherings.  Such gatherings, including religious services, have

19   fueled the spread of COVID-19:

20

21

22   [16] *See* NYSDOH COVID-19 Tracker, https://covid19tracker.health.ny.gov/
23   views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-
     Map?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n; Fatalities,
24   https://covid19tracker.health.ny.gov/views/NYS-COVID19-
     Tracker/NYSDOHCOVID-19Tracker-
25   Fatalities?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n (last accessed April 16,
26   2020).
     [17] *See* Regan Morris, How California kept ahead of the curve,
27   https://www.bbc.com/news/world-us-canada-52272651 (last accessed April 16,
28   2020).

- In South Korea, as of March 25, 2020, at least 5,080 confirmed cases of COVID-19—over half of South Korea's confirmed cases—have been traced back to one individual who attended a religious service at the Shincheonji Church of Jesus in Daegu.[18]

- Near Seattle, Washington, a church choir held its weekly rehearsal at Mount Vernon Presbyterian Church on March 10, 2020.  Following that gathering, at least forty-five individuals were diagnosed with COVID-19 and at least two died. This spread occurred even though, according to news reports, hand sanitizer was offered to the choir members at the rehearsals, the members attempted to refrain from physical contact with one another, and the members tried to maintain physical distance between one another.[19]

- On April 6, 2020, Kansas Governor Lee Norman announced that the state had identified eleven clusters of COVID-19 cases, three of which were linked to churches.[20]

- In California, seventy-one cases of COVID-19 have been linked to the Bethany Slavic Missionary Church in Sacramento.[21]

---

[18] *See* Youjin Shin, Bonnie Berkowitz, Min Joo-Kim, *How a South Korean church helped fuel the spread of the coronarvirus*, Washington Post, March 25, 2020, https://www.washingtonpost.com/graphics/2020/world/coronavirus-south-korea-church/.

[19] *See* Richard Read, *A choir decided to go ahead with rehearsal. Now dozens have COVID-19 and two are dead*, Los Angeles Times, March 29, 2020, https://www.latimes.com/world-nation/story/2020-03-29/coronavirus-choir-outbreak.

[20] *See* Jonathan Shorman, *Kansas has 3 church-related COVID-19 clusters, state says amid scramble for supplies*, The Wichita Eagle, April 6, 2020, https://www.kansas.com/news/coronavirus/article241810656.html.

[21] *See* Anita Chabria, Sean Greene, Rong-Gong Lin II, *Pentecostal church in Sacramento linked to dozens of coronavirus cases*, Los Angeles Times, April 2, 2020, https://www.latimes.com/california/story/2020-04-02/pentecostal-church-in-sacramento-linked-to-dozens-of-coronavirus-cases.

1     Given the documented examples of how public gatherings can lead to the

2     spread of the virus not only to those in attendance, but also to the larger

3     community, the Executive Order's instruction to residents to stay home and the

4     guidance to avoid public gatherings is no broader than required to address the

5     problem at hand.  As recognized above, "[t]he right to practice religion freely does

6     not include liberty to expose the community . . . to communicable disease." *Prince*,

7     321 U.S. at 166-67.

8         In addition, despite the necessary, temporary prohibition on public gatherings,

9     Plaintiffs and other Californians who wish to maintain their religious practices

10    during the current emergency have options to stay connected with their

11    communities and to hold religious services other than gathering in person.

12    Religious leaders and staff are specifically included in the Public Health Officer's

13    list of workers who provide an essential service so that they may continue

14    providing religious services in any form other than in-person gatherings involving

15    close physical proximity.  Grabarsky Decl. Ex. 4.  These options include free

16    streaming services online and conducting drive-in services, where appropriate

17    distancing precautions are taken.

18        Plaintiffs propose alternatives to the Executive Order's instruction to stay

19    home, such as wearing masks and maintaining six feet of physical distance between

20    congregants.  But notably absent from their application is any evidence that those

21    measures would be as effective in combatting the spread of COVID-19 as

22    refraining from public gatherings.  In fact, scientific research on that issue

23    continues to evolve on almost a daily basis.[22]  Because Plaintiffs have not shown

24    that their proposed measures would be effective in addressing the compelling

25        [22] *See*, *e.g.*, Knvul Skeikh, James Gorman and Kenneth Chang, *Stay 6 Feet*

26    *Apart, We're Told.  But How Far Can Air Carry Coronavirus?*, New York Times,

27    April 14, 2020, https://www.nytimes.com/2020/04/14/health/coronavirus-six-feet.html; Michelle Roberts, *Coronavirus: Who needs masks or other protective*

28    *gear?*, BBC News, April 13, 2020, https://www.bbc.com/news/health-51205344.

interest in stopping the spread of COVID, Defendants are under no obligation to adopt them and thus gamble with the public's health and safety.

