1  JAMES E. BROWN, Assistant County Counsel (SBN 162579)
   RONAK N. PATEL, Deputy County Counsel (SBN 249982)
2  KELLY A. MORAN, Deputy County Counsel (SBN 267147)
   OFFICE OF COUNTY COUNSEL
3  3960 Orange Street, Suite 500
   Riverside, CA  92501-3674
4  Telephone:  (951) 955-6300
   Facsimile:  (951) 955-6363
5  Email:    kmoran@rivco.org

6

7  Attorneys for Defendants, CAMERON KAISER, in his official capacity as the
   Riverside County Public Health Officer; GEORGE JOHNSON, in his official capacity as
8  Riverside County Executive Officer and Director of Emergency Services; CHAD BIANCO,
   in his official capacity as the Riverside County Sheriff; KEVIN JEFFRIES, in his official
9  capacity as a Riverside County Supervisor; KAREN SPIEGEL, in her official
   capacity as a Riverside County Supervisor; CHUCH WASHINGTON, in his official
10 capacity as a Riverside County Supervisor; V. MANUEL PEREZ, in his official capacity as
   a Riverside County Supervisor; and JEFF HEWITT, in his official capacity as a Riverside
   County Supervisor

11

12                  UNITED STATES DISTRICT COURT

13         CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

14

15  WENDY GISH, an individual, *et al.*,          )   Case No. 5:20-cv-00755-JGB-KK
                                                  )
16                 Plaintiffs,                    )   Judge  Hon. Jesus G. Bernal
                                                  )   Magistrate Judge Kenly Kiya Kato
17  v.                                            )
                                                  )   **COUNTY OF RIVERSIDE, ET AL.'S,**
18  GAVIN NEWSON, in his official                 )   **OPPOSITION TO PLAINTIFFS'**
    capacity as Governor of California, *et al.*, )   **APPLICATION FOR TEMPORARY**
19                                                )   **RESTRAINING ORDER (DOCKET**
                                                  )   **NO. 8)**
20                 Defendants.                    )
                                                  )   *(Filed concurrently with:*
21                                                )   *Declaration of Kelly A. Moran;*
                                                  )   *Declaration of Jason Anderson;*
22                                                )   *Declaration of Dr. Cameron Kaiser; and*
                                                  )   *Request for Judicial Notice)*
23                                                )
                                                  )   **DATE:**  TBD
24                                                )   **TIME:**  TBD
                                                  )   **COURTROOM:**  1
25                                                )   **LOCATION:**  3470 Twelfth Street
                                                  )   Riverside, CA 92501-3801
26                                                )
                                                  )   Complaint Filed: April 14, 2020
27  _____)
28

---

1

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY
RESTRAINING ORDER (DOCKET NO. 8)**

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ....................................................................   7

II.    BACKGROUND AND FACTS ................................................   8

III.   LEGAL ANALYSIS – Plaintiffs are Not Entitled to a TRO ....   15

       A. Standard for Issuance of a TRO ............................................   15

       B. It is Unlikely that Plaintiffs Will Succeed on the Merits ......   16

            1.  The Free Exercise Clause and the California Constitution

                Have Not Been Violated. ................................................   16

            2.  The Establishment Clause Has Not Been Violated..........   20

            3.  The Orders Do Not Violate Plaintiff's Right to Free Speech   24

            4.  Plaintiffs' Right to Assembly is Not Violated .................   26

            5.  County's Orders are Not Vague, Nor are they Void........   28

            6.  Plaintiffs' General Due Process Argument Fails .............   29

            7.  Plaintiffs' Right to Liberty Has Not Been Violated.........   30

            8.  Plaintiffs Are Not a Member of a Protected Class...........   34

       C. Plaintiffs' Do Not Face Irreparable Injury ............................   35

       D. The Balance of Equities and Public Interest Support Denial

            Of the TRO .............................................................................   35

IV.    CONCLUSION                                                                      36

COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY
RESTRAINING ORDER (DOCKET NO. 8)

# **TABLE OF AUTHORITIES**

**Cases**

*Aids Healthcare Foundation v. Los Angeles County Department of Health* (2011) 197
  Cal.App. 8th 693, 701-702 ...................................................................................... 31

*Albright v. Oliver*, 510 U.S. 266, 273-274 (1994) ........................................................ 30

*Alexander v. United States*, 509 U.S. 544, 550 (1993) .................................................. 24

*Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ............ 15

*Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) .......................................... 34

*Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) .......... 26

*Cantwell v. State of Connecticut*, 310 U.S. 296 (1940) .................................................. 17

*Caribbean Marine Services, Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) .............. 35

*Carroll v. President and Com'rs of Princess Anne*, 393, U.S. 175 (1968) ......................... 26

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 53 (1993) ........ 17

*City of Cleburne,* 473 U.S. 432, 440 (1985) ................................................................. 35

*City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759 (1988).............................. 24

*Doe v. McAleenan*, 415 F. Supp. 3d 971, 976 (S.D. Cal. 2019) ...................................... 15

*Does 1–5 v. Chandler,* 83 F.3d 1150, 1155 (9th Cir.1996) ............................................ 35

*Edwards v. Aguillard*, 482 U.S. 578, 594–95 (1987) .................................................... 21

*Employment Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 879* (1990) .......... 17

*F.C.C. v. Beach Communs., Inc.*, 508 U.S. 307, 315 (1993) ........................................... 20

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

*Forsyth County v. Nationalist Movement,* 505 U.S. 123, 129–30 (1992) ........................... 25

*Foti,* 146 F.3d at 638 .................................................................................................. 28

*Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ........................................ 16

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S.

