# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARYVILLE BAPTIST CHURCH, INC.
and DR. JACK ROBERTS,                                                                     Plaintiffs,

v.                                                                        Civil Action No. 3:20-cv-278-DJH

ANDY BESHEAR, in his official capacity as
Governor of the Commonwealth of Kentucky,                                  Defendant.

\* \* \* \* \*

**ORDER**

Plaintiffs Maryville Baptist Church, Inc. and Dr. Jack Roberts filed this action on April 17, 2020, asserting various violations of the United States and Kentucky Constitutions arising from executive orders issued by Kentucky Governor Andy Beshear in response to the COVID-19 crisis. (Docket No. 1)  The same day, Plaintiffs moved for a temporary restraining order and preliminary injunction prohibiting enforcement of those orders.  (D.N. 3)  According to Plaintiffs, the orders violate their rights under the First Amendment and the Kentucky Religious Freedom Restoration Act by prohibiting "mass gatherings" that are "faith-based."  (*See generally id.*)

The restrictions in question are temporary measures imposed by the Commonwealth to prevent spread of the novel coronavirus.  (*See* D.N. 1-2; D.N. 1-3; D.N. 1-4; D.N. 1-5; D.N. 1-6; D.N. 1-7)  "All mass gatherings"—i.e., "any event or convening that brings together groups of individuals"—are prohibited.  This restriction includes, "but [is] not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities."  (D.N. 1-5, PageID # 66)  None of the challenged orders limits other avenues of group worship, such as drive-in, online, video or telephone conferencing, Facebook, or broadcast radio or television.  Nevertheless, Plaintiffs maintain that "[a]bsent

1

emergency relief from this Court, Governor Beshear and the State Police will continue to threaten Plaintiffs with criminal sanctions and other penalties, including this Sunday, by targeting Plaintiffs' religious gatherings for discriminatory treatment." (D.N. 3, PageID # 179) After careful and expedited consideration of Plaintiffs' complaint, motion, and attachments, the Court concludes that no temporary restraining order is warranted here.

### I.

Plaintiffs suggest at the outset of their complaint that this case be "considered related to" *On Fire Christian Center, Inc. v. Fischer*, No. 3:20-cv-264-JRW (W.D. Ky.), for purposes of Local Rule 40.1(b). (D.N. 1, PageID # 1) Plaintiffs have not, however, moved for reassignment of this case to the district judge presiding over *On Fire Christian Center*, as provided by the relevant local rule, and the Court does not find that reassignment would be in the interests of justice. *See* LR 40.1(b). There are no parties in common, and the plaintiffs in the two cases challenge different actions by different government officials or entities. The undersigned will therefore proceed to consider the motion for temporary restraining order.

### II.

Pursuant to Federal Rule of Civil Procedure 65,

> [t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). In determining whether to grant a temporary restraining order, the Court considers the same four factors applicable to a motion for preliminary injunction: (1) the movant's

likelihood of success on the merits; (2) whether the movant "would likely be permanently harmed absent the injunction; (3) whether the injunction would cause substantial harm to third parties; and (4) whether the injunction would serve the public interest." *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018) (citing *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017)); *see Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015) (quoting *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000)).

As a procedural matter, although the complaint mentions a "demand letter" sent to the governor's general counsel and other state officials "[a]t approximately 9:00 P.M. E.D.T. on April 15, 2020" (D.N. 1, PageID # 25), Plaintiffs' counsel have not "certifie[d] in writing any efforts made to give notice and the reasons why it should not be required," in accordance with Rule 65(b). Fed. R. Civ. P. 65(b)(1)(B). According to the complaint, "[t]he failure of the Commonwealth's officials to respond to Plaintiffs' communication . . . shows that notice and an opportunity to respond to this lawsuit cannot be effectuated, and would be futile, prior to this Sunday's worship activities at the Church." (D.N. 1, PageID # 26) Likewise, the motion for temporary restraining order asserts that "notice and an opportunity to respond to this lawsuit cannot be effectuated, and attempts would be futile, prior to this Sunday's worship activities at the Church" in light of the governor's failure to respond to Plaintiffs' demand letter. These allegations do not satisfy the rule's certification requirement. *See* Fed. R. Civ. P. 65(b)(1)(B).

Nor do the materials submitted by Plaintiffs indicate a likelihood of success on the merits. Plaintiffs first argue that the Governor's orders amount to unconstitutional restrictions on their rights to free speech and assembly. (D.N. 3, PageID # 180-87) Yet neither the complaint nor the

motion identifies any speech that has been or will be restricted by the orders. Moreover, to support their argument that the orders "are content-based restrictions on constitutionally protected liberties," Plaintiffs appear to mischaracterize the Commonwealth's prohibition on gatherings. (D.N. 3, PageID # 182) The order in question states in no uncertain terms that "[a]ll mass gatherings are hereby prohibited." (D.N. 1-5, PageID # 66) This prohibition applies not only to faith-based gatherings, but to "any event or convening that brings together groups of individuals, including, but not limited to, community, civic, public, leisure, . . . or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities." (*Id.*) The "19 categories of businesses" allowed by subsequent order to continue operating are not, as Plaintiffs repeatedly suggest, exceptions to the prohibition on mass gatherings. (*See* D.N. 3, PageID # 182) Rather, by the plain terms of the March 19 Order, "*[a]ll* mass gatherings are . . . prohibited." (D.N. 1-5, PageID # 66 (emphasis added))

