XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
AMIE L. MEDLEY
Deputy Attorney General
TODD GRABARSKY
Deputy Attorney General
State Bar No. 286999
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 269-6044
  Fax:  (916) 731-2124
  E-mail:  Todd.Grabarsky@doj.ca.gov
*Attorneys for Gavin Newsom, in his official
capacity as Governor of California, and Xavier
Becerra, in his official capacity as Attorney
General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| **WENDY GISH, et al.,**<br><br>                                Plaintiffs,<br><br>        **v.**<br><br>**GAVIN NEWSOM, in his official capacity as Governor of California, et al,**<br><br>                                Defendants. | 5:20-cv-00755-JGB-KK<br><br>**STATE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:            Monday, July 13, 2020<br>Time:           9:00 a.m.<br>Courtroom:   1<br>Judge:          The Honorable Jesus G. Bernal<br>Action Filed: April 13, 2020 |

**TO THE COURT AND PLAINTIFFS WENDY GISH, et al.:**

   **PLEASE TAKE NOTICE** that on Monday, July 13, 2020 at 9:00 a.m., at the

United States District Court, Central District of California, George E. Brown, Jr.

Federal Building and United States Courthouse, 3470 Twelfth Street Riverside,

California 92501-3801, Courtroom 1, Defendants Governor Gavin Newsom and

Attorney General Xavier Becerra will and hereby do move to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that this court lacks subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  This motion is made following a conference of counsel which took place telephonically on May 12, 2020, pursuant to Local Rule 7-3.

This Motion is based on this Notice of Motion and Motion to Dismiss; the accompanying Memorandum of Points and Authorities; the accompanying request for judicial notice; all pleadings and papers on file in this action; and such other matters as the Court may deem appropriate.

Dated:  May 27, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ Todd Grabarsky*
TODD GRABARSKY
Deputy Attorney General
AMIE L. MEDLEY
Deputy Attorney General
*Attorneys for Gavin Newsom, in his official capacity as Governor of California, and Xavier Becerra, in his official capacity as Attorney General of California*

# TABLE OF CONTENTS

**Page**

Memorandum of Points and Authorities ......................................................1

Introduction ..............................................................................................1

Background................................................................................................1

    I.     The COVID-19 Pandemic and the Stay-at-Home Order ....................1

    II.    The Present Lawsuit..........................................................................2

          A.    Plaintiffs' Complaint ...............................................................2

          B.    The Denial of Plaintiffs' Application for Temporary Restraining Order ................................................................4

    III.   The Resilience Roadmap and the Stage Two Orders..........................5

    IV.   The May 25 Guidelines.....................................................................6

Legal Standard...........................................................................................7

Argument ..................................................................................................8

    I.     The Complaint, Which Challenges the Original Executive Order Only, Has Been Mooted by the May 25 Guidelines ..........................8

    II.    The State Defendants Are Immune to Plaintiffs' State-Law Claims ..........................................................................................11

    III.   Several of Plaintiffs' Claims Should Be Dismissed for Failure to State a Claim Upon Which Relief Could Be Granted........................12

          A.    Establishment Clause (Claim 2) .............................................12

          B.    Vagueness (Claim 5) .............................................................13

          C.    Right to Liberty Under the California Constitution (Claim 8)........................................................................14

Conclusion...............................................................................................15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Agua Caliente Band of Cahuilla Indians v. Hardin*
   223 F.3d 1041 (9th Cir. 2000) ..................................................................11

*Arizonans for Official English v. Arizona*
   520 U.S. 43 (1997) .................................................................................8

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ...........................................................................7, 8

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ...............................................................................7

*Best Supplement Guide, LLC v. Newsom*
   No. 2:20-cv-00965-JAM-CKD (E.D. Cal. May 22, 2020)...................11

*Chamber of Commerce v. Dep't of Energy*
   627 F.2d 289 (D.C. Cir. 1980) ...............................................................9

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*
   508 U.S. 520 (1993) ................................................................................5

*Coakley v. Murphy*
   884 F.2d 1218 (9th Cir. 1989).................................................................8

*Cook Inlet Treaty Tribes v. Shalala*
   166 F.3d 986 (9th Cir. 1999)...................................................................9

*Cross Culture Christian Ctr. v. Newsom*
   No. 2:20-cv-00832-JAM-CKD, 2020 WL 2121111
   (E.D. Cal. May 5, 2020)..........................................................................2

*Doe v. Regents of the Univ. of Cal.*
   891 F.3d 1147 (9th Cir. 2018).................................................................11