For these reasons, and because the Executive Order addresses a compelling government interest in combatting the virulence of the COVID-19 pandemic, the Order satisfies strict scrutiny. For this reason as well, Plaintiffs have failed to show a likelihood of success on the merits.

## II. THE REMAINING FACTORS WEIGH HEAVILY AGAINST ISSUANCE OF A TEMPORARY RESTRAINING ORDER.

Plaintiffs' motion fails for an additional, independent reason. To obtain a temporary restraining order, Plaintiffs must show that they will suffer irreparable harm, that balance of equities tips in their favor, and that a temporary restraining order is in the public interest. *Winter*, 555 U.S. at 20; *see also Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) ("Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge."). Plaintiffs do not—and cannot—make this showing.

Plaintiffs contend that they will suffer irreparable harm in the absence of a temporary restraining order because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury for purposes of the issuance of a preliminary injunction." Pls.' TRO at 21 (internal quotation marks omitted). Even if, however, Plaintiffs could show a constitutional violation, any injury suffered by them would be limited. The Executive Order is temporary, and it does not prohibit them from conducting religious services, only from conducting in-person gatherings during the present health emergency. And Plaintiffs have other options to continue their religious practices to the extent feasible given the current crisis, including by holding religious services online using the many free services now available or holding drive-in services without any direct or indirect physical contact.

Any harm that Plaintiffs might suffer as a result of such temporary restrictions is far outweighed by the potential harm to the public health and to individuals in Plaintiffs' community from conducting in-person services. The public interest would not be served by the temporary restraining order Plaintiffs seek—far from it, the public interest in the health, safety, and well-being of individuals and the community would be greatly threatened. Permitting indoor public gatherings could have detrimental effects far beyond those individuals who would choose to disregard government warnings and orders and attend public gatherings. One reason COVID-19 is so contagious, and thus dangerous, is that "a significant portion of individuals with coronavirus lack symptoms ('asymptomatic') and that even those who eventually develop symptoms ('pre-symptomatic') can transmit the virus to others before showing symptoms."[23] Thus, Plaintiffs' assurances that they themselves "[t]o [their] knowledge, have never had or contracted the coronavirus" and "do not believe that [they've] ever been in close proximity or exposed to it" are of no consequence. Decl. of Brenda Wood ¶ 7; Decl. of Patrick Scales ¶ 8; Decl. of James Moffatt ¶ 11; Decl. of Wendy Gish ¶ 7. Likewise, Plaintiffs' representations that, if permitted to hold in-person religious services, they will abide by CDC guidance on physical distancing are insufficient. Indeed, Plaintiffs do not even specify the CDC guidance they intend to follow. Notably, even while recommending that individuals maintain physical distance and wear face coverings, the CDC also states that "[t]his recommendation complements and does not replace

---

[23] *See* Recommendation Regarding the Use of Cloth Face Coverings, Especially in Areas of Significant Community-Based Transmission, CDC, April 3, 2020, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html#studies.

the President's Coronavirus Guidelines for America," which advises individuals to "avoid social gatherings in groups of more than 10 people."[24]

Moreover, the examples discussed above in Section I(B)(2) demonstrate that allowing public gatherings for *any* reason beyond those recognized as essential to the health and safety of the community—including religious reasons—puts not only those in attendance at the gathering, but the entire surrounding community, including individuals who do not wish to participate in religious worship or attend gatherings or any type, at risk of contracting and spreading COVID-19. Those examples even include gatherings were individuals took distancing and cleanliness precautions.

The rights of all Californians to practice their religion freely are of fundamental importance. However, those rights must be considered along with these extraordinary circumstances in which each and every public gathering—whether at a church, temple, or mosque, or in a stadium, park, school, or courthouse—places the lives and health of Californians at risk. In light of the ongoing global pandemic, a temporary restraining order exempting religious and faith based gatherings from the Executive Order and the various county orders would not be in the public interest, but instead would threaten the effectiveness of the State's efforts to stop the spread of COVID-19 and protect the health of all individuals in California.

Therefore, and because the public interest in keeping the Executive Order in place greatly outweighs any harm caused to Plaintiffs, the remaining factors weigh heavily against issuing the temporary restraining order.

---

[24] *See* 30 Days to Slow the Spread, available at https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf (last accessed April 16, 2020).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Application for Temporary Restraining Order.

Dated:  April 17, 2020                              Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General


*/s/ Todd Grabarsky*
TODD GRABARSKY
Deputy Attorney General
AMIE L. MEDLEY
Deputy Attorney General
*Attorneys for Gavin Newsom, in his official capacity as Governor of California, and Xavier Becerra, in his official capacity as Attorney General of California*