  423, 439 (1974) .................................................................................................. 15

*Grayned,* 408 U.S. at 110, 92 S.Ct. 2294 .................................................................. 29

*Heller v. Doe by Doe*, 509 U.S. 312, 320-321 (1993) .............................................. 20

*Hill v. Colorado,* 530 U.S. 703, 733, 120 S.Ct. 2480 (2000) .................................. 29

*Jew Ho v. Williamson*, 104 F.10. (C.C. Cal.1900) .................................................... 30

*Kolender v. Lawson,* 461 U.S. 352, 361 (1983) ........................................................ 29

*Lemon v. Kurtzman*, 403 U.S. 602, 612, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) .......... 21, 23

*Lukumi*, supra, 508 at 542 .................................................................................... 19, 19

*Lukumi*, supra, at 542-543 ........................................................................................ 18

*Lynch v. Donnelly*, 465 U.S. 668, 690 ...................................................................... 23

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) .................................................... 15

*McCreary Cty., Ky. v. Am. Civil Liberties Union of Ky.,* 545

   U.S. 844, 862, 866 (2005) ................................................................................ 21, 22

*Parents for Privacy v. Barr*, 949 F.3d 1210, 1234 (9th Cir. 2020)

   (*Parents for Privacy*) .................................................................................. 17, 18, 19

*Perfect 10, Inc. v. Amazon.com, Inc.* 508 F.3d 1146, 1158 (9th Cir. 2007) ....................... 16

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY
RESTRAINING ORDER (DOCKET NO. 8)**

*Sandry v. Brooklyn School District No. 78 of Williams County* (1921) 47 N.D. 444 .........28

*Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 308 (2000) ........................................21, 22

*Santa Monica Nativity Scenes Comm. v. City of Santa Monica*, 784 F.3d 1286, 1299 n. 7

  (9th Cir. 2015 ...........................................................................................................21, 23

*Selecky*, 586 F.3d at 1127- 1128 ....................................................................................17, 20

*Selecky*, 586 F.3d at 1129............................................................................................... 19

*Set Enterps., Inc. v. City of Hallandale Beach*, 2010 WL 11549707,

  at \*12 (S.D. Fla. Dec. 30, 2010) ....................................................................................24

*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) .....................................16

*Thomas v. Collins,* 323 U.S. 516 (1945); *West Virginia State Board of Education v.*

  *Barnette* 319 U.S.624 (1943) ........................................................................................26

*Trunk* v. *City of San Diego*, 629 F.3d 1099, 1106 (9th Cir. 2011) .....................................23

*Vasquez v. Los Angeles County*, 487 F.3d 1246, 1256 (9th Cir. 2007) ..............................23

*Virginia v. Hicks,* 539 U.S. 113, 118–19(2003) ...............................................................26

*Ward v. Rock Against Racism,* 491 U.S. 781, 794 (1989)..................................................28

*Winter*, supra, 555 U.S. at 20; *see also*, Fed. R. Civ. P. 65(b) ....................................15, 16

## Statutes

42 U.S.C. § 1983 ...........................................................................................................34

Article XI of the California Constitution California

  sections 8610, 8630, 8634 and 8655 ...............................................................................11

COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY
RESTRAINING ORDER (DOCKET NO. 8)

*Government Code* section 8558 ........................................................................ 31

*Government Code* section 8684 ........................................................................ 31

*Health and Safety Code* sections 101030 ...................................................... 11

*Health & Safety Code* section 101040 ...................................................... 11, 32

*Health & Safety Code* section 101080 ............................................................ 31

*Health & Safety Code* section 101085 ............................................................ 11

*Health & Safety Code* section 120175 ...................................................... 11, 31

Title 17 California Code of Regulations section 2501 ...................................... 11

**Other Authorities**

Riverside County Code sections 442 .................................................................. 11

Riverside County Code sections 533.6 .............................................................. 11

**Rules**

17 C.C.R. section 2501(a) .................................................................................. 31

**Constitutional Provisions**

Equal Protection Clause of the Fourteenth Amendment ................................... 34

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

**TO THE PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

DEFENDANTS, CAMERON KAISER, in his official capacity as the Riverside County Public Health Officer; GEORGE JOHNSON, in his official capacity as Riverside County Executive Officer and Director of Emergency Services; CHAD BIANCO, in his official capacity as the Riverside County Sheriff; KEVIN JEFFRIES, in his official capacity as a Riverside County Supervisor; KAREN SPIEGEL, in her official capacity as a Riverside County Supervisor; CHUCH WASHINGTON, in his official capacity as a Riverside County Supervisor; V. MANUEL PEREZ, in his official capacity as a Riverside County Supervisor; and JEFF HEWITT, in his official capacity as a Riverside County Supervisor (hereinafter collectively the "County") hereby offer the following Opposition to the Application for Temporary Restraining Order (Docket No. 8).

**I.**

**INTRODUCTION**

Asymptomatic human-to-human transmission of COVID-19 is devastating the world. From a silent and deadly spread at a Kings County nursing home in Washington to a "super-spread" event at the Tablighi Jamaat in India to the spike in Daegu, South Korea, the ruthless efficiency of human-to-human transmission continues with blatant disregard to borders, race, gender, color or faith. Driven by individuals who are pre-symptomatic or asymptomatic, the State of California ("State") and the County have issued numerous public health orders in an effort to stem the spread of the virus and to slow the growth rate of the

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

infected and hospitalized. The singular purpose: to "flatten the curve" to avoid the collapse of our hospitals, medical professionals and healthcare institutions throughout California. Despite numerous examples of "super-spread" events, even at religious gatherings that observe social distancing and safety processes, COVID-19 continues to spread. Now, Plaintiffs demand that this Court ignore the clear and present danger of this pandemic and allow in-person religious services to continue. For the following reasons, Plaintiffs' ex parte application for a temporary restraining order ("TRO") should be denied.

## II.

## BACKGROUND AND FACTS

These are unprecedented times.  To date, the worldwide pandemic of COVID-19 disease, also known as "novel coronavirus," has infected over 2.1 million individuals worldwide in over 180 countries and is implicated in nearly 140,000 worldwide deaths, including over 2,000 cases and 54 deaths in Riverside County.  In response to this healthcare crisis, the County, and the elected officials and employees therein, have been working around the clock to determine how to best meet the needs of all residents.  From the youngest to the oldest, the inmate to the un-incarcerated, and the unsheltered to those residing in mansions, the County is focused on protecting the health and safety of the more than 2.4 million people within its boundaries.