Plaintiffs seek to compare in-person attendance at church services with presence at a liquor store or "supercenter store[]." (D.N. 3, PageID # 182; *see* also D.N. 1-10, PageID # 100-02 (declaration with photos depicting cars parked at Walmart and Kroger immediately following Maryville Baptist's Easter services)) The latter, however, is a singular and transitory experience: individuals enter the store at various times to purchase various items; they move around the store individually—subject to strict social-distancing guidelines set out by state and federal health authorities (*see* D.N. 1-7)—and they leave when they have achieved their purpose. Plaintiffs' desired church service, in contrast, is by design a communal experience, one for which a large group of individuals come together at the same time in the same place for the same purpose. (*See* D.N. 3, PageID # 191 ("The exercise of Plaintiffs' religion requires them not to forsake the assembling of themselves together.")) A more apt comparison, then, is a restaurant or

entertainment venue—where patrons are gathered simultaneously for a longer period of time to eat and socialize—or a movie, concert, or sporting event, where individuals come together in a group in the same place at the same time for a common experience. And all such activities are temporarily prohibited. (*See* D.N. 1-3, PageID # 60; D.N. 1-4, PageID # 62; D.N. 1-5, PageID # 66)

Similarly unpersuasive is Plaintiffs' contention that the orders violate their right to freely exercise their religion by discriminating against religious conduct. Again, the order temporarily prohibits "*[a]ll* mass gatherings," not merely religious gatherings. (*Id.* (emphasis added)) Religious expression is not singled out. And further, contrary to Plaintiffs' assertions, there are no identified exceptions to the prohibition on mass gatherings. (*See, e.g.*, D.N. 3, PageID # 189 (arguing that "businesses such as liquor, warehouse, and supercenter stores [are] exempted from the broad prohibitions" on gatherings); *id.*, PageID # 190 (arguing that the orders "purport to prohibit 'all mass gatherings,' but define 'mass gatherings' to exclude large gatherings of people at numerous businesses and other non-religious entities" (citing D.N. 1-5)))[1]

Finally, to the extent Plaintiffs argue that the orders violate the Kentucky Religious Freedom Restoration Act by substantially burdening the exercise of their sincerely held religious beliefs (*see id.*, PageID # 190-92), the Court finds, based on the materials submitted by Plaintiffs, that the Governor will likely be able to meet the Act's requirement of "clear and convincing evidence that [the government] has a compelling governmental interest in" the restrictions "and

---

[1] In service of their argument, Plaintiffs make liberal use of the term "gather." (*See, e.g.*, DN. 3, PageID # 190) Merriam-Webster defines "gather" as "to come together in a body"; a "gathering" is an "assembly" or "meeting." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/gather (last visited Apr. 18, 2020, at 5:20 p.m.). These terms do not, as generally understood, encompass separate, uncoordinated shopping trips by unrelated individuals. Presumably, no coordinated gathering in a grocery or liquor store would be permitted under the temporary restrictions.

5

has used the least restrictive means to further that interest."[2] Ky. Rev. Stat. § 446.350. Plaintiffs do not contend that the Commonwealth lacks a compelling governmental interest in restricting mass gatherings to prevent the spread of COVID-19. (*See* D.N. 3, PageID # 191-92) As to whether the Commonwealth has employed "the least restrictive means to further that interest," Plaintiffs merely point to orders issued in other states that declared religious gatherings exempt from mass-gathering prohibitions.[3] (*Id.*, PageID # 197-99) They offer no evidence that such exemptions are equally effective in preventing the spread of the disease. *Cf. Reno v. ACLU*, 521 U.S. 844, 874 (1997) (explaining that a burden on speech "is unacceptable if less restrictive alternatives would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve"). Given that COVID-19 is widely understood to be transmitted through person-to-person contact, including persons with and without symptoms of illness, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited Apr. 18, 2020, at 6:39 p.m.), Beshear will likely be able to demonstrate that restricting large in-person gatherings is the least restrictive means of accomplishing the Commonwealth's objective.

In sum, Plaintiffs have not demonstrated a likelihood of success on the merits. And because their constitutional and KRFRA claims are unlikely to succeed, they also have not demonstrated that they are likely to suffer permanent and irreparable injury absent issuance of a temporary restraining order. *See McGirr*, 891 F.3d at 610; *O'Toole*, 802 F.3d at 792. Meanwhile, a temporary

---

[2] The Court notes that the Kentucky Religious Freedom Restoration Act is largely untested in the courts and that its enforcement mechanism is unclear. *See Ermold v. Davis*, 936 F.3d 429, 441-42 & nn.1-2 (6th Cir. 2019) (Bush, J., concurring); *Ruplinger v. Louisville/Jefferson County Metro Government*, No. 3:19-cv-583-DJH-RSE (W.D. Ky. Mar. 18, 2020), ECF No. 19 (observing that "[t]here is no controlling precedent regarding [the KRFRA] in the decisions of the Supreme Court of Kentucky or the Court of Appeals of Kentucky" and certifying questions to Kentucky Supreme Court regarding availability of qualified immunity for violations of KRFRA).

[3] Plaintiffs address the "least restrictive means" requirement in the context of their First Amendment claims, not their KRFRA claim. (*See* D.N. 3, PageID # 195-99)

6

restraining order allowing large in-person gatherings would substantially harm third parties by facilitating the spread of COVID-19, and the public interest thus does not favor a temporary restraining order. *See McGirr*, 891 F.3d at 610; *O'Toole*, 802 F.3d at 792. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

 **ORDERED** as follows:

 (1) Plaintiffs' Motion for Temporary Restraining Order (D.N. 3) is **DENIED**.

 (2) This matter will be set for a telephonic status conference by subsequent order. During the conference, the Court will set an expedited briefing and hearing schedule on the motion for preliminary injunction.

April 18, 2020

**David J. Hale, Judge**
**United States District Court**