*Edge v. City of Everett*
   929 F.3d 657 (9th Cir. 2019)...................................................................13

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Foster v. Carson*
4      347 F.3d 742 (9th Cir. 2003) ....................................................................8

5

*Fund for Animals v. Babbitt*
6      89 F.3d 128 (2d Cir. 1996) ......................................................................9

7

*Givens v. Newsom*
       No. 2:20-cv-00852-JAM-CKD, 2020 WL 2307224
8      (E.D. Cal. May 8, 2020) .................................................................13, 14, 15

9

*Grayned v. City of Rockford*
10     408 U.S. 104 (1972) ..............................................................................13

11

*Hunt v. Imperial Merchant Servs., Inc.*
12     560 F.3d 1137 (9th Cir. 2009) ................................................................9

13

*In re Cutera Securities Litig.*
14     610 F.3d 1103 (9th Cir. 2010) ................................................................7

15

*Institute for Wildlife Protection v. U.S. Fish & Wildlife Service*
       No. 07-CV-358-PK, 2007 WL 4117978 (D. Or. Nov. 16, 2007) ....................9
16

*Jacobson v. Massachusetts*
17     197 U.S. 11 (1905) ................................................................................4

18

*Jew Ho v. Williamson*
19     103 F. 10 (C.C.D. Cal. 1900) ................................................................14

20

*Legacy Church, Inc. v. Kunkel*
21     No. CIV 20-0327, 2020 WL 1905586 (D.N.M. Apr. 17, 2020) ..................13

22

*Lemon v. Kurtzman*
23     403 U.S. 602 (1971) ..............................................................................12

24

*Maldonado v. Lynch*
25     786 F.23d 1155, 1161 .............................................................................9

26

*Ex Parte Martin*
       83 Cal. App. 2d 164 (1948) ..................................................................14
27

28

1
2

**TABLE OF AUTHORITIES**
(continued)

Page

3

*McCarthy v. United States*

4
850 F.2d 558 (9th Cir. 1988) .................................................................8

5

*Muldoon v. Newsom*

6
No. SACV 20-844-JVS .......................................................................10

7

*Muller v. Newsom*

8
No. 30-2020-01139511 (Orange Cty. Super. Ct. May 15, 2020)...........10, 13

9

*Natural Resources Defense Council v. Norton*
No. 1:05-cv-01207, 2007 WL 14283 (E.D. Cal. Jan. 3, 2007) ............9

10

*Pennhurst State School & Hosp. v. Halderman*

11
465 U.S. 89 (1984) .........................................................................1, 11

12

*Rosebrock v. Mathis*

13
745 F.3d 963 (9th Cir. 2014) ..........................................................10

14

*S. Utah Wilderness Alliance v. Smith*

15
110 F.3d 724 (10th Cir. 1997) .........................................................9

16

*Seven Words LLC v. Network Solutions*

17
260 F.3d 1089 (9th Cir. 2001) ......................................................8, 10

18

*Sierra Club v. Babbitt*

19
69 F.Supp.2d 1202 (E.D. Cal. 1999) ...............................................9

20

*Six v Newsom*
No. 8:20-cv-00877-JLS-DFM (C.D. Cal. May 22, 2020)...................11

21
22

*Stormans, Inc. v. Wiesman*
794 F.3d 1064 (9th Cir. 2015) ..........................................................5

23
24

*Trunk v. City of San Diego*
629 F.3d 1099 (9th Cir. 2011) .........................................................12

25
26

*U.S. v. Ritchie*
342 F.3d 903 (9th Cir. 2003) .............................................................8

27
28

*United States v. Williams*
553 U.S. 285 (2008) ....................................................................13, 14

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*Winter v. Natural Res. Def. Council, Inc.*
  555 U.S. 7 (2008) ......................................................................................5

*Wong Wai v. Williamson*
  103 F. 1 (C.C. Cal. 1900) ........................................................................14

*Ex parte Young*
  209 U.S. 123 (1908) .................................................................................11

**CONSTITUTIONAL PROVISIONS**

United States Constitution
  First Amendment............................................................................*passim*
  Eleventh Amendment ............................................................................1, 11
  Fourteenth Amendment...............................................................................3

California Constitution
  Article 1 .................................................................................3, 11, 14, 15

**COURT RULES**

Federal Rules of Civil Procedure
  12(b)(1)........................................................................................................8
  12(b)(6)........................................................................................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Much has happened since this Court denied Plaintiffs' application for a temporary restraining order on April 23, 2020.  The State's temporary bar on in-person worship services that Plaintiffs challenged has been replaced by new guidelines for conducting such services which would allow Plaintiffs to congregate for in-person religious worship.  As a consequence, all of Plaintiffs' claims are now moot and should be dismissed.