Over the past six weeks, the County has taken several steps in an attempt to control the spread of COVID-19. The actions taken by the County have addressed and affected a wide-variety of industries and events, all with the common goal of reducing the spread of

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

COVID-19 and minimizing the strain upon the healthcare system.  On March 8, 2020 the County's Public Health Officer, Dr. Cameron Kaiser, issued a Declaration of Local Health Emergency based on an imminent and proximate threat to public health from the introduction of novel COVID-19 in Riverside County.  On March 10, 2020 the Board of Supervisors of the County of Riverside issued a Resolution proclaiming the existence of a Local Emergency in the County of Riverside regarding COVID-19 and a Resolution ratifying and extending the Declaration of Local Health Emergency due to COVID-19.  Also on March 10, 2020, Dr. Kaiser issued an Order cancelling the Coachella Valley Music and Arts Festival and Stagecoach Music Festival.  On March 12, 2020, Dr. Kaiser issued an Order cancelling all events with an anticipated attendance in excess of 250 persons.  On March 13, 2020, Dr. Kaiser issued an Order closing all schools (extended through June 19, 2020 by subsequent Orders of the Health Officer).  On March 16, 2020 Dr. Kaiser issued an Order prohibiting all gatherings with expected presence above ten (10) individuals. On March 27, 2020, Dr. Kaiser issued an Order restricting short-term lodgings within the County of Riverside.  On April 2, 2020, the Health Officer and the County Executive Officer as the Director of Emergency Services issued an Order closing all golf courses and ancillary use areas.  On April 4, 2020, later amended on April 6, 2020, the Health Officer and the County Executive Officer as the Director of Emergency Services issued an Order prohibiting all public gatherings and requiring the use of face coverings by all persons. *See* Declaration of Dr. Cameron Kaiser, M.D., M.P.H. (hereinafter the "Kaiser Declaration"), Paragraph 10, Page 4, Line 1 – Page 6, Line 3; Exhibits A through I.

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

By way of the April 4, 2020 Order and the amendment of April 6, 2020 (collectively "Orders Against Public Gatherings"), the County immediately prohibited all public events and gatherings regardless of size or venue. A "gathering" was defined "as any event or convening that brings together people in a single room or single space at the same time, including, but not limited to, an auditorium, stadium, arena, theater, church, casino, conference room, meeting hall, cafeteria, drive-in theater, parking lot, or any other indoor or outdoor space used for any non-essential purpose including, but not limited to, movies, church services, swap meets, etc." A gathering does not include: (1) a convening of persons who reside in the same residence; (2) operations at airports and/or public transportation; (3) operations at essential businesses where many people are present but are able to practice social distancing; and (4) funerals and burial services conducted in strict compliance with social distancing requirements. *See* Kaiser Declaration, Paragraph 10, Exhibit I at Page 4.

Notably, the Orders Against Public Gatherings are orders of laws of *general applicability*; they apply to <u>all</u> residents and visitors in the State and this County. These orders were specifically based upon the March 19th Orders of the Governor and the Director of the California Department of Public Health since the County does not have any legal authority to issue orders less restrictive than the State's orders. Neither Plaintiffs' church services nor churches are singled out or otherwise treated adversely under the orders.

The Orders Against Public Gatherings were issued by the Health Officer and County Executive Order as a result of the worldwide pandemic of COVID-19 disease, also known

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

as "novel coronavirus," which at the time of issuing the Orders Against Public Gatherings had infected over one million individuals worldwide in over 180 countries and was implicated in over 50,000 worldwide deaths, including six hundred cases and fifteen (15) deaths in Riverside County.  The Orders Against Public Gatherings were intended to address the strain upon the health care system from the effects of the COVID-19 virus.  And to reduce the likelihood of exposure to COVID-19, thereby slowing the spread of COVID-19 in communities worldwide.

The Orders Against Public Gatherings were made pursuant to: California *Health and Safety Code* sections 101030, 101040, 101085, AND 120175; Title 17 California Code of Regulations section 2501; Article XI of the California Constitution; California  sections 8610, 8630, 8634 and 8655; and Riverside County Code sections 442 and 533.6.

The Orders Against Public Gatherings were issued in accordance with, and incorporated by reference, the:

- March 4, 2020 Proclamation of a State Emergency issued by Governor Gavin Newsom;

- March 8, 2020 Declaration of Local Health Emergency based on an imminent and proximate threat to public health from the introduction of novel COVID-19 in Riverside County;

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

- March 10, 2020 Resolution of the Board of Supervisors of the County of Riverside proclaiming the existence of a Local Emergency in the County of Riverside regarding COVID-19;

- March 10, 2020 Resolution of the Board of Supervisors of the County of Riverside ratifying and extending the Declaration of Local Health Emergency due to COVID-19;

- Guidance issued on March 11, 2020 by the California Department of Public Health regarding large gatherings of 250 people or more;

- Governor Gavin Newsom's Executive Order N-25-20 of March 12, 2020 preparing the State to commandeer hotels and other places of temporary residence, medical facilities, and other facilities that are suitable as places of temporary residence or medical facilities as necessary for quarantining, isolating or treating individuals who test positive for COVID-19 or who have had a high-risk exposure and are thought to be in the incubation period;

- Guidance issued on March 15, 2020 by the Centers for Disease Control and Prevention, the California Department of Public Health, and other public health officials through the United States and around the world recommending the cancellation of gatherings involving more than fifty (50) or more persons in a single space at the same time;

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

- March 16, 2020 order of the Public Health Officer prohibiting all gatherings with expected presence above ten (10) individuals;

- Governor Newsom's Executive Order N-33-20 of March 19, 2020 ordering all persons to stay at home to protect the health and well-being of all Californians and to establish consistency across the state in order to slow the spread of COVID-19;

- The Order of the State Public Health Officer of March 19, 2020 requiring all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19.

- The State Public Health Officer's March 22, 2020 designation of "'Essential Critical Infrastructure Workers' to help state, local, tribal, and industry partners as they work to protect communities, while ensuring the continuity of functions critical to public health and safety, as well as economic and national security".

- Governor Newsom's Executive Order N-35-20 giving the state the ability to increase the health care capacity in clinics, mobile health care units and adult day health care facilities and allowing local governments more flexibility to utilize the skills of retired employees in order to meet the COVID-19 surge.

- Governor Newsom's Executive Order N-39-20 intended to expand the health care workforce and recruit health care professionals to address the COVID-19 surge.

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

- The Centers for Disease Control and Prevention's "Interim Additional Guidance for Infection Prevention and Control for Patients with Suspected or Confirmed COVID-19 in Nursing Homes".

- The California Department of Public Health Face Covering Guidance issued on April 1, 2020.

On April 13, 2020, Plaintiffs WENDY GISH, PATRICK SCALES, JAMES DEAN MOFFATT, and BRENDA WOOD filed their lawsuit against Governor Gavin Newsom, Attorney General Xavier Becerra, the County of San Bernardino, the County of Riverside, and elected officials and named employees thereof, alleging various violations of the First and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 1, 2, and 4 of the California Constitution.