Additionally or in the alternative, Plaintiffs' state law claims should be dismissed under the Eleventh Amendment because federal courts may not enjoin state institutions and officials based on state law.  *Pennhurst State School & Hosp. v. Halderman* 465 U.S. 89, 124-125 (1984).  This Court held in denying Plaintiffs a temporary restraining order that Plaintiffs were not likely to succeed on the merits of their claims; indeed, they have failed to state valid claims under the Establishment Clause, the Fourteenth Amendment's vagueness doctrine, and the California Constitution's right to liberty.

For these reasons and those explained below, the Court should grant the State Defendants' present motion and dismiss Plaintiffs' Complaint.

### BACKGROUND

I.   THE COVID-19 PANDEMIC AND THE STAY-AT-HOME ORDER

Although California has made significant progress in combatting COVID-19, this highly infectious and frequently deadly virus already has taken a devastating toll, infecting more than 5.4 million people and causing over 340,000 deaths worldwide.[1]  In the United States alone, more than 1.6 million people have been

---

[1] *See* Coronavirus disease 2019 (COVID-19) Situation Report 127, https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200526-covid-19-sitrep-127.pdf?sfvrsn=7b6655ab_8 (last accessed May 26, 2020).

1

1    infected, and over 98,000 people have died,[2] including 2,400 just last week.[3]

2            California responded early and decisively to this crisis, implementing

3    measures to slow the spread of COVID-19.  On March 4, the Governor proclaimed

4    a State of Emergency, and on March 19, he issued Executive Order N-33-20, the

5    Stay-at-Home Order, which required "all individuals living in the State of

6    California to stay home or at their place of residence except as needed to maintain

7    continuity of operations of the federal critical infrastructure sectors."[4]  Compl. Ex.

8    1.

9            The list of essential sectors originally promulgated by the state public health

10   directives included "[f]aith based services that are provided through streaming or

11   other technology."  Decl. of Todd Grabarsky in Supp. of Req. for Judicial Not.

12   ("Grabarsky Decl.") Ex. 9.  This provision permitted houses of worship to conduct

13   services over online streaming or teleconferencing and via drive-ins, but not in-

14   person.  *See Cross Culture Christian Ctr. v. Newsom*, No. 2:20-cv-00832-JAM-

15   CKD, 2020 WL 2121111, at *3 n.2 (E.D. Cal. May 5, 2020).  Riverside and San

16   Bernardino Counties issued similar directives.  Compl. Exs. 2, 3.

17   II.   **THE PRESENT LAWSUIT**

18         **A.   Plaintiffs' Complaint**

19           On April 13, Plaintiffs sued Governor Newsom and Attorney General Becerra

20   as well as numerous county officials to enjoin the orders.  Plaintiffs include three

21   pastors and one congregant at churches in Riverside and San Bernardino Counties

22   who allege that their sincerely and deeply held religious beliefs make it essential for

23           [2] *See* Cases in U.S., https://www.cdc.gov/coronavirus/2019-ncov/cases-
24   updates/cases-in-us.html (last accessed May 26, 2020).

25           [3] *See* Daily Updates of Totals by Week and State,
     https://www.cdc.gov/nchs/nvss/vsrr/COVID19/index.htm (last accessed May 26,
26   2020).

27           [4] For a more thorough background on the COVID-19 pandemic and the
     original Executive Order, see State Defs.' Opp'n to Pls.' App. for TRO, at 3-5
28   (ECF No. 13).

them to gather together and worship in person.  Compl. ¶¶ 6-9.  The pastor plaintiffs seek to hold in-person religious services, but allege that they will abide by social distancing tips recommended by the Center for Disease Control by keeping congregants at least six feet apart and having them wear masks and gloves.  *Id.* at ¶¶ 53, 80.  Plaintiff Pastor Moffatt alleges that in-person services would be conducted using proper social distancing practices, but elsewhere in the Complaint alleges that he "believes that scripture commands him as a pastor to lay hands on people and pray for them" and that "he is required by scripture to baptize individuals, something that cannot be done at an online service." *Id.* at ¶ 8. Plaintiff Pastor Wood specifically seeks to hold drive-up church services each Sunday. *Id.* ¶ 90. Pastor Wood's church has approximately twenty to thirty "regular attendees," *id.* ¶ 82, but the Complaint does not specify how many congregants the other churches host for worship services. Nor does the Complaint contain allegations about the size or capacity of the buildings that house their churches.