On April 14, 2020, Plaintiffs filed an Application for Temporary Restraining Order, seeking a broad Order of the Court that "Defendants, as well as their agents, employees, and successors in office, shall be restrained and enjoined from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with any prohibition on Plaintiffs' engagement in religious services, practices, or activities at which the Center for Disease Control's social distancing guidelines are followed". [*See* Doc. 8, p. 1, lines 24-28.]

The County refutes Plaintiffs' claims that they are entitled to this relief and requests that the Court deny the Application in its entirety for the reasons set forth herein.

/ / /

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

# III.

# LEGAL ANALYSIS

## Plaintiffs are Not Entitled to a Temporary Restraining Order

### A. Standard for Issuance of a TRO.

"The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment." [*Doe v. McAleenan*, 415 F. Supp. 3d 971, 976 (S.D. Cal. 2019), citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).] "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995)." [*Id.*] "Injunctive relief is an 'extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" [*Id.*, quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008).] The "clear showing" requirement is particularly strong when a party seeks a TRO. [*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).]

In order to obtain a TRO, Plaintiffs must satisfy the four-part or traditional test under *Winter* by a clear showing. Plaintiffs "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." [*Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009), quoting *Winter*, supra, 555 U.S. at 20; *see also*, Fed. R. Civ. P. 65(b).]

## B. <u>It is Unlikely that Plaintiffs Will Succeed on the Merits.</u>

"The first factor under *Winter* is the most important – likely success on the merits." [*Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).] A TRO is an "extraordinary remedy that may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief." [*Winter*, supra, 555 U.S. at 22 (italics added).] Plaintiffs have not satisfied this heavy burden, and in fact it is unlikely that Plaintiffs' claims will succeed on the merits.

In the unlikely event that Plaintiffs have established a likelihood of success, the County will show that its affirmative defense will succeed. [*Perfect 10, Inc. v. Amazon.com, Inc.* 508 F.3d 1146, 1158 (9th Cir. 2007).]

### 1. <u>The Free Exercise Clause and the California Constitution Have Not Been Violated.</u>

Plaintiffs argue that the County's Orders Against Public Gatherings are "neither neutral nor of general application." [*See* Doc. 8, p. 10, line 16.] Plaintiffs further argue that the Orders Against Public Gatherings target religious and "faith-based" services. [Doc. 8, p.10, line 17-18.] Plaintiffs' arguments, however, fail because the County's Orders Against Public Gatherings are valid and neutral law of general applicability that do not target Plaintiffs' exercise of faith.

"The Free Exercise Clause, applicable to the states through the Fourteenth Amendment, provides that 'Congress shall make no law . . . prohibiting the free exercise [of religion],' U.S. Const., amend. I." [*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (*Selecky*) (internal citation omitted).] "The right to freely exercise one's religion,

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

however, 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." [*Id.*, quoting *Employment Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 879* (1990) (*Smith*) (internal quotation omitted).]

Indeed, the right to free exercise of chosen form of religion is not absolute, in that conduct remains subject to regulation for protection of society. [*Cantwell v. State of Connecticut*, 310 U.S. 296 (1940).]

"Underlying the Supreme Court's jurisprudence is the principle that the Free Exercise Clause 'embraces two concepts – freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society.'" [*Selecky*, at 1128, quoting *Cantwell v. State of Conn.*, supra at 303-304 (underscore added).] "Under the governing standard, 'a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.'" [*Id.* at 1127-1128, quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 53 (1993) (*Lukumi*).]

"In assessing neutrality and general applicability, courts evaluate both 'the text of the challenged law as well as the effect . . . in its real operation.'" [*Parents for Privacy v. Barr*, 949 F.3d 1210, 1234 (9th Cir. 2020) (*Parents for Privacy*), quoting *Selecky*, supra, 794 F.3d at 1076 (ellipsis in original).] "[T]he two tests for whether a law is neutral and generally applicable focus on whether a law specifically targets or singles out religion." [*Id.* at 1234-

---

17

1235.] The County's challenged Orders Against Public Gatherings does neither of those things.

The first test asks whether the law is "neutral" with respect to religion. "If the object of a law is to infringe upon or restrict practices *because of* their religious motivation, the law is not neutral." [*Parents for Privacy*, supra, 949 F.3d at 1235 (internal citation omitted).] Here, Plaintiffs neither argue nor presents any evidence that the County issued its emergency public health orders out of any desire or intent to target Plaintiffs gatherings (or religious gatherings in general) because of the gatherings' religious nature or motivation. The County's stay-at-home order applies generally countywide, and has required the temporary closure of a wide-range of businesses, events, and areas where people gather, without respect to the secular or religious nature of any such establishment or gathering, including, but not limited to, stadiums, casinos and restaurants.

The second test asks whether the challenged law has "general applicability" – that is, "whether a law treats religious observers unequally." [*Parents for Privacy*, supra, 949 F.3d at 1235, citing *Lukumi*, supra, 508 at 542.] As the Supreme Court has noted, "inequality results when a legislature decides that the governmental interests it seeks to advance are worthy of being pursued *only* against conduct with a religious motivation." [*Lukumi*, supra, at 542-543 (italics added).] "Thus, a law is not generally applicable if its prohibitions substantially underinclude non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect." [*Parents for Privacy*, supra, 949 F.3d at 1235 (internal citations omitted).]

COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)

"In other words, if a law pursues the government's interest '*only against conduct motivated by religious belief*,' but fails to include in its prohibitions substantial, comparable secular conduct that would similarly threaten the government's interest, then the law is not generally applicable." [*Parents for Privacy*, supra, 949 F.3d at 1235, quoting *Lukumi*, 508 U.S. at 545.] "For example, in *Lukumi*, the Court concluded that the challenged ordinances were not generally applicable because they 'pursue[d] the city's governmental interests only against conduct motivated by religious belief' and 'fail[ed] to prohibit nonreligious conduct that endanger[ed] these interests in a similar or greater degree than Santeria sacrifice does.'" [*Id.*, quoting *Lukumi*, 508 U.S. at 543, 545.]