Plaintiffs do not just seek injunctive relief allowing them to hold in-person religious gatherings, but they also ask for an order declaring the Executive Order unconstitutional, both on its face and as applied, and enjoining and prohibiting Defendants from enforcing the orders against anyone in the entire state. Compl. at 34. They base their claims on the First Amendment's Free Exercise, Establishment, Free Speech, and Assembly Clauses (claims 1 through 4); the Fourteenth Amendment's Due Process and Equal Protection Clauses (claims 5 through 7); and the rights to liberty, freedom of speech, freedom of assembly, and free exercise of religion enumerated in Article 1, sections 1 through 4, of the California Constitution (claims 8 through 11).

1

2

### B.   The Denial of Plaintiffs' Application for Temporary Restraining Order

3

4

5

6

7

8

9

10

11

12

13

14

15

16

Upon filing this lawsuit, Plaintiffs applied for a temporary restraining order based on their complaint and four short declarations, which the Court denied on April 23 because Plaintiffs had failed to establish a likelihood of success on the merits.  Order Deny'g App. for TRO, at 9 (ECF No. 51).  First, the Court held that the Orders were "likely a permissible of executive authority during a national emergency."  *Id.* at 6.  "Defendants," it recognized, "have a right to protect California residents from the spread of COVID-19—even if those protections temporarily burden constitutional rights to a greater degree than normally permissible."  *Id.* at 5.  Accordingly, under the Supreme Court's decision in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905)), "states and municipalities have greater leeway to burden constitutionally protected rights during public emergencies," and measures taken to deal with such emergencies are permissible if they have a "'real or substantial relation' to the crisis" and are not a "'plain, palpable" invasion of protected rights.  *Id*. at 6 (quoting 197 U.S. at 31).

17

18

19

20

21

22

23

24

25

26

27

28

Applying this deferential standard, the Court found that "[t]he Orders easily meet that test."  *Id*.  They have a substantial relation to combatting the COVID-19 pandemic because they require the physical distancing needed to slow the virus' spread."  *Id*.; *see also id*. at 5 ("Without a vaccine, measures limiting physical contact between citizens, such as the Orders, are widely recognized as the only way to effectively slow the spread of the virus.").  In addition, far from plainly and palpably invading the Free Exercise Clause, under the Orders "a wide swath of religious expression remains untouched."  *Id*.  Although at the time the Complaint was filed in-person gatherings were prohibited, congregants were nevertheless free to "gather virtually or over the phone," "gather in-person with the members of their household," and "practice their religion in whatever way they see fit so long as they remain within the confines of their own homes."  *Id*.

4

The Court also ruled that, even under traditional constitutional analysis, the Orders "likely do not impermissibly infringe on Plaintiffs' constitutional rights." *Id.* at 6.  Regarding the Free Exercise Clause, the Court held that the Orders are likely to be upheld because they are both neutral on their faces and in operation and are rationally related to slowing the spread of COVID-19.  *Id*. at 7-8 (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1079 (9th Cir. 2015)).  In so holding, the Court noted that Plaintiffs had failed to present evidence that the Orders target religious conduct; indeed, the court observed, "[t]he majority of the prohibited conduct is secular." *Id*. at 7.  The Court also rejected Plaintiffs' contention that the Orders are materially underinclusive: while Plaintiffs pointed to some permitted secular activities, they failed to identify any "analogous secular conduct . . . where people sit together in an enclosed space for a communal experience" that is permitted. *Id.* at 8; *see also id*. ("An in-person religious gathering is not analogous to picking up groceries, food, or medicine, where people enter a building quickly . . . and leave once the task is complete.").

On April 27, 2020, Plaintiffs noticed an appeal from the order denying their application for a temporary restraining order. *See* ECF Nos. 52, 57.  Instead of moving this Court for an injunction pending the appeal, Plaintiffs moved the Ninth Circuit for an emergency motion for a preliminary injunction pending appeal, or, alternatively, to expedite the briefing schedule set by the court.  The Ninth Circuit denied both requests. *See* ECF No. 63 (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

### III.   THE RESILIENCE ROADMAP AND THE STAGE TWO ORDERS

On April 28, 2020, five days after the Court denied Plaintiffs' temporary restraining order, the Governor announced the State's four-stage "Resilience Roadmap" to guide the gradual and safe reopening of the State. *See* Grabarsky Exs. 2-6.  The Roadmap involves the following four stages: safety and preparation