Here, the County's challenged public health Order in no way places "demands exclusively (or even principally) on religious persons or conduct." [*Parents for Privacy*, supra, 949 F.3d at 1235.] The Orders Against Public Gatherings instead apply generally to all residents, businesses, and other gatherings of people in the County, except for a limited number of businesses in "critical infrastructure sectors" designated by the federal and State governments as necessary to protect the health and safety of the community while people hunker down and engage in the extreme social distancing needed to flatten the curve by stemming and slowing the transmission of the virus.

Because the challenged County public health Order "qualifies as neutral and generally applicable, it is not subject to strict scrutiny." [*Parents for Privacy*, supra, 949 F.3d at 1236, citing *Selecky*, 586 F.3d at 1129 ("[A] neutral law of general applicability will not be subject to strict scrutiny review.").] Instead, the County's Order Against Public Gatherings is

19

reviewed "for a rational basis, which means that the [order] must be upheld if it is rationally related to a legitimate governmental purpose." [*Id.* at 1238; *see also Selecky*, 586 F.3d at 1127- 1128 ("Under the governing standard, 'a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.'").]

Under rational basis review, Plaintiff has the burden to negate "every conceivable basis which might support" the County's Orders Against Public Gatherings. [*F.C.C. v. Beach Communs., Inc.*, 508 U.S. 307, 315 (1993) (underscore added).] And Plaintiffs' duty to negate every rational basis supporting the order exists "whether or not the basis has a foundation in the record." [*Heller v. Doe by Doe*, 509 U.S. 312, 320-321 (1993).] In its application, Plaintiff made no attempt to negate every conceivable basis that might support the County's Orders Against Public Gatherings. And although the County is not required to do so, it points to ample evidence in the record supporting the stay-at-home order's rational basis. [*See* Kaiser Declaration, Paragraph 10, Exhibit I at Paragraphs 4-11; Kaiser Declaration, Paragraph 11, Page 6, Lines 4-10.]

### 2.  <u>The Establishment Clause Has Not Been Violated.</u>

The Federal Establishment Clause prohibits the government from making any law "respecting an establishment of religion" or undertaking any act that unduly favors one religion over another. [U.S. Const. amend. I.] The test articulated by the Supreme Court in *Lemon v. Kurtzman* "remains the Court's principal framework for applying the Establishment Clause," although Lemon has been "much criticized both inside and outside

the Court," and "sometimes ignored by the Court altogether." [*Santa Monica Nativity Scenes Comm. v. City of Santa Monica*, 784 F.3d 1286, 1299 n. 7 (9th Cir. 2015)(citing *Lemon v. Kurtzman*, 403 U.S. 602, 612, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) ).]

Under the Lemon test, a government action violates the Establishment Clause if (1) it lacks a "secular legislative purpose," (2) "its principal or primary effect" is to "advance [or] inhibit[ ] religion," or (3) it "foster[s] an excessive government entanglement with religion." [*Lemon*, 403 U.S. at 612–613 (internal quotation marks omitted).]

First, there can be no reasonable dispute that the Orders Against Public Gatherings have secular legislative purpose. Under *Lemon's* "purpose" inquiry, the Court assesses the underlying purpose of the government action from the vantage point of "an 'objective observer' " who is "presumed to be familiar with the history of the government's actions and competent to learn what history has to show." [*McCreary Cty., Ky. v. Am. Civil Liberties Union of Ky.,* 545 U.S. 844, 862, 866 (2005) (quoting *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 308 (2000)).]

In assessing purpose, the Court may "take[ ] account of the traditional external signs that show up in the '"text, legislative history, and implementation of the statute,"' or comparable official act." [*Id.* at 862 (citation omitted); <u>see also</u> *Edwards v. Aguillard*, 482 U.S. 578, 594–95 (1987) (noting that the Court's inquiry looks to the "plain meaning of the statute's words, enlightened by their context and the contemporaneous legislative history

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

[and] the historical context of the statute, ... and the specific sequence of events leading to [its] passage").]

Crucially, "although a [legislative body's] stated reasons will generally get deference, the secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective." [*McCreary*, 545 U.S. at 864 (citing *Santa Fe*, 530 U.S. at 308, ("When a governmental entity professes a secular purpose for an arguably religious policy, the government's characterization is, of course, entitled to some deference. But it is nonetheless the duty of the courts to 'distinguis[h] a sham secular purpose from a sincere one.' ")).

Here, there is absolutely no doubt that the Orders Against Public Gatherings are intended to have a secular legislative purpose – to slow down the spread of COVID-19 and to "flatten the curve".  [*See,* Kaiser Declaration, Paragraph 12, Page 6, Lines 12-21.] The number of hospitalizations and deaths alone clearly support a finding that there is a genuine secular purpose in issuing the Orders Against Public Gatherings. Moreover, this Court can objectively review the specific sequence of orders from the federal government, State government and the County to determine that a secular legislative intent exists in support of the Orders Against Public Gatherings.

With respect to the second and third prong of the *Lemon* test, the principal effect of the Orders Against Public Gatherings is not to effect the advance of religion. Under *Lemon's* second prong, a "[g]overnmental act[ ] has the primary effect of advancing or disapproving of religion if it is 'sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their

COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY
RESTRAINING ORDER (DOCKET NO. 8)

individual religious choices.' " [*Vasquez v. Los Angeles County*, 487 F.3d 1246, 1256 (9th Cir. 2007) (citation omitted); see also *Lynch v. Donnelly*, 465 U.S. 668, 690 (O'Connor, J., concurring) ("The effect prong asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval.").]

Under the *Lemon* test's third prong, a government action must not "foster[ ] an excessive government entanglement with religion." [*Santa Monica Nativity Scenes Comm*, 784 F.3d at 1299 (citation omitted).] While Plaintiffs do not adequately address either prong in their Complaint or in their TRO, "the Supreme Court essentially has collapsed the[ ] last two prongs to ask whether the challenged governmental practice has the effect of endorsing religion." [*Trunk* v. *City of San Diego*, 629 F.3d 1099, 1106 (9th Cir. 2011) (internal quotation marks and citation omitted); see also *id.* at 1109 (defining "endorsement" as "those acts that send the stigmatic message to nonadherents 'that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members' ") (citation omitted).]