(Stage 1); reopening of lower-risk workplaces and other spaces (Stage 2); reopening of higher-risk workplaces and other spaces (Stage 3); and, finally, an end to the Stay-at-Home Order (Stage 4). *Id.* To implement the Roadmap, on May 4, 2020, the Governor issued Executive Order N-60-20, providing that all California residents are to continue complying with the Stay-at-Home Order and that the State Public Health Officer shall establish criteria and procedures for qualifying local jurisdictions to move more quickly through Stage 2 of the Roadmap. *Id.* Ex. 6

On May 7, 2020, the State Public Health Officer issued an order moving the State into Stage Two based on her review of the data and stating that she would "progressively designate sectors, businesses, establishments, or activities that may reopen with certain modifications, based on public health and safety needs" and at "a pace designed to protect public health and safety." *Id.* Ex. 5, at 2. Where sectors are reopened in Stage 2, Californians must "continue at all times to practice physical distancing, minimize their time outside of the home, and wash their hands frequently." *Id.* Religious services were included in Stage 3. *See id.* Ex. 6.

## IV.  THE MAY 25 GUIDELINES

On May 25, 2020, in light of the State's success in slowing the spread of COVID-19 and in marshaling public health resources, California issued guidelines for places of worship and providers of religious services. Much like the guidance developed in parallel by the Centers for Disease Control and Prevention published last week,[5] California's guidelines contain instructions and recommendations for physical distancing during, and the conduct of, worship services as well as cleaning and disinfection protocols, training for employees and volunteers, and individual screening and monitoring. *See Guidelines—Places of Worship and Providers of Religious Services and Cultural Ceremonies*, Grabarsky Decl. Ex. 1. Additionally,

---

[5] *See Interim Guidance for Communities of Faith*, available at https://www.cdc.gov/coronavirus/2019-ncov/php/faith-based.html (last visited May 25, 2020)

in keeping with the CDC's recognition that the size of worship services may be limited by state and local authorities,[6] California's guidelines limit worship services to either 100 attendees or 25% of building capacity, whichever is less. *Id.* at 3.  In light of these new guidelines, there is no longer any state-wide prohibition against religious services in California, and such services may resume so long as they are permitted by the relevant county.[7]  Riverside and San Bernardino Counties, where Plaintiffs' churches are located, authorized worship services in line with the State's May 25 guidelines.  Grabarsky Decl. Exs. 14, 15.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. Although a complaint attacked by a motion to dismiss does not need "detailed factual allegations," it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). A court should dismiss a complaint "if it fails to plead enough facts to state a claim to relief that is plausible on its face." *In re Cutera Securities Litig.*, 610 F.3d 1103, 1107 (9th Cir. 2010) (citation omitted).  In ruling on a motion to dismiss, a court does not accept as true a complaint's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

---

[6] *See Interim Guidance for Communities of Faith*, at 2 available at https://www.cdc.gov/coronavirus/2019-ncov/php/faith-based.html (last visited May 25, 2020) ("Take steps to limit the size of gatherings in accordance with guidance and directives of state and local authorities[.]").

[7] *See* California Department of Public Health, News Release: Counties Statewide Can Reopen Place of Worship for Religious Services, and Retail Stores, *available at* https://outlook.office365.com/mail/deeplink?version=2020051702.05&popoutv2=1&leanbootstrap=1 (last visited May 25, 2020).

Under Rule 12(b)(1), a party may move to dismiss a complaint of lack of subject-matter jurisdiction. Courts may consider certain materials outside the complaint without converting such a motion into a motion for summary judgment, whether under Rule 12(b)(1) or (b)(6). *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (Rule 12(b)(1)); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (noting that a court ruling on a motion to dismiss may consider certain documents outside the complaint, including documents incorporated by reference in the complaint, or judicially noticeable). If a complaint's defects are not curable, the court should dismiss without leave to amend. *See Coakley v. Murphy*, 884 F.2d 1218, 1222 (9th Cir. 1989).

## ARGUMENT

### I.   THE COMPLAINT, WHICH CHALLENGES THE ORIGINAL EXECUTIVE ORDER ONLY, HAS BEEN MOOTED BY THE MAY 25 GUIDELINES.

As explained above, Plaintiffs' Complaint and the allegations asserted therein only challenged the ban on in-person worship services in the Stay-at-Home Order issued in March. Since then, several new state directives have been issued, and the latest one, the May 25 guidelines, has superseded this prohibition and permitted in-person worship services where, as here, the relevant counties permit it. Plaintiffs' claims are thus moot and should be dismissed.