Again, the challenged governmental action in this TRO is the County's Orders Against Public Gatherings, which are intended to slow down the spread of the COVID-19 pandemic.  [*See,* Kaiser Declaration, Paragraph 12, Page 6, Lines 12-21.] These Orders are clearly not fostering excessive entanglement with religion or advancing a religion of any kind. In other words, the Orders are not establishing the placement of the Ten Commandments or a cross on public land in violation of the Establishment Clause. There is no likelihood of success by the Plaintiffs for violation of the Establishment Clause.

### 3.  <u>The Orders Do Not Violate Plaintiffs' Right to Free Speech.</u>

First, Plaintiffs argue that the Orders Against Public Gatherings are a prior restraint. This argument lacks merit as Plaintiffs remain able to communicate with members of their congregation by various means, including by teleconference, video-conference, and by streaming video or audio services, methods specifically identified by the State Public Health Officer as "essential". [*See* Kaiser Declaration, Paragraph 19, Page 8, Lines 7-15, Exhibit identifying "Faith based services that are provided through streaming or other technology" as part of the "Other Community-Based Government Operations and Essential Functions" sector, at Page 11; *See* Moran Declaration, Paragraph 3, Page 2, Lines 17 – 28, Exhibit L.]

The United States Supreme Court has defined prior restraint to be "administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." [*Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis in original) (internal quotation marks omitted).] Indeed, "not every governmental action that may affect future protected expression is ... [a] prior restraint." *Set Enterps., Inc. v. City of Hallandale Beach*, 2010 WL 11549707, at *12 (S.D. Fla. Dec. 30, 2010).

Moreover, United States Supreme Court precedent confirms that in order for a law to be a prior restraint of speech, the law "must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759 (1988).

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

Here, there is no ban on communication or censorship of speech or religious speech of any kind. Rather, there is a ban on in-person gatherings to prevent the spread of COVID-19.  Additionally, faith-based services are able to communicate religious messages or speech via various technological mediums such as teleconference, video conference, and other streaming services. For example, Zoom.com allows an individual to use up to forty-five minutes of free videoconferencing without any payment. Indeed, there is no ban on expression or speech that is akin to censorship of any kind. Furthermore, there is no preferential treatment of any specific faith that existed in the *Widmar* case as cited by the Plaintiffs.

Second, Plaintiffs argue that the Orders Against Public Gatherings are facially unconstitutional as they are overbroad. [Doc. No. 8, p. 14, lines 1-2.] The overbreadth doctrine is an "exception from general standing rules" that allows a plaintiff to seek facial invalidation of a law that "sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected," even if that law is constitutional as applied to the plaintiff. [*Forsyth County v. Nationalist Movement,* 505 U.S. 123, 129–30 (1992).] This doctrine recognizes that "the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." [*Id.* at 129.]

To succeed on their overbreadth claim, Plaintiffs must show that the Orders Against Public Gatherings "punish a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.' " [*Virginia v. Hicks,* 539 U.S. 113, 118–

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

19(2003) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)).]

Plaintiffs' TRO does not identify a substantial amount of protected free speech. Rather, Plaintiffs instead point to a number of faiths that are allegedly burdened by the Orders Against Public Gathering in attempt to expand the amount of speech at stake. In reality, the Orders Against Public Gatherings are intended to encourage people to stay at home. The Orders do not prohibit religious speech of any kind, nor do they discriminate on the basis of faith.

### 4.   Plaintiffs' Right to Assembly Is Not Violated.

There is no dispute that the United States Constitution and the California Constitution protect the rights of individuals to peacefully assemble and/or worship. This right, however, has certain limitations as explained by the United States Supreme Court on a number of occasions. [*Carroll v. President and Com'rs of Princess Anne*, 393, U.S. 175 (1968); *Thomas v. Collins,* 323 U.S. 516 (1945); *West Virginia State Board of Education v. Barnette* 319 U.S.624 (1943).] Indeed, any attempt to restrict free assembly or free worship must be justified by clear and present danger. [*Collins*, supra, 323 U.S. at 530-531.]   California's Supreme Court has ruled that any prohibitions against a lawful assembly must be limited to situations which are violent or which pose clear and present danger of imminent violence or harm to others. *In re Brown* (1973) 9 Cal. 3d 612, 623.

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

As described above, the Orders Against Public Gatherings were issued specifically to prevent such a clear and present danger of harm, namely the spread of the COVID-19 virus through individuals closely gathering to larger members of the public.  As this Court may be aware, groups that gather, despite public health orders that prohibit such gathering, have been termed: "super-spreaders".  In South Korea, at the Shincheonji Church of Jesus in Daegu, a single individual is known to have infected at least 5,080 confirmed cases of COVID-19, more than half of South Korea's total. *See* Youjin Shin, Bonnie Berkowitz, Min Joo-Kim, *How a South Korean church helped fuel the spread of the coronarvirus*, Washington Post, March 25, 2020,

 https://www.washingtonpost.com/graphics/2020/world/coronavirus-south-korea-church/.

In Seattle, the choir of the Mount Vernon Presbyterian Church of Mount Vernon, Washington, gathered for choir practice on Tuesday, March 10, 2020. Despite practicing social distancing, passing out hand sanitizer and avoiding physical contact, COVID-19 spread throughout the group. Now, at least forty-five (45) individuals have been diagnosed with COVID-19 or ill with symptoms and at least two have died.  *See* Richard Read, *A choir decided to go ahead with rehearsal. Now dozens have COVID-19 and two are dead*, March 29, 2020, https://www.latimes.com/world-nation/story/2020-03-29/coronavirus-choir-outbreak.

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

These are just two examples of a single assembly of individuals, whether for a church-service or for a choice practice, that resulted in the uncontrolled spread of COVID-19 that resulted in harm against other individuals and the community at large. In fact, the Supreme Court of South Dakota has ruled that public authorities have the right to prohibit gatherings or congregations of persons during the prevalence of an epidemic. *Sandry v. Brooklyn School District No. 78 of Williams County* (1921) 47 N.D. 444.

### 5. **County's Orders Are Not Vague, Nor Are They Void.**

Plaintiffs argue that the Orders Against Public Gatherings are vague as to their scope and application as to run afoul of the Due Process Clause of the Fourteenth Amendment. [Doc. 8, p. 16, lines 15-16.] Plaintiffs' sole argument is that the State's Order uses the word "heed", which "does not appear to order compliance therewith." [Doc. 8, p. 16, lines 19-20.]