"If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003). To survive a mootness challenge, "'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)); *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003). Federal courts do not have jurisdiction to hear a case where no actual or live controversy exists. *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999). Thus, if an event

1    occurs while the case is pending that removes the threat of injury when only

2    prospective relief had been sought, then the case must be dismissed.  *Sierra Club v.*

3    *Babbitt*, 69 F.Supp.2d 1202, 1244 (E.D. Cal. 1999) (citing *Fund for Animals v.*

4    *Babbitt*, 89 F.3d 128, 133 (2d Cir. 1996)).

5         Furthermore, under the doctrine of prudential mootness, courts may exercise

6    their discretion to find a case moot where they cannot grant meaningful relief.

7    *Institute for Wildlife Protection v. U.S. Fish & Wildlife Service*, No. 07-CV-358-

8    PK, 2007 WL 4117978 at *7 (D. Or. Nov. 16, 2007).  A controversy "not moot in

9    the Article III sense" may be still be moot when it is "'so attenuated that

10   considerations of prudence and comity for coordinate branches of government

11   counsel the court to stay its hand, and to withhold relief it has the power to grant.'"

12   *Sierra Club*, 69 F.Supp.2d at 1244 (quoting *Chamber of Commerce v. Dep't of*

13   *Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)).  The central inquiry for prudential

14   mootness is the same as Article III mootness: whether circumstances have changed

15   since the beginning of the litigation that forestall any occasion for meaningful

16   relief.  *Natural Resources Defense Council v. Norton*, No. 1:05-cv-01207, 2007 WL

17   14283, *7 (E.D. Cal. Jan. 3, 2007).  And although the Ninth Circuit has not

18   formally adopted the prudential mootness doctrine outside the bankruptcy context,

19   *see Maldonado v. Lynch*, 786 F.23d 1155, 1161 n.5 (9th Cir. 2015), district courts

20   within the Ninth Circuit have recognized the applicability of prudential mootness,

21   particularly to cases where an injunction is sought against the government.  *Natural*

22   *Resources Defense Council*, 2007 WL 14283, *7; *Sierra Club*, 69 F.Supp.2d at

23   1244; *see also Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1142 (9th

24   Cir. 2009) (discussing prudential mootness); *S. Utah Wilderness Alliance v. Smith*,

25   110 F.3d 724, 727 (10th Cir. 1997).

26        Here, the claims Plaintiffs assert in the Complaint, which solely concern the

27   original Executive Order, have been mooted by the May 25 guidelines.  The relief

28   Plaintiffs seek—from the total ban on worship services in the Stay-at-Home

9

Order—would no longer have any effect as the State Defendants have implemented a change in policy that grants most, if not all, of the relief Plaintiffs were seeking. Plaintiff Wood asserts that her church has approximately twenty to thirty regular attendees, Compl. ¶ 83, and the Complaint does not specify the sizes of the congregations of the other churches, nor the sizes or capacities of the buildings that house their sanctuaries.  Thus, Plaintiffs do not allege that the May 25 guidelines—with their 100-person or 25% capacity cap—will still prevent them from gathering for worship in the way they request, especially considering that at least one of the Plaintiffs believes that "most of his congregants will stay home," Compl. ¶ 55, and Plaintiffs have asserted that they are willing and able to comply with guidelines concerning distancing, cleanliness, and attire.  *See id.* ¶¶ 53, 74-77, 85-90.  In any event, the orders that plaintiffs sought to enjoin no longer constrain them, and as Plaintiffs have effectively already been granted the injunctive relief they seek in their Complaint, Plaintiffs merely seek an "advisory opinion," which this Court should refrain from issuing.  *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001).  Thus, to the extent that they seek injunctive relief, Plaintiffs' claims should be dismissed as moot.

Even though the voluntary cessation of challenged conduct does not necessarily render a case moot, *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014), at a minimum this Court should dismiss the Complaint with leave to amend so that Plaintiffs may, if they wish, tailor their claims to the new guidelines.  *See id*. (courts "presume that a government entity is acting in good faith when it changes its policy[.]").  In fact, other courts have found COVID-19-related challenges moot due to the State's evolving policies. *See, e.g.*, *Muldoon v. Newsom*, No. SACV 20-844-JVS (JDEx), at 2-3 (C.D. Cal. May 8, 2020) (Grabarsky Decl. Ex. 12); *Muller v. Newsom*, No. 30-2020-01139511, at 3 (Orange Cty. Super. Ct. May 15, 2020) (Grabarsky Decl. Ex. 13).