Vague statutes are objectionable for three primary reasons. First, they trap the innocent by not providing adequate warning. Second, they impermissibly delegate basic policy matters to lower level officials for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, when vague statutes involve sensitive areas of First Amendment freedoms, they operate to inhibit the exercise of those freedoms. [*Foti,* 146 F.3d at 638.]

Nevertheless, perfect clarity is not required even when a law regulates protected speech. [*Ward v. Rock Against Racism,* 491 U.S. 781, 794 (1989).] "Condemned to the use of words, we can never expect mathematical certainty from our language." [*Grayned,* 408

28

U.S. at 110, 92 S.Ct. 2294; *see Kolender v. Lawson,* 461 U.S. 352, 361 (1983) (even in the strictest sense, "due process does not require impossible standards of clarity") (quotation marks omitted).]

Therefore, even when a law implicates First Amendment rights, the constitution must tolerate a certain amount of vagueness. Indeed, uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes "in the vast majority of its intended applications." [*Hill v. Colorado,* 530 U.S. 703, 733, 120 S.Ct. 2480 (2000) (quotation marks omitted).]

Plaintiffs argue that no reasonable person can understand a "stay-at-home" order and nitpicks at words such as "heed" and "visitors". Plaintiffs ignore the intent and application of the Orders Against Public Gatherings – to stay home and prevent the spread of COVID-19. Indeed, the touchstone of a facial vagueness challenge in the First Amendment context does not turn on the words "heed" and "visitors", but on a substantial amount of legitimate speech that can be burdened. No such burden exists here and the Orders Against Public Gatherings are not void, nor are they vague.

### 6.   Plaintiffs' General Due Process Argument Fails.

Plaintiffs argue that their substantive due process rights have secured by the Fourteenth Amendment have been violated.  For purposes of this TRO, this Court should not engage in a generalized substantive due process argument as Plaintiffs' rights are being determined by the First Amendment. In other words, Plaintiffs' claim should be analyzed under the First Amendment to free exercise of religion rather than any generalized notion of

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

substantive due process under the Fourteenth Amendment. [*Albright v. Oliver*, 510 U.S. 266, 273-274 (1994).]

### 7.  Plaintiffs' Right to Liberty Has Not Been Violated.

Plaintiffs' next argue that the Orders Against Public Gatherings violate the California Constitution's right to liberty. [Doc. 8, p. 19, line 2.] Plaintiffs' further argue that because Plaintiffs have never had, been exposed to or been in a locality of the coronavirus, they are being arbitrarily detained.

As a threshold point, it is interesting to note that Plaintiffs do not state whether they have been tested or not for COVID-19, especially in light of pre-symptomatic and asymptomatic carriers that have been transmitting the disease around the world. Notwithstanding those undisputable facts, Plaintiffs' argument is that it is outside the local health official's powers to assert a quarantine because there has been "only one death for every 70,464 inhabitants". [Doc. 8, p. 19, lines 21-25.] Plaintiffs, of course, ignore the number of individuals hospitalized by COVID-19 in both counties, the limited number of hospitals and hospital beds in both counties, the limited number of ventilators in the counties, or the fact that health care professionals are being overwhelmed by the disease.

With respect to the *Jew Ho* case cited by the Plaintiffs, the facts are significantly different than those currently facing California. In that case, there was no living person with the bubonic plague! [*Jew Ho v. Williamson*, 104 F.10. (C.C. Cal.1900). Again, Plaintiffs simply ignore the fact that there are over 27,098 known infections and 405 deaths in California and the disease is spread through human-to-human interaction.

COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY
RESTRAINING ORDER (DOCKET NO. 8)

The Covid-19 virus has created both a health emergency as defined by *Health & Safety Code* section 101080 and a local emergency as defined by *Government Code* section 8558 for the State of California including the County of Riverside.  As such, based upon these statutes, Dr. Kaiser, as the County of Riverside's Public Health Officer, may promulgate orders as necessary to protect life and property pursuant to *Government Code* section 8684.  "Each health officer knowing or having reason to believe that any case of the diseases made reportable by regulation of the department, or any other contagious, infectious or communicable disease exists, or has recently existed, within the territory under his or her jurisdiction, shall take measures as may be necessary to prevent the spread of the disease or occurrence of additional cases." *Health & Safety Code* section 120175.  *See* also 17 C.C.R. section 2501(a) which states in relevant part: "Upon receiving a report made pursuant to Section 2500 or 2505, the local health officer shall take whatever steps deemed necessary for the investigation and control of the disease, condition or outbreak reported."   Thus, Dr. Kaiser, as the local Health Officer, may take any measures as may be necessary to prevent the spread of disease or the occurrence of additional cases.

Notably, *Health and Safety Code* section 120175 specifically states it is the duty of the Health Officer to investigate all cases, to ascertain the sources of infection, and to take "all measures reasonably necessary to prevent the transmission of infection." *Aids Healthcare Foundation v. Los Angeles County Department of Health* (2011) 197 Cal.App. 8th 693, 701-702.  "The health officer must take "measures as may be necessary," or "reasonably necessary," to achieve the Department's goals and policies, leaving the course

of action to the health officer's discretion. The statutory scheme sets forth certain actions, ranging from quarantine and isolation for contagious and communicable diseases ….." (citations omitted).  These statutory measures, however, are not exhaustive or mandatory, giving the health officer discretion to act in a particular manner depending upon the circumstances."  *Id*. at 702. "Preventative measure" means abatement, correction, removal of any other protective step that may be taken against any public health hazard that is caused by a disaster and affects the public health.  *Health & Safety Code* section 101040. (Emphasis added.)

Based upon the trajectory of the Covid-19 pandemic, Dr. Kaiser determined that the prohibition on public gatherings was necessary:

- "…as a result of the worldwide pandemic of COVID-19 disease, also known as 'novel coronavirus,' which has infected over one million individuals worldwide in over 180 countries and is implicated in over 50,000 worldwide deaths, including over 600 cases and 15 deaths in Riverside County.  These numbers increase significantly every day…." [*See* Kaiser Declaration, Exhibit I at Paragraph 4.]

- "…to reduce the likelihood of exposure to COVID-19, thereby slowing the spread of COVID-19 in communities worldwide…" [*See* Kaiser Declaration, Exhibit I at Paragraph 6.]