1   For this reason alone, Plaintiffs' claims are moot, and the Complaint should be

2   dismissed in its entirety.

3   **II.    THE STATE DEFENDANTS ARE IMMUNE TO PLAINTIFFS' STATE-LAW**

4   **CLAIMS.**

5   In addition to being moot, all four of Plaintiffs' state law claims—claims 8

6   through 11—fail at the outset because federal courts may not enjoin state

7   institutions and officials on the basis of state law.  The Supreme Court has

8   instructed that under the Eleventh Amendment, federal courts lack jurisdiction to

9   enjoin state institutions and state officials on the basis of state law.  *Pennhurst State*

10  *School & Hosp. v. Halderman* 465 U.S. 89, 124-125 (1984).  Although there is a

11  limited exception to Eleventh Amendment immunity where state officials may be

12  enjoined from violating *federal* law, *Ex parte Young*, 209 U.S. 123 (1908); *Agua*

13  *Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000),

14  that exception does not apply "when a plaintiff alleges that a state official has

15  violated state law." *Pennhurst*, 465 U.S. at 106; *see also Doe v. Regents of the*

16  *Univ. of Cal.*, 891 F.3d 1147 (9th Cir. 2018).  Accordingly, as several court

17  considering challenges to the Stay-at-Home Order have recognized, Plaintiffs'

18  claims brought under state law—namely Article 1, sections 1 through 4 of the

19  California Constitution— should be dismissed under the Eleventh Amendment.

20  *See Best Supplement Guide, LLC v. Newsom*, No. 2:20-cv-00965-JAM-CKD, at 15

21  (E.D. Cal. May 22, 2020) ("Plaintiffs can neither succeed nor proceed on [their

22  state law claim] against the State.") (citing *Pennhurst*, 465 U.S. at 106; *Young*, 209

23  U.S. 123) (Grabarsky Decl. Ex. 10); *Six v Newsom*, No. 8:20-cv-00877-JLS-DFM,

24  at 15 (C.D. Cal. May 22, 2020) ("Under *Pennhurst* [], [plaintiffs' state law claims]

25  are barred by the Eleventh Amendment.") (Grabarsky Decl. Ex. 11).

26

27

28

### III. SEVERAL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED.

In addition, three of Plaintiffs claims—those brought under the Establishment Clause (claim 2), the Fourteenth Amendment's vagueness doctrine (claim 5), and the California Constitution's right to liberty (claim 8)—should be dismissed for failure to state a claim upon which relief could be granted.

#### A. Establishment Clause (Claim 2)

A government action does not violate the Establishment Clause if it "has a secular purpose" or does not endorse religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971); *see also Trunk v. City of San Diego*, 629 F.3d 1099, 1106 (9th Cir. 2011) (noting that "the Supreme Court essentially has collapsed the[ ] last two prongs [of the test articulated in *Lemon*] to ask whether the challenged governmental practice has the effect of endorsing religion."). Both conditions are satisfied here.

The State's directives clearly have a secular purpose: stopping the further spread of COVID-19. The May 25 guidelines provide capacity, cleanliness, and distancing guidelines by which congregants may continue to congregate to worship safely. Grabarsky Decl. Ex. 1. Moreover, the State's directives implemented since the COVID-19 pandemic first developed apply equally to all places of worship and do not distinguish between religions.

It is equally clear that the State's directives do not promote religion or favor religion over non-religion. In March, the State barred all in-person gatherings, whether religious or secular. *See* Compl. Ex. 1. Even under the May 25 guidelines, gatherings for secular purposes like in-person political protesting and cultural ceremonies are permitted under the same rules and restrictions as are religious worship services. *See* Grabarsky Decl. Ex. 1.[8] And, far from promoting religion,

---

[8] *See also* Stay home Q&A, https://covid19.ca.gov/stay-home-except-for-essential-needs/ (last accessed May 27, 2020).

the original Executive Order exempted a host of essential secular activities and operations from the stay-at-home provision.  *See* Grabarsky Decl. Ex. 9.  Therefore, as this Court has recognized, Plaintiffs fail to allege a cognizable Establishment Clause claim.  *See* TRO Order, at 8-9 (ruling that the Executive Order likely does not violate the Establishment Clause because it "serve[s] an important secular purpose of slowing the spread of COVID-19" and "do[es] not endorse any religion"); *see also Legacy Church, Inc. v. Kunkel*, No. CIV 20-0327 JB\SCY, 2020 WL 1905586, at *37 (D.N.M. Apr. 17, 2020) (finding that an Establishment Clause challenge to a state's COVID-19 related restrictions on all religious worship would not be viable).