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

- "…to prevent circumstances often present in gatherings that may exacerbate the spread of COVID-19, such as: 1) the increased likelihood that gatherings will attract people from a broad geographic area; 2) the prolonged time period in which large numbers of people are in close proximity; 3) the difficulty in tracing exposure when large numbers of people attend a single event or are at a single location; and 4) the inability to ensure that such persons follow adequate hygienic practices…" [*See* Kaiser Declaration, Exhibit I at Paragraph 6.]

- "…to address the strain upon the health care system from the effects of the COVID-19 virus.  Similarly, this Order is intended to reduce the likelihood of exposure to COVID-19, thereby slowing the spread of COVID-19 in communities worldwide…" [*See* Kaiser Declaration, Exhibit I at Paragraph 7.]

Using their authority to take measures that are "necessary to prevent the transmission of" the Covid-19 virus, the Health Officer and the County Executive Officer as the Director of Emergency Services issued the Orders Against Public Gatherings "based on evidence of increasing transmission of COVID-19 both within the County of Riverside and worldwide, scientific evidence regarding the most effective approach to slow transmission of communicable diseases generally and COVID-19 specifically, as well as best practices as currently known and available to protect the public from the risk of spread of or exposure to

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

COVID-19".  [*See* Kaiser Declaration, Exhibit I at Paragraph 5.] These measures also took into account and incorporated (1) substantial guidance issued by the Centers for Disease Control and Prevention and the California Department of Public Health; (2) Executive Orders issued by Governor Newsom, including Orders of the State Public Health Officer, as related to the prevention of the spread of COVID-19; and (3) prior Orders of the local health officer. [*See* Kaiser Declaration, Exhibit I at Paragraph 8.]

In short, Article I, Section 1 of the California Constitution has not been violated because the County's Orders Against Public Gatherings are valid.

### 8.  <u>Plaintiffs Are Not A Member of a Protected Class.</u>

Plaintiffs argue that they have been intentionally and arbitrarily categorized as either "essential" or "non-essential". As such, they have been treated differently in violation of the Equal Protection Clause of the Fourteenth Amendment. [Doc. 8, p. 20, lines 19-21.] To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *[Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).]

Plaintiffs will not prevail on this cause of action as "essential" versus "non-essential" membership is not a protected class. More importantly, Plaintiffs will not be able to show membership in a protected class as the Orders Against Public Gatherings do not apply different to members of a protected class such as race or gender. As Plaintiffs are not

members of a protected class, a governmental policy that treats individuals differently needs only to be "rationally related to legitimate legislative goals" to pass constitutional muster. [*Does 1–5 v. Chandler,* 83 F.3d 1150, 1155 (9th Cir.1996) (citing *City of Cleburne,* 473 U.S. 432, 440 (1985).] As explained above, the Orders Against Public Gatherings serve a legitimate public interest to protect against the spread of an infectious disease and to protect our healthcare infrastructure.

### C. <u>Plaintiffs Do Not Face Irreparable Injury.</u>

Plaintiffs must demonstrate an "immediate threatened harm" under the irreparable injury standard. [*Caribbean Marine Services, Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).] Plaintiffs have not shown there is an immediate threatened harm to their exercise of religion as they are still able to hold services through other means. As noted above, Plaintiffs may use teleconference, video conference, streaming services and other technological methods such as FaceTime or Google Hangout to hold services. They could livestream through Facebook or YouTube. In other words, Plaintiffs are still able to hold faith-based services and meet with their parishioners in other meaningful ways.

### D. <u>The Balance of Equities and Public Interest Support Denial of The TRO.</u>

With respect to the final two TRO factors, the balance of the equities and the public interest heavily support denial of the TRO. For California in general, and the County in particular, the next few weeks are *critical* for flattening the curve, requiring all County residents to share in the sacrifice by staying at home in an effort to stem the spread of the virus. [*See* Kaiser Declaration, Paragraph 12, Page 6, Lines 12-21.] A single trip to a place

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**

of worship would naturally require one leave the safety of their home, potentially make an extra stop for gas, snacks or coffee, and arrive to use a common restroom. Coupled with the fact that the County is home to hundreds of churches, mosques, synagogues, and temples, Plaintiffs' demand to attend services exposes hundreds and thousands of Californians needlessly to COVID-19.

In a County of over 2.4 million people, there simply are not enough law enforcement personnel and resources to enforce the public health order at hundreds of places of worship throughout one the largest geographic counties in the United States. Indeed, there are not sufficient hospital beds, ventilators or personnel to adequately defend against this pandemic. As such, there is a strong public interest that favors the denial of this TRO because if we can successfully flatten the curve in the upcoming weeks, then the County can begin implementing other safeguards such as contact-tracing to prevent further outbreak of this disease.

**IV.**

**CONCLUSION**

The County's Orders Against Public Gatherings were put into place (1) as a result of what has now grown to over two million cases of COVID-19 worldwide and over 2,000 cases and 59 deaths in Riverside County; (2) to reduce the likelihood of exposure to COVID-19, thereby slowing the spread of COVID-19 in communities worldwide; (3) to prevent

circumstances often present in gatherings that may exacerbate the spread of COVID-19; and (4) to address the strain upon the health care system from the effects of the COVID-19 virus. The application of these Orders is neutral and generally applicable to all residents and visitors of the County, and affects a wide-range of businesses, events, and arenas, without respect to the secular or religious nature of any such establishment or gathering. Finally, failure to abide by the Orders of the State and County Health Officers put at risk the health and safety of all persons within the County of Riverside and the State as a whole. For these reasons, and all those discussed in detail herein, the County respectfully requests that the Court deny Plaintiffs' Application for a Temporary Restraining Order in its entirety.

Dated: April 17, 2020                            By: *Kelly A. Moran*
                                                 _____
                                                 JAMES E. BROWN,
                                                 Assistant County Counsel

                                                 RONAK N. PATEL,
                                                 Deputy County Counsel

                                                 KELLY A. MORAN,
                                                 Deputy County Counsel

                                                 Attorneys for Defendants, CAMERON
                                                 KAISER, GEORGE JOHNSON, CHAD
                                                 BIANCO; KEVIN JEFFRIES; KAREN
                                                 SPIEGEL, CHUCH WASHINGTON, V.
                                                 MANUEL PEREZ, and JEFF HEWITT

**COUNTY OF RIVERSIDE, ET AL.'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER (DOCKET NO. 8)**