### B.   Vagueness (Claim 5)

Under the Fourteenth Amendment's vagueness doctrine, a government directive must be sufficiently definite to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and to avoid "arbitrary and discriminatory enforcement."  *Edge v. City of Everett*, 929 F.3d 657, 664-65 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 1297 (2020).  But people can "'never expect mathematical certainty from our language,'" and "'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'"  *Id.* at 664 (quoting *Grayned v. City of Rockford*, 408 U.S. 104 (1972); *United States v. Williams*, 553 U.S. 285, 304 (2008)).

In support of their vagueness claim, Plaintiffs focus on the word "heed" in arguing that it is unclear whether Californians are expected to comply with the order or not.  Compl. at ¶ 134.  But, as courts have recognized, "[w]hile the request to 'heed the current State public health directives' might be understood as a recommendation, the remainder of the State's order, and the incorporated health directives, are unambiguous."  *Givens v. Newsom*, No. 2:20-cv-00852-JAM-CKD, 2020 WL 2307224, at *9 (E.D. Cal. May 8, 2020); *see also Muller*, No. 20-2020-01139511, at 3-4 n.1 (finding that Governor Newsom "did" require compliance

with public health directives  and that "[i]n context, 'heed' can mean follow or obey—a driver 'heeds' a stop sign by actually stopping.") (Grabarsky Decl., Ex. 13).  And this is true of the May 25 guidelines as well.  Plaintiffs also point to the discretion vested in local law enforcement, but the directives are not "so standardless that [they] authorize[] or seriously encourage[] discriminatory enforcement."  *U.S. v. Williams*, 553 U.S. 285, 304 (2008).  The May 25 directives are clear as to what conduct is authorized—worship services capped at 100-persons or 25% building capacity and subject to the enumerated distancing, cleanliness, and attire guidelines, many of which are not even mandatory.  Therefore, Plaintiffs' claim for vagueness must be dismissed.

**C.    Right to Liberty Under the California Constitution (Claim 8)**

Plaintiffs assert that their right to liberty provided in Article 1, Section 1 of the California Constitution has been violated.  In support of this claim, Plaintiffs contend that before the Governor and health officials may quarantine individuals, there must be "reasonable grounds [] to support the belief that the person so held is infected."  Compl. at ¶ 158 (citing *Ex Parte Martin*, 83 Cal. App. 2d 164 (1948)).  But requiring public health officials to identify specific individuals who carry the virus and order only them to stay home would not be feasible in the current pandemic situation.  To do so "would require far more aggressive testing and contact-tracing, neither of which the State, at present, has the capacity to do." *Givens*, 2020 WL 2307224, at *9.  Furthermore, under the May 25 guidelines, Plaintiffs may leave their homes and congregate together in group worship.

The three cases Plaintiffs cite in support of this claim do not suggest otherwise.  The first, *Martin*, 83 Cal. App. 2d 164, involved "the quarantine of two individuals in jail after passing through a place of prostitution."  *Givens*, 2020 WL 2307224, at *9.  The others, *Jew Ho v. Williamson*, 103 F. 10 (C.C.D. Cal. 1900), and *Wong Wai v. Williamson*, 103 F. 1 (C.C. Cal. 1900), involved "a racially-motivated and scientifically-unfounded quarantine of San Francisco's Chinatown."

14

1    *Givens*, 2020 WL 2307224, at \*9.  None of these cases involved the kind of wide-
2    spread, highly contagious, life threatening virus Californians currently face, which
3    can be spread by asymptomatic carriers and transmitted through coughing or
4    sneezing, or coming into contact with contaminated surfaces.  Therefore, Plaintiffs
5    have failed to state a right-to-liberty claim under the California Constitution.

6                                    **CONCLUSION**

7          For the foregoing reasons, the Court should dismiss the Complaint.

8

9    Dated:  May 27, 2020                    Respectfully submitted,

10                                           XAVIER BECERRA
                                             Attorney General of California
11                                           MARK R. BECKINGTON
12                                           Supervising Deputy Attorney General

13

14                                           */s/ Todd Grabarsky*
15                                           TODD GRABARSKY
                                             Deputy Attorney General
16                                           AMIE L. MEDLEY
17                                           Deputy Attorney General
                                             *Attorneys for Gavin Newsom, in his*
18                                           *official capacity as Governor of*
19                                           *California, and Xavier Becerra, in his*
                                             *official capacity as Attorney General*
20                                           *of California*
21

22

23

24

25

26

27

28